IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| THOMAS RICHARDS<br><br>*Plaintiff,*<br><br>v.<br><br>X Corp.<br><br>*Defendant* | Case No. 3:25-cv-00916<br><br><br><br><br>Lisa Weingarten Richards, Esq.<br><br>VSB #96671<br><br>LWR Law Offices<br><br>2045 S Pleasant Valley Rd. #1098<br><br>Winchester, VA 22601<br><br>*Tel.:* (202) 981-2059<br><br>lwr@lwrlawoffices.com<br><br>*Counsel for plaintiff* |

**<u>EMERGENCY MOTION FOR PRO HAC VICE ADMISSION WITHOUT LOCAL COUNSEL</u>**

COMES NOW Lisa Weingarten Richards, seeking emergency admission pro hac vice without local counsel pursuant to Local Rules 83.9 and 83.10, and in support thereof states the following:

## I. INTRODUCTION AND EMERGENCY NATURE

This case involves ongoing, systematic suppression of religious speech on X Corp.'s platform, owned and controlled by Elon Musk, who simultaneously serves as a Special Government Employee heading the Department of Government Efficiency. This unique entanglement between governmental authority and platform control transforms what would otherwise be private content moderation into state action subject to First Amendment constraints. The situation has urgently escalated in recent days, with X Corp. taking unprecedented actions against Plaintiff's account that demand immediate judicial intervention.

## II. ATTORNEY QUALIFICATIONS

I am an active member in good standing of the Virginia State Bar (#96671) and the New York State Bar (#4932570). I have attached my certificate of good standing from the New York State Bar, 3rd Judicial Department. I have no disciplinary proceedings pending against me and am familiar with this Court's Local Rules, the Federal Rules of Civil Procedure, and the ECF filing system. I willingly submit to this Court's disciplinary jurisdiction.

## III. DILIGENT SEARCH FOR LOCAL COUNSEL

For close to four months, I have diligently sought local counsel to represent my client in this matter, undertaking the following specific efforts:

1. Systematic review of the Texas Bar directory for qualified attorneys in the Northern District of Texas with relevant experience;

2. Direct outreach to dozens of attorneys throughout the district and in other locations via telephone and email between December 2024 and March 2025;

3. Consultation with multiple internet law specialists, including several who explicitly acknowledged merit in the case but were unwilling to serve as local counsel;

4. One attorney specifically cited fears of retaliation from X Corp. and its owner Elon Musk due to his unprecedented resources and power as the reason for declining;

5. Increased outreach efforts following the escalation of adverse actions against my client's account in March 2025.

Despite these extensive efforts, I have been unable to secure local representation.

## IV. IRREPARABLE ONGOING HARM AND CONSTITUTIONAL IMPLICATIONS

The emergency nature of this motion has intensified dramatically through a series of escalating, retaliatory actions by X Corp. against my client:

1. On March 19, 2025, Defendant effectively removed all of Plaintiff's historical content-- approximately 61,000 posts representing 16 years of religious expression--from his account with no notice or explanation. This mass blocking of lawful religious content violates X's own stated policies and the First Amendment.

2. On March 31, 2025, I sent a detailed 40-page demand letter via email to X Corp. outlining these unlawful suppressions and requesting immediate remediation. The email was successfully delivered -- not returned as undeliverable -- both to Adam Mehes, Senior Director of Legal at X and to Kylie McRoberts, Head of Trust and Safety at X. No response was received from the Defendant.

3. On April 5, 2025--less than one week after my demand letter--X Corp. escalated its actions by completely blocking 5,974 photos and videos previously shared on Mr. Richards' account, specifically targeting his "#SpirituallySmartArt" content, which he had created as a positive creative outlet to help him cope with the emotional distress caused by the platform's earlier restrictions. This occurred just two days after a follow-up communication noting our intent to sue.

4. On April 6, 2025, at approximately noon Eastern Time, X Corp. again purged Plaintiff's content, removing all posts within a three-week period. This pattern of deletion, partial restoration, and renewed deletion demonstrates an ongoing campaign of deliberate suppression requiring immediate court intervention. (It appears such purges have continued again after April 6)

The Fifth Circuit has consistently recognized that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); see also *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (noting that when religious freedom is at stake, "most courts hold that no further showing of irreparable injury is necessary").

The constitutional implications of this case are extraordinarily significant given X Corp. owner Elon Musk's official role as head of DOGE, making him the second most powerful government official in the current administration.

