# IN THE UNITED STATES COURT OF APPEALS FOR THE

# FIFTH CIRCUIT

| | |
|---|---|
| In re: THOMAS RICHARDS<br><br>Petitioner | No._____<br><br>District Court No 3:25-cv-0916-x<br><br>EMERGENCY PETITION FOR WRIT OF MANDAMUS<br><br>IMMEDIATE RELIEF REQUESTED BEFORE 9:00AM CENTRAL APRIL 16, 2025<br><br>Lisa Weingarten Richards, Esq.<br>VSB #96671<br>NY BAR #4932570<br>LWR Law Offices<br>2045 S Pleasant Valley Rd. #1098<br>Winchester, VA 22601<br>*Tel.:* (202) 981-2059<br>lwr@lwrlawoffices.com<br>*Counsel for plaintiff* |

**INTRODUCTION AND RELIEF SOUGHT**

Petitioner Thomas Richards respectfully petitions this Court for a writ of mandamus directed to the United States District Court for the Northern District of Texas, Dallas Division, the Honorable Brantley Starr presiding. Petitioner requests immediate relief, preferably by 9:00 AM Central Time on April 16, 2025, to avoid potential contempt proceedings in the district court, which has ordered service by 11AM Central Time tomorrow. This extraordinary relief is necessary because the district court has clearly erred in: (1) misinterpreting an unambiguous venue provision; (2) imposing a practically impossible 24-hour service requirement that directly contradicts the Federal Rules of Civil Procedure; and (3) denying emergency injunctive relief without addressing the merits of ongoing constitutional violations.

Petitioner specifically requests that this Court:

1. Issue a writ of mandamus directing the district court to vacate its April 15, 2025 Order ("4/15 Order") requiring service to the Defendant within 24 hours;

2. Direct the district court to vacate its April 14, 2025 Order finding venue improper in the Dallas Division;

3. Order the district court to consider Petitioner's emergency motion for temporary restraining order on its merits; and

4. In the alternative, withdraw the case from the district court and consider Petitioner's emergency motion directly.

**ISSUES PRESENTED**

1. Whether mandamus is appropriate where a district court has imposed a 24-hour service requirement that directly contradicts FRCP Rule 4(m) and creates a practical impossibility.

2. Whether mandamus is appropriate where a district court has clearly misinterpreted an unambiguous venue provision to find venue improper.

3. Whether mandamus is appropriate where a district court has refused to consider emergency injunctive relief for ongoing constitutional violations based solely on an erroneous venue determination.

**STATEMENT OF FACTS**

**Procedural History**

1. April 13, 2025 (Sunday): Petitioner filed his Complaint, Emergency Motion for Temporary Restraining Order, and Motion for Preliminary Injunction alleging First Amendment violations through X Corp.'s systematic

suppression of religious speech. The Complaint detailed an existing pattern of algorithmic throttling of Petitioner's content that had been ongoing for years. Notably, X Corp. had already removed 61,600+ posts from Petitioner's account wall on March 19, 2025.

2. March 31, 2025: Petitioner's counsel sent a detailed demand letter to X Corp. outlining these constitutional violations and requesting immediate remediation.

3. April 5, 2025: Rather than addressing the concerns, X Corp. escalated its suppression by removing 5,974 media files (including religious artwork created by Petitioner) from his account - a clear pattern of retaliation triggered by the demand letter.

4. April 6, 2025: X Corp. further escalated its targeting by removing additional posts from public visibility, continuing the pattern of content removal timed directly to Petitioner's legal communications.

5. April 15, 2025: Petitioner's counsel was conducting a previously scheduled webinar from 11:30-1:00 PM, about which the court clerk had been specifically informed. Upon seeing the order late in the business day after conducting this professional obligation, compliance with the 24-hour service requirement became practically impossible.

6. April 14, 2025 (Monday): Without addressing the merits, the district court denied Petitioner's emergency motions "WITHOUT PREJUDICE" based on an erroneous reading of the venue provision in X Corp.'s Terms of Service. The court ordered transfer to Fort Worth Division after 21 days unless an objection was filed.

7. April 14, 2025 (Monday evening): Petitioner filed an Emergency Motion for Reconsideration explaining that the Terms of Service clearly permit venue in "the U.S. District Court for the Northern District of Texas OR state courts located in Tarrant County" - making venue entirely proper in the Dallas Division. Petitioner also noted his intent to file an amended complaint per FRCP 15(a)(1).

8. April 15, 2025 (Tuesday): The district court issued the 4/15 Order requiring Petitioner to serve X Corp. with the complaint, Emergency Motion for Reconsideration, and the 4/15 Order within 24 hours - a requirement that contradicts the 90-day service period under FRCP 4(m) and effectively prevents Petitioner from exercising his right to perfect his pleadings before initiating service. Petitioner had expressly informed the court (in the Emergency Motion for Reconsideration) of his intention to amend the complaint pursuant to FRCP 15(a)(1). The rushed service requirement would

force service of an admittedly incomplete complaint, thereby triggering the 21-day post-service amendment period prematurely and unnecessarily.

