IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THOMAS RICHARDS,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>X CORP.,<br><br>　　　　　　　Defendant. | Civil Action No. 3:25-cv-00916-X |

**DEFENDANT X CORP.'S OPPOSITION TO PLAINTIFF'S RENEWED EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER**

I.    **INTRODUCTION**

Plaintiff's Renewed Emergency Motion for Temporary Restraining Order (Dkt. 17; "Motion") should be denied because Plaintiff fails to meet the high burden to obtain the extraordinary relief he seeks. The gravamen of Plaintiff's Complaint is that X Corp. allegedly removed or restricted Plaintiff's posts and other content on X, the social media platform X Corp. operates. In his Motion, Plaintiff seeks a temporary restraining order ("TRO") and preliminary injunction to require X Corp. to restore Plaintiff's content posted on X, and to provide documentation of limitations that purportedly have been placed on his account before discovery has even begun. Mot. at 15–17.

The Motion falls well short of establishing the four required elements to obtain a TRO or preliminary injunction:

*First*, Plaintiff fails to show a substantial likelihood of success on the merits. All his claims are barred by the applicable terms of service to which Plaintiff agreed when he created and used his X account, by section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 ("Section 230"), and by the First Amendment. The Complaint also fails to plausibly allege the three claims discussed in the Motion, and Plaintiff effectively concedes he fails to show a likelihood of success as to his other claims.

*Second*, Plaintiff fails to show he will suffer irreparable harm. His First Amendment rights are not implicated because X Corp. is a private entity and he has no First Amendment right to post content on X. Even if Plaintiff were able to establish his claims (as noted above, he cannot), Plaintiff also fails to show that money damages would not be adequate to address any purported harm. His groundless assertion that the alleged removal of his content from X constitutes spoliation lacks any evidentiary support and, in any event, fails to demonstrate irreparable harm.

2

*Third*, Plaintiff fails to show the balance of harm is in his favor, when he has failed to show any threat of harm.

*Fourth*, Plaintiff fails to show injunctive relief would be in the public interest.

Accordingly, X Corp. respectfully requests this Court deny Plaintiff's Motion.

## II.    BACKGROUND

### A.    The Complaint's Allegations

Plaintiff alleges that "for approximately 16 years," he has had an X account with the username "@tlthe5th," through which he has allegedly made "over 61,600 posts" about his "religious beliefs." Dkt. 1 ("Compl.") ¶ 17. Plaintiff also alleges he became "a paid [X] Premium subscriber for approximately 18 months." *Id.* ¶ 22.

Plaintiff alleges that X Corp. "shadowban[ned]"[1] his account, which "limited" Plaintiff's "reach" on X, "over an extended period," and that this "content suppression . . . intensified" after Elon Musk's July 2, 2022 visit to the Vatican.[2] *Id.* ¶¶ 1, 23, 50. X Corp. also allegedly suspended Plaintiff's account on February 14 and March 12, 2025, and "throttl[ed]" his "four automated ('bot') accounts." *Id.* ¶¶ 53–54. Between March 19 and April 6, 2025, X Corp. allegedly removed most of Plaintiff's posts on X. *Id.* ¶ 118. Plaintiff alleges he has not violated "X's Terms of Service" and that X Corp.'s purported conduct was "discrimination against his religious viewpoint." *Id.* ¶¶ 22, 50. He further alleges X Corp.'s conduct breached the X Corp.'s "User Agreement," the "Premium subscriber agreement," and the "Developer Agreement." *Id.*

---

[1] "Shadow ban" means "to cause (a user or their content) to be hidden from some or all other users usually without the user's knowledge." https://www.merriam-webster.com/dictionary/shadow%20ban.

[2] Plaintiff alleges X Corp. is "owned" by Elon Musk, who has an "official role" in the "Department of Government Efficiency (DOGE)" in the Trump Administration. *Id.* ¶ 56. Plaintiff further alleges other purported ties between Mr. Musk and the federal government. *See id.* ¶¶ 55–74.

¶ 133 & n.94.[3]

Plaintiff asserts claims for: (1) violation of the First Amendment under 42 U.S.C. § 1983 ("Section 1983"); (2) violation of subsection (c)(2)(A) of Section 230; (3) breach of contract; (4) promissory estoppel; (5) violation of the Texas Deceptive Trade Practices Act ("DTPA"); (6) tortious interference with prospective business relations; (7) "common carrier liability"; (8) religious discrimination in violation of 42 U.S.C. § 1981; and (9) declaratory judgment. *Id.* ¶¶ 109–180.

