IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| THOMAS RICHARDS<br><br>*Plaintiff,*<br><br>v.<br><br>X Corp.<br><br>*Defendant* | Case No. 3:25-cv-916<br><br><br><br>Lisa Weingarten Richards, Esq.<br>VSB #96671<br>NY BAR #4932570<br>LWR Law Offices<br>11166 Fairfax Blvd. Suite 500 #1344<br>Fairfax, VA 22030<br>*Tel.:* (202) 981-2059<br>lwr@lwrlawoffices.com<br>*Counsel for plaintiff* |

**PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION**

COMES NOW Plaintiff Thomas Richards ("Plaintiff"), by and through his undersigned counsel, and respectfully moves this Court for reconsideration and clarification of its Orders dated May 14, 2025 (Docs. 29 and 30). This motion is necessary to address apparent substantive

mischaracterizations of Plaintiff's arguments and oversights in the Court's review of the record to ensure the efficient and fair administration of this case. In support of this motion, Plaintiff states as follows:

## I. PROCEDURAL HISTORY RELEVANT TO THIS MOTION

1. On April 13, 2025, Plaintiff's counsel filed an "Emergency Motion for Pro Hac Vice Admission Without Local Counsel" (Doc. 3-1), which remains pending before this Court.

2. On April 16, 2025, Plaintiff filed a "Renewed Emergency Motion for Temporary Restraining Order" (Doc. 17), which explicitly requested "an expedited hearing for a preliminary injunction" on page 17.

3. On May 14, 2025, this Court entered two orders: (1) an Order denying without prejudice Plaintiff's motion for a temporary restraining order (Doc. 29), and (2) an Order directing both parties to appoint local counsel or file a motion to proceed without local counsel by June 13, 2025 (Doc. 30).

## II. GROUNDS FOR RECONSIDERATION AND CLARIFICATION

Plaintiff respectfully submits that reconsideration and clarification are warranted based on the following substantive mischaracterizations and apparent oversights in the Court's Orders:

**A. Local Counsel Order Oversight (Doc. 30)**

The Court's May 14, 2025 Order (Doc. 30) directs Plaintiff to appoint local counsel or file a motion to proceed without local counsel by June 13, 2025. However, Plaintiff had already filed such a motion on April 13, 2025 (Doc. 3-1), titled "Emergency Motion for Pro Hac Vice Admission Without Local Counsel." This comprehensive 8-page motion details Plaintiff's

diligent but unsuccessful efforts to secure local counsel over a near-four-month period and the necessity of proceeding without local counsel due to the emergency nature of the case.

Plaintiff respectfully requests clarification as to whether the Court:

1. Overlooked the previously filed motion (Doc. 3-1);

2. Found the previously filed motion insufficient in some way that requires a new submission; or

3. Intended to direct only Defendant to comply with Local Rule 83.10.

**B. Mischaracterization of Plaintiff's Constitutional Theory in the TRO Order (Doc. 29)**

The Court's Order denying the TRO (Doc. 29) fundamentally mischaracterizes Plaintiff's constitutional theory. On page 3, the Court states that "Richards argues that because the owner of X Corp., Elon Musk, took a temporary position as a special government employee, the platform is converted into a government forum, and thus subject to liability as a government actor."

This characterization significantly misstates Plaintiff's argument in two critical ways:

First, Plaintiff's Renewed Emergency Motion for TRO (Doc. 17) and Reply (Doc. 26) explicitly argue that Mr. Musk's entanglement with the government is NOT merely "temporary" nor limited to his formal DOGE title. To quote directly from Doc. 26, p. 5-6:

"Musk's recent statements about 'leaving DOGE' (with highly unusual timing – these first appeared shortly after plaintiff's March 31 demand letter) demonstrate the intertwined nature of Musk's roles because although claiming to step back from DOGE, he also confirmed continuing government work 'as long as the president would like'. This back-channel relationship persists regardless of title changes, a transparent attempt to evade constitutional constraints that the

3

Supreme Court explicitly rejected in *Brentwood Academy*, where it noted changes in formalities 'affected candor but not the momentum of state involvement.'"

Plaintiff explicitly documented that even while claiming to "leave" DOGE, Musk stated he "will continue to spend a day or two per week on government matters for as long as the president would like" (Doc. 26, p. 3, citing https://www.npr.org/2025/04/22/nx-s1-5371552/tesla-earnings-april-2025-elon-musk-doge).