Notably, immediately following receipt of our 40-page demand letter detailing these constitutional violations, reports suddenly emerged that Musk would soon be leaving his

government position--a transparent attempt to evade constitutional liability that does not alter the legal analysis for three critical reasons:

First, the Supreme Court has consistently held that a defendant's voluntary cessation of challenged conduct does not moot a case. See *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (holding that "a defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case").

Second, and more fundamentally, Musk's formal DOGE title is immaterial to his status as a government actor under the *Brentwood Academy* entwinement doctrine. The Supreme Court specifically rejected attempts to evade constitutional obligations through cosmetic structural changes, emphasizing that such adjustments "affected candor but not the 'momentum' of state involvement." 531 U.S. at 301. This entwinement is particularly evident in the unprecedented personal relationship between Musk and President Trump, publicly documented through Musk's February 7, 2025 declaration that "I love @realDonaldTrump as much as a straight man can love another man"--a statement so significant it was acknowledged by the President himself during an official White House press conference with the Japanese Prime Minister. This extraordinary personal relationship ensures Musk's continuing influence regardless of any formal title.

Third, Musk's ongoing government entanglement transcends any single position:

a. His Top Secret security clearance legally binds him to the intelligence community through federal statutes and regulations, creating a permanent government relationship regardless of formal title;

b. Within just the past month (March-April 2025), Musk conducted high-profile visits to the Pentagon, National Security Agency, and Central Intelligence Agency - access rarely granted even to elected officials;

c. When departing the Pentagon on March 21, 2025, Musk was overheard telling Defense Secretary Hegseth, "If there's anything I can do to be helpful, I'd like to see you" - explicitly establishing a back-channel that will continue regardless of formal position;

d. This established pattern of intelligence agency access, coupled with Musk's explicit commitment to maintain direct communication with defense leadership, renders any nominal "departure" from DOGE legally irrelevant to the constitutional analysis;

e. The extraordinary government contracts awarded to his companies (exceeding $15.4 billion) create financial entanglement reinforcing the governance relationship.

The constitutional analysis thus remains unchanged regardless of any nominal "departure" from DOGE. Indeed, X has actually increased its shadowbanning of our client since receiving our demand letter, demonstrating both consciousness of liability and ongoing harm requiring urgent judicial intervention.

Further underscoring the constitutional implications, Musk's actions as both government official and platform owner directly violate the January 20, 2025 Executive Order on "Restoring Freedom of Speech and Ending Federal Censorship," which explicitly prohibits federal government officials from "engag[ing] in or facilitat[ing] any conduct that would unconstitutionally abridge the free speech of any American citizen." As a Special Government Employee heading DOGE, Musk is bound by Section 3(a) of this Executive Order, which states that "No Federal department, agency, entity, officer, employee, or agent may act or use any

Federal resources in a manner contrary to section 2 of this order." His systematic suppression of Mr. Richards' religious expression while simultaneously exercising governmental authority creates liability under both this Executive Order and the First Amendment.

## V. COMMITMENT TO COURT DUTIES AND PROCEDURES

While Local Rule 83.11's explicit exemption applies to government attorneys, the underlying principle of ensuring adequate representation can be met here through my commitment to fulfilling all duties normally required of local counsel. Specifically, I commit to:

1. Appearing for all proceedings, hearings, and conferences as required by the Court;
2. Filing all documents in compliance with local rules and procedures;
3. Being available by telephone, email, and videoconference as needed for any Court matters;
4. Maintaining thorough familiarity with the Court's ECF system and all local filing requirements;
5. Fulfilling any additional obligations the Court may require.

Traditional alternatives to this emergency motion -- such as continuing to search for local counsel while delaying filing -- would result in ongoing, irreparable harm to my client's constitutional rights. Each hour that passes risks further damage to Mr. Richards' ability to engage in protected religious expression in the digital public square.

## VI. PRAYER FOR RELIEF

WHEREFORE, counsel respectfully requests:

1. Emergency admission pro hac vice without local counsel requirement;

2. Permission to appear and represent Plaintiff in all matters connected with this case; and

3. Such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Lisa Weingarten Richards


LWR Law Offices

2045 S Pleasant Valley Rd. #1098

Winchester, VA 22601

(202) 981-2059

LWR@LWRLawOffices.com

VA BAR # 96671

NY BAR #4932570

April 13, 2025


Attorney for Plaintiff

Admission Pro Hac Vice Pending