9. April 15, 2025: Petitioner's counsel was conducting a previously scheduled webinar from 12:30-2:00 PM, which she had specifically informed the court clerk about. Upon seeing the 4/15/ Order late in the business day after conducting this professional obligation, compliance with the 24-hour service requirement became practically impossible.

**Underlying Constitutional Claims**

Petitioner's complaint alleges that X Corp., under the direction of its owner Elon Musk (who simultaneously serves as a Special Government Employee heading the Department of Government Efficiency), has engaged in systematic suppression of Petitioner's religious expression on its platform. This suppression includes account throttling that prevents his content from being seen, mass deletion of posts and media, and other content restrictions that clearly violate his First Amendment rights given the government entanglement with the platform's ownership.

**REASONS WHY THE WRIT SHOULD ISSUE**

**I. The Legal Standard for Mandamus Relief**

A writ of mandamus is an extraordinary remedy reserved for extraordinary circumstances. This Court will issue the writ only when: (1) the petitioner has no

other adequate means to obtain the desired relief; (2) the petitioner has demonstrated a clear and indisputable right to the issuance of the writ; and (3) the Court, in the exercise of its discretion, is satisfied that the writ is appropriate under the circumstances. Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380-81 (2004).

This case presents precisely the extraordinary circumstances warranting mandamus relief.

## II. Petitioner Has No Other Adequate Means to Obtain Relief

### A. The 24-Hour Service Requirement Creates Immediate Jeopardy

The district court's 4/15 Order requires service within 24 hours - a practical impossibility given business hours, the timing of the order, and the unavailability of emergency process servers. Failure to comply would likely result in dismissal or sanctions. No ordinary appeal can remedy this situation because:

1. The service deadline will expire before any appeal could be heard;

2. Petitioner would be forced to either violate the order (risking sanctions) or incur exorbitant costs for emergency service that may not even be possible to arrange; and

3. The order directly interferes with Petitioner's right to amend his complaint before service under FRCP 15(a)(1).

## B. Constitutional Violations Continue While Relief Is Delayed

Each day that passes without consideration of Petitioner's emergency motions allows the continuing suppression of his religious expression on X's platform. This ongoing irreparable harm to First Amendment rights cannot be remedied through ordinary appeal. As the Supreme Court has recognized, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

## C. Evidence Destruction Continues Without Court Intervention

Petitioner has documented a pattern of content removal timed to his legal communications. Without emergency intervention, X Corp. will likely continue removing evidence central to this litigation, permanently prejudicing Petitioner's ability to prove his claims.

## III. Petitioner Has a Clear and Indisputable Right to Relief

## A. The District Court Clearly Misinterpreted the Venue Provision

The district court's denial of emergency relief and transfer order rely entirely on its conclusion that "venue is improper before this Court" and "venue is proper in

Tarrant County, Texas." This conclusion blatantly misreads X Corp.'s venue provision, which states:

"All disputes related to these Terms or the Services... will be brought exclusively in the **U.S. District Court for the Northern District of Texas OR state courts located in Tarrant County**, Texas, United States..." (emphasis added)

This provision clearly establishes two distinct venue options separated by the disjunctive "or":

1. Any division within the U.S. District Court for the Northern District of Texas; OR

2. State courts specifically located in Tarrant County.

The Dallas Division is unquestionably within the Northern District of Texas, making venue entirely proper. The geographic limitation ("Tarrant County") applies only to the second option regarding state courts. The district court's misreading of this unambiguous provision constitutes clear and indisputable error.

Basic principles of contract interpretation support Petitioner's reading:

1. The plain meaning of the disjunctive "or" creates alternative options

2. If the drafter intended all suits to be in Tarrant County, they would have written "U.S. District Court for the Northern District of Texas, Fort Worth Division"

3. Courts must give effect to all words in a contract, and reading "Northern District of Texas" to mean only "Fort Worth Division" improperly renders the broader district designation meaningless

## B. The 24-Hour Service Requirement Directly Violates the Federal Rules

The district court's 4/15 Order requiring service within 24 hours directly contradicts FRCP Rule 4(m), which provides 90 days for service of process. There is no rule requiring accelerated service in TRO cases where the plaintiff has not requested ex parte relief. This extraordinary compression of the service timeline lacks any legal justification or emergency basis.

The Supreme Court has consistently held that district courts must apply the Federal Rules as written and cannot create procedural rules that circumvent or conflict with them. See Carlisle v. United States, 517 U.S. 416, 426 (1996) ("Whatever the scope of federal courts' inherent power to formulate procedural rules not specifically required by the Constitution or the Congress, it does not include the power to develop rules that circumvent or conflict with the Federal Rules"). This principle applies equally to the Federal Rules of Civil Procedure. See Bank of Nova Scotia v.