### B.     The Relevant TOS, Purchaser Terms, and Developer Terms

Plaintiff's breach of contract claim is premised on purported breaches of X Corp.'s "User Agreement" (*i.e.*, Terms of Service) and the "Premium subscriber agreement" (*i.e.*, X Corp.'s Purchaser Terms).[4] *Id.* ¶ 133 & n.94.

The Relevant TOS, which is the current version of X Corp.'s Terms of Service and is identified in the Complaint (*id.* ¶ 133 n.94), provides that X Corp. "may . . . remove or refuse to distribute any Content on the Services, limit distribution or visibility of any Content on the service, suspend or terminate users . . . without liability to" Plaintiff, and may "terminate [Plaintiff's] account or cease providing [him] with all or part of [X Corp.'s] Services for any . . . reason or no reason." Req. for Judicial Notice ("RJN"), Ex. 1 at 3–4. The Relevant TOS also contains a disclaimer which provides that X Corp. "disclaim[s] all . . . liability for . . . the . . .

---

[3] Although Plaintiff invokes the Developer Agreement in his Complaint, he does not allege he is a developer for X. Rather, he alleges he "maintains four automated ("bot") accounts." Compl. ¶ 54.a.

[4] Although Plaintiff does not invoke X Corp.'s Developer Agreement in his Motion, Plaintiff alleges in his Complaint that X Corp. also breached that contract. Compl. ¶ 133. The Developer Agreement provides, in relevant part, that X Corp. "may update, modify or discontinue any features or function of the Licensed Material, in whole or in part, from time to time." RJN, Ex. 3 at 3. "Licensed Material" is defined to include posts on X. *Id.*, Ex. 3 at 1.

availability . . . of the Services," or any "harm that results from your access to or use of the Services or any Content." *Id.*, Ex. 1 at 4. The Relevant TOS also has a limitation of liability provision that states:

> [X Corp.] SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES . . . , WHETHER INCURRED DIRECTLY OR INDIRECTLY . . . RESULTING FROM . . . [Plaintiff's] ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE SERVICES . . . . THE LIMITATIONS OF THIS SUBSECTION SHALL APPLY TO ANY THEORY OF LIABILITY, WHETHER BASED ON WARRANTY, CONTRACT, STATUTE, TORT . . . .

*Id.*, Ex. 1 at 4–5.

The Purchaser Terms provide that "X [Corp.] may suspend or terminate [the user's] access to Paid Service(s) or cease providing [the user] with all or part of the Paid Services (without any liability) at any time for any or no reason." *Id.*, Ex. 2 at 2. Those terms also have a limitation of liability provision that is substantively identical to the provision noted above in the Relevant TOS. *Id.*, Ex. 2 at 3–4.

### C.    Plaintiff's Motion

Plaintiff filed his Motion on April 16, 2025. In the Motion, Plaintiff seeks a TRO and preliminary injunction mandating X Corp. to do the following: (1) "immediately restore all of Plaintiffs historical content that was removed from public visibility on March 19, 2025, April 5, 2025, and April 6, 2025," including his "approximately 61,600 posts" and any "posts removed from view on or after March 19, 2025," and his "approximately 5,974 media items" posted on X; (2) "[r]emove all algorithmic throttling and visibility filtering from Plaintiff's account"; (3) "[e]nsure that Plaintiff's account receives the same algorithmically beneficial treatment as accounts that are algorithmically boosted"; (4) "[r]estore full API access for Plaintiff's . . . bots"; (5) "remov[e] all rate limiting, error generation, and other technical restrictions"; and (6) provide "documentation of all . . . content suppression measures that have been applied to Plaintiff's

5

account since January 1, 2022." Mot. at 15–17.

On April 17, 2025, this Court issued an order requiring Plaintiff to serve X Corp. "by whatever means necessary" a copy of the Motion and the Court's April 17, 2025 order within 24 hours. Dkt. 20. The next day, Plaintiff served those documents on X Corp. through its registered agent. *See* Dkt. 23 at 3 (asserting that Plaintiff served the Motion and the April 17, 2025 order on X Corp.'s registered agent on April 18, 2025).[5] The order also required X Corp. to file a response "within 7 days of receiving service" and permits Plaintiff to file a reply within 7 days of X Corp.'s response. Dkt. 20 at 1. Thus, X Corp.'s deadline to file an opposition is April 25, 2025. *See* Dkt. 23 at 4.[6]