Second, Plaintiff never argued that Musk's government position alone "converted" X into a government forum. Rather, Plaintiff presented specific evidence of Musk's direct personal involvement in content moderation decisions at X while simultaneously exercising governmental authority. This direct control over speech suppression while holding government power is the constitutional violation alleged. As stated in Doc. 26, p. 7:

"This documented history of direct algorithm control, combined with the timing of content removals directly correlating with criticism of Musk's government role, creates a compelling inference that Musk directed Plaintiff's suppression."

Plaintiff provided concrete examples of Musk's personal control over content visibility, including:

1. In February 2023, Musk ordered engineers to boost his own posts by a factor of 1,000 when he was dissatisfied with engagement on his Super Bowl posts compared to President Biden's (Doc. 17, p. 14);

2. Selective amplification of a single AI-related post among Plaintiff's content to over 7,000 views (compared to normal 9-50 views), demonstrating precise algorithmic control (Doc. 26, p. 10-11);

3. Documented retaliation against critics, with Rep. Lori Trahan noting: "They told us that they're not going to retaliate against independent journalists or researchers who publish criticisms of the platform. Less than 12 hours later, multiple technology reporters have been suspended" (Doc. 26, p. 7).

This mischaracterization of Plaintiff's central legal theory represents a fundamental misapprehension that materially affected the Court's analysis of the likelihood of success factor.

**C. Preliminary Injunction Request Clarification**

The Court's Order denying the TRO (Doc. 29) states in footnote 14 that "there is no motion for a preliminary injunction pending in this case" and notes that "in this district, it is favored that preliminary injunctions are resolved on the papers, not through evidentiary hearings."

Plaintiff respectfully submits that his Renewed Emergency Motion for TRO (Doc. 17) explicitly requested both immediate temporary relief and subsequent preliminary injunctive relief. On page 17, the motion states a request to "set an expedited hearing for a preliminary injunction to extend this relief pending final resolution of this matter." While Plaintiff acknowledges the Court's footnote indicating a preference for resolving preliminary injunctions on the papers rather than through hearings, Plaintiff's motion nevertheless contains substantive requests for preliminary injunctive relief based on the same facts and circumstances set forth in support of the TRO request.

Plaintiff notes that Federal Rule of Civil Procedure 65 contemplates a close procedural relationship between TRO proceedings and preliminary injunctions. Rule 65(a)(2) allows a court to "advance the trial on the merits and consolidate it with the [preliminary injunction] hearing," and Rule 65(b)(3) emphasizes the expedited nature of preliminary injunction proceedings in the

TRO context. These provisions reflect the Rules' recognition of the interconnected and time-sensitive nature of these forms of emergency relief. Plaintiff intended his request for "setting a hearing" to encompass whatever procedural mechanism the Court prefers for addressing the preliminary injunction phase of the requested relief.

In light of the Court's footnote 14, Plaintiff seeks clarification as to whether:

1. The Court requires a separate, formal motion for preliminary injunction (despite the substantive request already being included in the TRO motion);

2. The Court would consider Plaintiff's request for preliminary injunctive relief on the existing papers, supplemented as necessary; or

3. Plaintiff should file a motion for specific discovery in connection with a preliminary injunction motion, as suggested by the Court's footnote.

**D. Basis for Denial Without Prejudice**

The Court's Order denies Plaintiff's TRO motion "WITHOUT PREJUDICE" on the sole basis that "it is clear that the law is not so overwhelmingly obvious that this Court should enter a mandatory injunction against X Corp." (Doc. 29 at 3). While Plaintiff acknowledges the high standard for mandatory injunctive relief, the Court's analysis does not substantively engage with the legal theories or evidence presented, instead characterizing Plaintiff's carefully documented constitutional arguments as merely "novel" without addressing the extensive factual record and legal precedent cited in support.

This approach is significant in light of the procedural history of this case, including the Court's earlier Order to Change Venue (Doc. 10). After Plaintiff filed a Petition for Writ of Mandamus

with the Fifth Circuit challenging that transfer order, the Fifth Circuit denied the petition, and shortly thereafter, this Court vacated its transfer order.

The Court notes that Plaintiff's motion "appears to only address the success of his claims under the First Amendment, section 230, and common carrier liability" (Doc. 29 at 3). Plaintiff respectfully clarifies that the motion strategically emphasized these theories as they most directly supported emergency injunctive relief. However, Plaintiff is prepared to brief the likelihood of success on all claims if the Court would find such briefing helpful for preliminary injunctive proceedings. This includes Plaintiff's breach of contract, promissory estoppel, TDTPA, tortious interference, other claims, all of which further support the requested relief.