United States, 487 U.S. 250, 255 (1988) (emphasizing that courts remain bound by the Federal Rules and the balance they strike between competing interests). No exceptional circumstances exist here to justify deviating from the Rules, particularly when Petitioner has already provided courtesy copies to X Corp's counsel via email, rendering formal "service of process" purely procedural rather than substantive.

**C. The District Court's Refusal to Consider Emergency Relief is Clear Error**

The district court's denial of emergency injunctive relief without addressing the merits, based solely on an erroneous venue determination, constitutes clear error. When facing motions alleging ongoing constitutional violations, district courts have a duty to consider the substance of such claims, particularly where irreparable harm is alleged.

The court's refusal to address Petitioner's substantive claims of ongoing First Amendment violations based on an incorrect reading of a venue provision constitutes an abdication of judicial responsibility that warrants this Court's intervention.

**IV. Mandamus Relief is Appropriate Under These Circumstances**

This case presents extraordinary circumstances warranting mandamus relief:

1. The district court has imposed a practically impossible procedural requirement that directly contradicts the Federal Rules of Civil Procedure;

2. The court has misinterpreted an unambiguous contractual provision to incorrectly find venue improper;

3. The court has refused to consider emergency constitutional claims based on this erroneous interpretation;

4. Ongoing irreparable harm to First Amendment rights continues daily without judicial intervention;

5. Evidence critical to Petitioner's case is being systematically removed without court protection; and

6. The case raises substantial constitutional questions concerning the potential entanglement between government surveillance and platform censorship, as evidenced by recent reporting that Musk's DOGE is using AI to monitor federal employees for anti-Musk speech while simultaneously controlling a platform that suppresses religious expression critical of Musk himself as well as institutions Musk has publicly embraced.

7. The degree of government-platform entanglement in this case far exceeds any precedent - Musk has maintained direct, high-level access to America's intelligence apparatus through documented visits to the Pentagon, NSA, and

CIA within a single month (March-April 2025), an extraordinary level of access rarely granted even to elected officials. When departing the Pentagon on March 21, 2025, Musk was overheard telling Defense Secretary Hegseth, "If there's anything I can do to be helpful, I'd like to see you" - explicitly establishing back-channel communications that will continue regardless of formal title. (https://abc7ny.com/post/pete-hegseth-says-hes-meeting-elon-musk-pentagon-discuss-efficiencies/16061808/)

8. This case involves unprecedented questions about religious viewpoint discrimination, particularly targeting Petitioner's Protestant critique of Catholic institutions after both Musk and Trump have publicly expressed admiration for the Pope. The systematic suppression of Petitioner's content began to intensify specifically after Petitioner posted content critical of Musk's July 2, 2022 meeting with Pope Francis, which Musk described as an "honor" - demonstrating that the censorship is content-specific and viewpoint-discriminatory rather than neutral platform moderation. (Elon Musk (@elonmusk), X (July 2, 2022, 3:54 AM), https://twitter.com/elonmusk/status/1543050489050402816)

The constitutional implications extend beyond this individual case to the broader functioning of the First Amendment in the digital age. Recent reporting describes an unprecedented scenario where the controlling owner of a major platform is

13

simultaneously leading a government agency deploying AI to target speech critical of that same individual. As government ethics expert Kathleen Clark told Reuters, this "sounds like an abuse of government power to suppress or deter speech that the president of the United States doesn't like."
(https://www.reuters.com/technology/artificial-intelligence/musks-doge-using-ai-snoop-us-federal-workers-sources-say-2025-04-08/)

The pattern of procedural obstacles imposed by the district court--misreading clear contractual language, imposing impossible service requirements, and refusing to consider emergency relief --suggests a troubling bias against Petitioner's claims. This Court's supervisory intervention is necessary to ensure that substantive constitutional claims receive fair consideration regardless of the parties involved.

**CONCLUSION**

For the foregoing reasons, Petitioner Thomas Richards respectfully requests that this Court issue a writ of mandamus:

1. Directing the district court to vacate its April 15, 2025 Order requiring service within 24 hours;

2. Directing the district court to vacate its April 14, 2025 Order finding venue improper in the Dallas Division;

3. Ordering the district court to consider Petitioner's emergency motion for temporary restraining order on its merits; and

4. In the alternative, withdrawing the case from the district court and considering Petitioner's emergency motion directly.

Respectfully submitted,

\s\ Lisa Weingarten Richards
Lisa Weingarten Richards
VSB #96671
NY BAR #4932570
LWR Law Offices
2045 S Pleasant Valley Rd. #1098
Winchester, VA 22601
Tel.: (202) 981-2059
lwr@lwrlawoffices.com
Counsel for Petitioner

CERTIFICATE OF SERVICE

I hereby certify that shortly after filing I will provide courtesy copies of this emergency filing to X Corp. via email to amehes@x.com and legal@x.com. I also certify that I will provide courtesy notification of this filing to the district court shortly after filing. Given the emergency nature of this filing and the district court's impossible 24-hour service requirement, I request that this Court direct the method and timeline for formal service.

April 15, 2025
\s\Lisa Weingarten Richards