## III.    LEGAL STANDARD

"[B]efore a temporary restraining order or preliminary injunction can be granted," the moving party "must satisfy a cumulative burden of proving each" of these four elements:

(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *accord Turner v. Epps*, 460 F. App'x 322,

---

[5] On April 17, 2025, Plaintiff's counsel purported to have served X Corp. with a copy of the Motion and the Court's April 17, 2025 order by emailing them to an email address purportedly associated with X Corp.'s registered agent, to an email address for a member of X Corp.'s Legal Department, and to a general email address also associated with X Corp.'s Legal Department. These attempts at service do not comply with any of the authorized means of serving a corporation. *See* Fed. R. Civ. P. 4(h).

[6] As of the date when this Response was filed, X Corp. has not been served with the Complaint or summons, nor has Plaintiff filed a proof of service of either document. X Corp. respectfully submits this Opposition consistent with the Court's April 17, 2025 order, but in doing so it does not waive, and expressly preserves, its defenses under Federal Rule of Civil Procedure 12, including but not limited to insufficient process and insufficient service of process.

325 n.3 (5th Cir. 2012). "Because injunctive relief in the form of a TRO or preliminary injunction is considered an 'extraordinary and drastic remedy,' it is not granted routinely, 'but only when the movant, by a clear showing, carries the burden of persuasion.'" *Mitchell v. Greenville Prop. Owners, LLC*, 2021 WL 5908970, at *1 (N.D. Tex. Dec. 14, 2021) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).

## IV.    ARGUMENT

### A.    Plaintiff's Motion Is Disfavored Because He Seeks Mandatory, Not Prohibitory, Relief

As a threshold matter, Plaintiff's motion is disfavored and subject to a heightened standard because he seeks mandatory, not prohibitory, relief. A "prohibitory" TRO or preliminary injunction "freezes the status quo, and is intended 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *RCI Ent. (San Antonio), Inc. v. City of San Antonio*, 2021 WL 1318008, at *2 (W.D. Tex. Apr. 8, 2021) (quoting *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997)). A "mandatory" TRO or preliminary injunction, by contrast, "compels defendants to promptly and affirmatively act in a specific and extremely extensive manner." *Id.* (quoting *United States v. Texas*, 601 F.3d 354, 362 (5th Cir. 2010)). "[A] request for mandatory relief . . . is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Roark v. Individuals of Fed. Bureau of Prisons, Former & Current*, 558 F. App'x 471, 472 (5th Cir. 2014) (internal quotation mark omitted).

Plaintiff requests an order mandating X Corp. to restore content on his X account; change how the X algorithm applies to his account, including Plaintiff's "bots"; remove "technical restrictions" on his content; and provide "documentation" of purported content suppression "since January 1, 2022." Mot. at 15–17. In other words, Plaintiffs requests mandatory relief that compels X Corp. "to promptly and affirmatively act in a specific and extremely extensive

7

manner." *RCI Ent.*, 2021 WL 1318008, at *2 (TRO denied). As such, Plaintiff's Motion is

"disfavored," and he bears the burden of showing "the facts and law clearly favor" granted the

relief he seeks. *Roark*, 558 F. App'x at 472 (affirming denial of preliminary injunction).

### B.    Plaintiff Fails to Show Injunctive Relief Is Warranted

#### 1.    *Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits*

"[A]n absence of plausible claims precludes a finding of substantial likelihood of success

on the merits of those claims." *Casanova v. Willow Bend Mortg. Co*., 2024 WL 1976593, at *2

(N.D. Tex. Apr. 5, 2024), *report & recomm. adopted*, 2024 WL 1980732 (N.D. Tex. May 3,

2024) (motion for TRO denied). As explained below, Plaintiff's claims are not plausible because

they are barred by (1) the Relevant TOS and Purchaser Terms, to which Plaintiff agreed,

(2) Section 230, and (3) the First Amendment, and because his Complaint fails to plausibly

allege the requisite elements of his claims. Thus, Plaintiff fails to show he has a substantial

likelihood of success on the merits, and his Motion should be denied. *See Casanova*, 2024 WL

1976593, at *2.

##### a.    *The Relevant TOS and Purchaser Terms Bar Plaintiff's Claims*

Plaintiffs' claims are barred by the Relevant TOS and Purchaser Terms, which gave X

Corp. the contractual right to remove his posts and media content from X, to limit visibility of

his content, and to suspend his account. The Relevant TOS provides that X Corp. "may . . .

remove or refuse to distribute any Content on the Services, limit distribution or visibility of any

Content on the service, suspend or terminate users . . . without liability to" Plaintiff, and may

"terminate [Plaintiff's] account or cease providing [him] with all or part of [X Corp.'s] Services

for any . . . reason or no reason." RJN, Ex. 1 at 3–4. The Purchaser Terms also provide that "X

[Corp.] may suspend or terminate [the user's] access to Paid Service(s) or cease providing [the

user] with all or part of the Paid Services (without any liability) at any time for any or no

reason." *Id.*, Ex. 2 at 2. These provisions bar his claims, which seek to hold X Corp. liable for

allegedly exercising its contractual right to remove his posts and media content from X, allegedly

limiting the visibility of his content, and allegedly suspending his account. *See Zhang v. Twitter

Inc.*, 2023 WL 5493823, at \*5 (N.D. Cal. Aug. 23, 2023) (dismissing claim based on alleged

suspension of X account where "under the express terms of the Terms of Service, [X Corp.] had

the contractual right to terminate Plaintiff's account for any reason"), *aff'd*, 2025 WL 66050 (9th

Cir. Jan. 10, 2025), *cert. denied sub nom. Zhang v. X Corp.*, 2025 WL 663740 (U.S. Mar. 3,

2025); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at \*5 (N.D. Cal. Nov. 7, 2022) (same).

The disclaimers and limitation of liability clauses in the Relevant TOS and the Purchaser

Terms, which are binding on Plaintiff, also bar Plaintiff's claims against X Corp. The Relevant

TOS provides that X Corp. "disclaim[s] all . . . liability for . . . the . . . availability . . . of the

Services." RJN, Ex. 1 at 4. And the Relevant TOS and Purchaser Terms provide that X Corp.

"SHALL NOT BE LIABLE FOR ANY . . . DAMAGES . . . , RESULTING FROM . . .

[Plaintiff's] ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE

SERVICES," under "ANY THEORY OF LIABILITY," including "STATUTE" and "TORT."

*Id.*, Ex. 1 at 4–5; Ex. 2 at 3–4. Under Texas law, "[l]imitation-of-liability clauses . . . are

generally valid and enforceable." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,

572 S.W.3d 213, 231 (Tex. 2019).

Plaintiff's claims are all based on the alleged removal of his content from X and

limitations of the services provided by X Corp. *See, e.g.*, Compl. ¶¶ 1, 23, 50, 53–54, 118. His

claims therefore fall squarely within, and are completely barred by, the disclaimer and limitation

of liability clauses in the Relevant TOS and the Purchaser Terms. *See Curtis v. Cerner Corp.*,

621 B.R. 141, 187 (S.D. Tex. 2020) (granting motion to dismiss where enforceable limitation of liability clause applied to claims "based in contract, tort, strict liability, or any other theory of law"); *Moon Soo Kim v. Stanley Convergent Sec. Sols., Inc.*, 2013 WL 1715789, at *3 (N.D. Tex. Apr. 19, 2013) (enforcing limitation of liability clause on motion to dismiss).

In sum, Plaintiff's claims are barred by the Relevant TOS and the Purchaser Terms. Thus, Plaintiff cannot show a substantial likelihood of success on the merits of his claims, and his Motion should be denied.

### b.    Section 230 Immunizes X Corp. From Plaintiff's Claims

Section 230 bars Plaintiff's claims, which seek to hold X Corp. liable for its "traditional editorial functions," which include its decisions about whether to publish user content on X. 47 U.S.C. §§ 230(c)(1), 230(e)(3); *see also McCall v. Zotos*, 2023 WL 3946827, at *3 (11th Cir. June 12, 2023) (Section 230 bars lawsuits seeking to impose liability for the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content"). "By its plain text, [Section] 230 creates federal immunity to any cause of action that would make internet service providers liable for information originating with a third-party user of the service." *Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020), *cert. denied*, 142 S. Ct. 139 (2021). Under Section 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Section 230(e)(3) provides, aside from exceptions not relevant here, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." "Courts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (collecting cases).

10

Here, all three prongs of the Section 230(c)(1) analysis are met: (1) X Corp. is an "interactive computer service" provider; (2) Plaintiff's X content is "information provided by another information content provider"; and (3) Plaintiff's allegations treat X Corp. as a "publisher" of that content. *See* 47 U.S.C. § 230 (c)(1).[7] Therefore, X Corp. is immune from liability for Plaintiff's claims based on his X content.

**X Corp. is an "interactive computer service" provider.** Section 230 broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer . . . service." 47 U.S.C. § 230(f)(2). As courts unanimously have held, social media platforms, including X Corp. (formerly Twitter, Inc.), are "interactive computer service providers." *E.g., Morton v. Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) ("Twitter provides the prototypical service entitling it to protections of [Section 230]" and "[e]very decision the Court has seen to consider the issue has treated Twitter as an interactive computer service provider, even at the motion to dismiss stage." (citation omitted)). Plaintiff's allegations require the same conclusion. See Mot. at 2 ("X Corp. [is] a massive social media company . . . .").

---

[7] Plaintiff argues subsection (c)(2) of Section 230 does not apply. Mot. at 9–10. X Corp. does not invoke immunity from liability under that provision, which applies where an "interactive computer service" provider has taken:

> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described above.

47 U.S.C. § 230(c)(2). Because subsection (c)(1) of Section 230 immunizes X Corp. from his claim, the Court need not analyze subsection (c)(2). *See Fed. Trade Comm'n v. Match Grp., Inc*., 2022 WL 877107, at *10 (N.D. Tex. Mar. 24, 2022) ("Because immunity under § 230 (c)(1) applies, the Court need not reach the question of whether § 230 (c)(2) also bars Count I.").

***Plaintiff's account and content are information provided by another "information content provider."*** Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Plaintiff's X account and his posts and media posted on X constitute "information provided by another information content provider"—*i.e.*, not X Corp.—within the meaning of the second prong of the Section 230 analysis. *See Wells v. Youtube, LLC*, 2021 WL 2652966, at *4 (N.D. Tex. May 17, 2021) (YouTube was not the "information content provider" because plaintiff "fails to allege that [YouTube] contributed to the creation or development" of the content at issue), *report & recomm. adopted*, 2021 WL 2652514 (N.D. Tex. June 28, 2021); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017) (Facebook was not the "information content provider" because plaintiff "fail[ed] to allege a single fact suggesting that the Facebook Defendants authored the offending posts."); *Thomas v. Twitter Corp. Off.*, 2023 WL 8452200, at *8 (S.D.N.Y. Dec. 6, 2023) (Plaintiff, not Twitter Inc., was the "information content provider" of "his tweets").

***Plaintiff seeks to treat X Corp. as a "publisher."*** For purposes of the third prong of the Section 230 immunity test, what matters "is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided." *Barnes v. Yahoo, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009). Plaintiff's claims all seek to hold X Corp. liable for protected "publishing" activity, *i.e.*, its alleged decisions to remove Plaintiff's posts and content from its platform and to suspend his account. *See* Compl. ¶¶ 1, 23, 50 (alleging that X Corp. "shadowban[ned]" his account, which "limited" Plaintiff's "reach" on X, "over an extended period," and "content suppression"); *id.*

¶ 53–54 (alleging that X Corp. suspended Plaintiff's account on February 14 and March 12, 2025, and "throttl[ed]" his "four automated ('bot') accounts"); *id.* ¶ 118 (alleging that between March 19 and April 6, 2025, X Corp. allegedly removed most of Plaintiff's posts on X); *id.* ¶¶ 22, 50 (alleging that X Corp. wrongfully moderated his content because he allegedly has not violated "X's Terms of Service" and that X Corp.'s purported conduct was "discrimination against his religious viewpoint"); *id.* ¶ 133 & n.94 (alleging that X Corp.'s alleged removal of his posts and content and its suspension of his account breached the X Corp.'s "User Agreement," the "Premium subscriber agreement," and the "Developer Agreement."). Because Plaintiffs' claims seek to hold X Corp. liable for its "publishing" activity, the third prong of the Section 230 test is met. *See* 47 U.S.C. § 230(c)(1); *see also La'Tiejira*, 272 F. Supp. 3d at 993 ("[T]he monitoring, screening, and deletion of user-generated content are actions quintessentially related to a publisher's role." (cleaned up) (quoting *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003))); *Thomas*, 2023 WL 8452200, at *8 ("Section 230 would appear to immunize Twitter from . . . all lawsuits seeking to hold Twitter liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter the content provided by Plaintiff." (cleaned up)); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020) (Section 230 barred First Amendment claims where plaintiff alleged defendants "demonetiz[ed], censor[ed], restrict[ed] and remov[ed] his videos"); *Green v. YouTube, LLC*, 2019 WL 1428890, at *2–3, *6 (D.N.H. Mar. 13, 2019) (allegations that Twitter, Inc. and other defendants "engaged in shadowbanning," among other acts, "describe conduct that constitutes the exercise of a publisher's traditional editorial functions" (quotation marks omitted)), *report & recomm. adopted*, 2019 WL 1428311 (D.N.H. Mar. 29. 2019).

In sum, X Corp. meets all three requirements for Section 230 immunity. Thus, Plaintiff

cannot show a substantial likelihood of success on the merits of his claims, and his Motion should be denied.

### c.    The First Amendment Bars Plaintiff's Claims

The Supreme Court recently confirmed that "[w]hen [social media] platforms use their Standards and Guidelines to decide which third-party content those feeds will display . . . they are making expressive choices. And because that is true, they receive First Amendment protection." *Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024). Consistent with this conclusion, courts have recognized that X Corp. "has a First Amendment right to decide what to publish and what not to publish on its platform." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021); *see also O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–88 (N.D. Cal. 2022) ("Like a newspaper or a news network, [X Corp.] makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment."), *aff'd on other grounds sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); id. ("[X Corp.] has important First Amendment rights that would be jeopardized by a Court order telling [X Corp.] what content-moderation policies to adopt and how to enforce those policies.").

Plaintiff's claims seek to hold X Corp. liable for its editorial decisions about whether it permits Plaintiff's content to be disseminated on X, its private social media platform. *See, e.g.*, Comp. ¶¶ 1, 23, 50, 53–54, 118. The First Amendment therefore bars Plaintiff's claims, and as a result Plaintiff cannot show a substantial likelihood of success on the merits of his claims.

### d.    Plaintiff Fails to State a Plausible Claim for Relief

Plaintiff argues he is likely to succeed on the merits of his (1) First Amendment claim under Section 1983, (2) and "common carrier liability" claim, and (3) religious discrimination

14

claim under 42 U.S.C. § 1981.[8] Mot. at 8–12. His Complaint, however, fails to plausibly allege these claims and therefore he fails to demonstrate a substantial likelihood of success on the merits.

> i)    Plaintiff fails to plausibly allege a Section 1983 claim.

 "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Julapalli v. Boom*, 2025 WL 314123, at *2 (5th Cir. Jan. 28, 2025).

Plaintiff fails to plausibly allege X Corp. violated his rights under the First Amendment because Plaintiff has no First Amendment right to post his content on X, a privately owned social media platform. "[C]orporate liability under section 1983 requires proof of three elements: 'a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.'" *Sims v. Dallas Indep. Sch. Dist.*, 2023 WL 4826210, at *2 (N.D. Tex. July 26, 2023) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). The Complaint does not identify any policymaker at X Corp. for purposes of his Section 1983 claim. *See Jones v. Johnson Cnty.*, 2006 WL 8437377, at *2 (N.D. Tex. Feb. 8, 2006) (dismissing section 1983 claim "Plaintiff wholly fails to identify any policymaker who promulgated policies or customs that caused his injury."). Nor does Plaintiff identify any official policy or custom of X Corp., much less plausibly allege any policy or custom was the "moving force" of the removal

---

[8] Plaintiff does not contend he has a likelihood of success on his other claims for (1) violation of subsection (c)(2)(A) of Section 230, (2) breach of contract, (3) promissory estoppel, (4) violation of the DTPA, (5) tortious interference with prospective business relations, and (6) declaratory judgment. *See generally* Mot. He therefore fails to meet his burden of showing substantial likelihood of success for these claims. *See Perry v. Hart*, 2023 WL3010767, at *6 (S.D. Tex. Mar. 20, 2023) (substantial likelihood of success not shown where plaintiff "has not presented any argument" regarding his claims).

of his X content. *See Lasyone v. Mgmt. & Training Corp.*, 2024 WL 330482, at *4 (N.D. Tex. Jan. 29, 2024) (dismissing section 1983 claim where plaintiff failed to allege corporation had "an official custom or policy that resulted in a violation of his constitutional rights").

Even if Plaintiff had plausibly alleged the first element of his Section 1983 claim (he has not), Plaintiff also fails to plausibly allege the second element, that X Corp. acted under color of state law. "Federal officials acting under color of federal law are not subject to suit under Section 1983, nor does the statute reach purely private conduct." *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016). "Where, as here, the defendant[] [is a] private actor[], the challenged conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State for Section 1983 to apply." *Id.* (internal quotation marks omitted). While Plaintiff alleges Mr. Musk has an "official role" and other ties to the Trump Administration (Compl. ¶¶ 55–74), he does not allege any conduct by X Corp. that can be attributed to any *state* government or entity. *See Munoz v. S. Foodservice Mgmt., Inc.*, 2024 WL 3886504, at *3 (W.D. Tex. July 24, 2024) (dismissing section 1983 claim with prejudice where plaintiff alleged private corporation acted under color of federal, but not state, law), *report & recomm. adopted*, 2024 WL 3883511 (W.D. Tex. Aug. 19, 2024); *Brown v. Praxair, Inc.*, 2018 WL 4365526, at *2 (M.D. La. Sept. 13, 2018) (same).

In sum, Plaintiff fails to plausibly allege his Section 1983 claim, and therefore fails to show a substantial likelihood of success on the merits of that claim.

ii)    Plaintiff fails to plausibly allege "common carrier liability."

Plaintiff's claim for "common carrier liability" based on "[t]raditional common carrier principles" (Compl. ¶ 166) necessarily fails because it is not a cognizable cause of action.[9] *See*

---

[9] Justice Thomas's concurrence in *Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021), does not support recognizing Plaintiff's purported "common carrier liability"

*Dick v. Colorado Hous. Enters., LLC*, 2017 WL 6492114, at *2 (N.D. Tex. Mar. 31, 2017)

("Plaintiff cannot meet her burden of showing substantial likelihood of success on the merits as

to her claim for unclean hands because such cause of action does not exist under Texas law.");

*Jones v. Performance Serv. Integrity*, 492 F. Supp. 2d 590, 596 (N.D. Tex. 2007) (dismissing

claim "not recognized" by state or federal law). Plaintiff therefore fails to show a substantial

likelihood of success on this claim.

          iii)    <u>Plaintiff fails to plausibly allege violation of 42 U.S.C.</u>
<u>§ 1981.</u>

Plaintiff's 42 U.S.C. § 1981 claim based on purported religious discrimination (Compl.

¶¶ 172–74) fails because "§ 1981 'does not protect against religious discrimination.'" *Sibley v.*

*Touro LCMC Health*, 2024 WL 5118489, at *4 (5th Cir. Dec. 16, 2024) (quoting *McCoy v.*

*Homestead Studio Suites Hotels*, 177 F. App'x 442, 445 n.2 (5th Cir. 2006)) (affirming dismissal

of section 1981 claim alleging religious discrimination).

In sum, Plaintiff fails to show a substantial likelihood of success on his claims, which fail

as a matter of law. *See DC Operating, LLC v. Paxton*, 586 F. Supp. 3d 554, 573 (W.D. Tex.

2022) (denying preliminary injunction where plaintiff failed to show likelihood of success on

First Amendment and other claims).

### 2. *Plaintiff Fails to Show a Substantial Threat of Irreparable Harm*

"A plaintiff seeking a preliminary injunction must demonstrate that irreparable injury is

likely in the absence of an injunction." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023),

*cert. denied sub nom. Anibowei v. Mayorkas*, 144 S. Ct. 551 (2024) (internal quotation marks

---

claim. There, the Second Circuit found that President Trump's X account was a public forum,
but the Supreme Court later vacated that finding because of the change in presidential
administration in 2021. *Id.* at 1221. Justice Thomas offered an "analogy between common
carriers and digital platforms" to "help explain the Second Circuit's intuition," but recognized
there was not sufficient information in the record to substantiate the analogy. *Id.* at 1225.

omitted). "Irreparable injury is harm for which there is no adequate remedy at law." *Id.* (internal

quotation marks omitted) (affirming denial of preliminary injunction).

Even if Plaintiff had shown a substantial likelihood of success on the merits (as explained

above, he has not), Plaintiff's Motion still should be denied because Plaintiff fails to show a

substantial threat of irreparable harm. Plaintiff contends that, absent his requested relief, he will

suffer irreparable harm because the alleged removal of his X content: (1) constitutes violations of

his First Amendment rights, (2) amounts to spoliation, and (3) would cause harm to his "digital

ministry" because "observers" would "assume [his] content lacks value." Mot. at 12–13. None of

these demonstrates any threat of irreparable harm.

X Corp.'s conduct does not, as a matter of law, violate Plaintiff's First Amendment rights

because the First Amendment does not constrain X Corp., a private entity that operates a

privately owned social media platform. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S.

802, 812 (2019) ("[W]hen a private entity provides a forum for speech, the private entity is not

ordinarily constrained by the First Amendment because the private entity is not a state actor. The

private entity may thus exercise editorial discretion over the speech and speakers in the forum.");

*Davis v. Angelina Coll. Bd. of Trs.*, 2018 WL 1755392, at *3 (E.D. Tex. Apr. 11, 2018) (no

irreparable harm shown where plaintiff failed to demonstrate "he had any protected First

Amendment interests that were being impaired at the time relief was sought"). Moreover, even if

Plaintiff had plausibly alleged his First Amendment rights were violated (he has not), he still

would not be entitled to injunctive relief because money damages would be sufficient relief for

his alleged injuries. *See Breckles v. Collier*, 2022 WL 2336086, at *3 (E.D. Tex. Apr. 8, 2022)

(no irreparable harm because "damages would adequately compensate" plaintiff for alleged First

Amendment retaliation), *report & recomm. adopted*, 2022 WL 2328706 (E.D. Tex. June 28,

2022). Finally, Plaintiff merely speculates that X Corp.'s purported removal of his content on X would cause loss of evidence or a perceived loss of value in his digital ministry. *See Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, 2015 WL 9876952, at *8 (E.D. Tex. Dec. 23, 2015) (denying preliminary injunction where irreparable harm was based on "speculative evidence"), *report & recomm. adopte*d, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016).

Plaintiff fails to show a substantial threat of irreparable harm, and therefore his Motion should be denied.

### 3. *Plaintiff Fails to Show the Purported Threat of Harm to Him Outweighs Harm to X Corp.*

Because Plaintiff fails to show a substantial threat of irreparable harm, he necessarily fails to show the balance of harm is in his favor. *See Kellogg Co. v. Mattox*, 763 F. Supp. 1369, 1385 (N.D. Tex. 1991) (Plaintiff "has failed to meet its burden of showing that the balance of harm is in its favor because it has failed to demonstrate irreparable harm at all."), *aff'd sub nom. Kellogg Co. v. Morales*, 940 F.2d 1530 (5th Cir. 1991). Having failed to meet his burden on this element, his Motion should be denied.

### 4. *Plaintiff Fails to Show Injunctive Relief Would Be in the Public Interest*

Plaintiff argues that "[i]njunctions protecting First Amendment freedoms are always in the public interest." Mot. at 15–16 (quoting *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)). Plaintiff mistakenly relies on *Texans for Free Enterprise*. That case does not apply here; there, the defendant was a governmental entity charged with enforcing a state law that allegedly violated the First Amendment. 732 F.3d at 539. Here, by contrast, X Corp. is a private company and, as such, is not constrained by the First Amendment. *See Manhattan Cmty.*, 587 U.S. at 812. Because Plaintiff has not advanced any other argument on this element, he fails to meet his burden of showing injunctive relief would be in the public

interest. *See Carroll v. Rupert*, 2018 WL 9815634, at *1 (E.D. Tex. Mar. 20, 2018) (denying

TRO and preliminary injunction where plaintiff "did not clearly demonstrate that the injunction

would not disserve the public interest").

In sum, Plaintiff fails to demonstrate any of the four required elements for injunctive

relief are met, and therefore the Motion should be denied.

## V.    **CONCLUSION**

For these reasons, this Court should deny Plaintiff's Motion in its entirety.

Dated: April 24, 2025                                    Respectfully submitted,

By:  */s/ Kimberly Priest Johnson*
    Kimberly Priest Johnson
    Texas Bar No. 24027753
    kpj@shb.com
    Norma N. Bennett
    Texas Bar No. 24028492
    nbennett@shb.com
    SHOOK, HARDY & BACON, LLP
    600 Travis, Suite 3400[*]
    Houston, Texas 77002
    (713) 227-8008 (Telephone)
    (713) 227-9508 (Facsimile)

    Kenneth M. Trujillo-Jamison
    (application for admission pro hac vice
    pending)
    WILLENKEN LLP
    707 Wilshire Blvd., Suite 4100
    Los Angeles, CA 90017
    Telephone: (213) 955-9240
    Facsimile: (213) 955-9250
    ktrujillo-jamison@willlenken.com

    *Attorneys for Defendant X Corp.*

---

[*] Dallas Office Address Pending

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2025, a true and correct copy of the foregoing document was electronically transmitted to the Clerk of Court using the ECF System for filing, and was transmitted to Plaintiff's counsel via ECF.

*/s/ Norma N. Bennett*
Norma N. Bennett