Plaintiff also notes, as acknowledged in Doc. 26 and the Court's April 17 order (Doc. 20), that the complaint was finished in haste due to the emergency nature of the TRO request, and Plaintiff has consistently indicated the intent to file an amended complaint before formal service. Plaintiff stated in Doc. 26: "The Court has already acknowledged in its April 17 order that Plaintiff intended to file an amended complaint before formal service, prioritizing emergency relief." The amended complaint will provide more comprehensive development of all claims, addressing any perceived deficiencies in the current pleadings.

Plaintiff respectfully submits that his TRO motion provided detailed evidence of ongoing irreparable harm requiring emergency intervention, including:

1. The systematic removal of over 61,600 posts and 5,974 media files containing protected religious expression;

2. Statistical evidence showing a 98% reduction in content visibility from comparable accounts;

3. A documented pattern of content removal directly coinciding with legal communications;

4. Evidence of systematic viewpoint discrimination against religious speech, including the fact that "content suppression intensified specifically after Plaintiff posted content critical of Musk's July 2, 2022 meeting with Pope Francis" (Doc. 17, p. 5) and that Plaintiff's religious critiques were targeted while "X permits and even promotes accounts with millions of followers who post content explicitly calling for violence" (Doc. 17, p. 9); and

5. Evidence that Musk's governmental role at DOGE involved monitoring federal employees' speech, with ethics expert Kathleen Clark noting this "sounds like an abuse of government power to suppress or deter speech that the president of the United States doesn't like." (Doc. 26, p. 3, citing "Musk's DOGE using AI to snoop on US federal workers, sources say," https://www.reuters.com/technology/artificial-intelligence/musks-doge-using-ai-snoop-us-federal-workers-sources-say-2025-04-08/).

These factual allegations deserve more thorough consideration than a summary dismissal based on the characterization of Plaintiff's constitutional theory as "novel," particularly when that characterization fundamentally misstates Plaintiff's actual arguments as detailed in Section B above.

While the Court has discretion to deny the TRO motion, Plaintiff seeks specific guidance as to what deficiencies in the motion led to its denial, so that any future motions or filings can address those concerns. Additionally, in light of the Court's footnote 14 suggesting that Plaintiff "file a motion asking for specific discovery" if discovery is desired before a preliminary injunction, Plaintiff seeks guidance on what categories of discovery the Court would deem appropriate for such a motion. Plaintiff notes that he intended to seek expedited discovery in connection with preliminary injunctive proceedings, but reasonably prioritized emergency TRO relief given the ongoing irreparable harm to his First Amendment rights.

## III. REQUEST FOR STATUS CONFERENCE

In addition to the reconsideration and clarification requested above, Plaintiff respectfully requests that the Court schedule a status conference at its earliest convenience. A brief status conference would provide an opportunity to address these procedural matters efficiently and ensure that all parties have a clear understanding of the Court's expectations regarding:

1. The status of Plaintiff's counsel's pro hac vice admission without local counsel;

2. The procedure for seeking preliminary injunctive relief in this Court;

3. Any additional procedural steps required before the Court will substantively consider the merits of Plaintiff's constitutional claims; and

4. Guidance on appropriate categories of discovery to include in Plaintiff's forthcoming motion for specific discovery, as suggested in footnote 14 of the Court's Order.

Given the emergency nature of the relief sought and the ongoing alleged constitutional violations, a prompt status conference would serve the interests of judicial economy by avoiding the need for additional motion practice to resolve procedural uncertainties.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. Reconsider and clarify its Order regarding local counsel (Doc. 30) in light of Plaintiff's previously filed motion (Doc. 3-1);

2. Reconsider its fundamental mischaracterization of Plaintiff's central constitutional theory regarding the nature and extent of the entanglement between Mr. Musk and the government;

3. Clarify the proper procedure for requesting preliminary injunctive relief in this case;

4. Provide guidance as to what specific discovery would be appropriate for Plaintiff to request in a separate motion for expedited discovery, as suggested in footnote 14 of the Court's Order;

5. Schedule a status conference at the Court's earliest convenience to address these procedural matters; and

6. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards
VSB #96671
NY BAR #4932570
LWR Law Offices
11166 Fairfax Blvd. Suite 500
#1344
Fairfax, VA 22030
Tel.: (202) 981-2059
lwr@lwrlawoffices.com
Counsel for Plaintiff

DATE: May 14, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2025, a true and correct copy of the foregoing document was electronically transmitted to the Clerk of Court using the ECF System for filing, and was transmitted to Defendant's counsel via ECF.

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards