IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| THOMAS RICHARDS<br><br>*Plaintiff,*<br><br>v.<br><br>X CORP. and<br>DONALD J. TRUMP, Individually,<br><br>*Defendants* | Case No. 3:25-cv-916<br><br><br><br><br><br><br><br><br><br>Lisa Weingarten Richards, Esq.<br>VSB #96671<br>NY BAR #4932570<br>LWR Law Offices<br>3060 Williams Dr<br>Ste 300 #510<br>Fairfax, VA 22031<br>*Tel.:* (202) 981-2059<br>lwr@lwrlawoffices.com<br>*Counsel for plaintiff* |

**PLAINTIFF'S REPLY IN SUPPORT OF SECOND RENEWED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER- REPLY TO TRUMP**

**Use of Generative Artificial Intelligence**

This brief was prepared using generative artificial intelligence.

I. INTRODUCTION

This case presents the most significant constitutional crisis in the digital age: the world's wealthiest individual simultaneously controls a major communication platform and exercises federal governmental authority, coordinating with the President to suppress religious expression through a $300 million quid pro quo arrangement.

**The DOJ's Denial Strategy Fails When Confronted With Defendants' Own Admissions.** The DOJ dismisses documented Trump-Musk coordination as "fanciful conspiracy theory" while ignoring Trump's own statements that "Elon is really not leaving" DOGE because it's "his baby," "I couldn't find anyone smarter" than Musk,[1] and moving DOGE operations into the White House to shield coordination from oversight.[2] Musk reciprocally confirmed "this is not the end of Doge but really the beginning," adding he will continue White House visits as "friend and adviser" with Trump replying "I hope so."[3] This systematic collaboration, evidenced by massive financial entanglement and operational integration, creates unprecedented government-platform fusion requiring immediate judicial intervention.

**Trump's Individual Capacity Arguments Fail Under Established Law.** Trump incorrectly argues that official conduct immunity bars individual capacity relief.[4] But qualified immunity

---

[1] Trump reveals he searched for 'somebody smarter' than Elon Musk to run DOGE (Feb. 18, 2025), https://nypost.com/2025/02/18/us-news/trump-searched-for-someone-smarter-than-elon-musk-for-doge/.

[2] Drugs, marital advice and that black eye: key takeaways from Trump's Oval Office send-off for Elon Musk, THE GUARDIAN (May 30, 2025), https://www.theguardian.com/us-news/2025/may/30/key-takeaways-musk-trump-send-off; The New York Times, *The People Carrying Out Musk's Plans at DOGE*, N.Y. TIMES (June 16, 2025), https://www.nytimes.com/interactive/2025/02/27/us/politics/doge-staff-list.html.

[3] THE GUARDIAN, *supra* note 2.

[4] Due to space constraints, this brief necessarily conflates individual and official capacity immunity arguments, though Plaintiff maintains these are distinct legal theories with different applications.

does not apply in official capacity actions seeking declaratory and injunctive relief against government officials under the logic of Ex parte Young,[5] and does not protect actions taken for personal benefit or in collusion with others as they fall outside the scope of such immunity.[6] Trump's corrupt coordination with Musk constitutes precisely such personal conduct outside legitimate presidential functions.

## II. THE $300 MILLION PURCHASE MODEL EXPLAINS THE COORDINATION

Musk's $300 million campaign investment (largest individual contribution in history) represents a direct purchase of government influence following Trump's established pattern of rewarding financial supporters with government benefits through pardons, commutations, contracts, and regulatory decisions based on loyalty rather than merit. Musk's contribution bought not just access but Trump's personal loyalty and emotional investment in Musk's success, explaining why Trump gives Musk unprecedented operational freedom.

The purchase created a complete system: $300M contribution → personal affection → unlimited government access → platform control → political benefits flowing back to Trump. This creates a closed loop where purchased government access enables platform control that delivers political benefits back to Trump through suppression of his critics, making both defendants invested in maintaining and expanding the constitutional violations.

## III. OPERATIONAL INTEGRATION THROUGH PERSONNEL AND AI SYSTEMS

The New York Times documented over 70 people within Musk's DOGE operation "carrying out Musk's plans" across federal agencies, including former Tesla engineers placed under Thomas

---

[5] *Shah v. Univ. of Tex. Southwestern Med. Sch.*, 129 F. Supp. 3d 480.
[6] 1 LCRS: Section 1983 Litigation § 3.02 Immunities (noting qualified immunity does not protect actions taken for personal benefit or in collusion with others).

Shedd's leadership.[7] This creates permanent control linking federal AI deployment with X Corp.'s content moderation systems.

Executive Orders 14179 ("AI Leadership") and 14202 ("Eradicating Anti-Christian Bias") -- which is anti-biblical, pro-Catholicism -- established legal framework for federal coordination with private AI development, linked with Catholic/Vatican AI influence. This directly enables government direction of Musk's AI systems that moderate Plaintiff's bible-based content.

The coordination further operates through: DOGE deploying Grok AI across federal agencies → same AI technology censoring biblical content on X[8] → government employees training AI to identify "disloyal" speech[9] → Shedd's dual role creating direct operational bridge between federal technology services and Musk's platform.

IV. THE DEPENDENCY RELATIONSHIP ENSURES CONTINUED COORDINATION

While Trump (79 years old) lacks technical AI expertise, Musk controls the AI systems central to Trump's digital governance strategy. This relationship means Trump provides government access while Musk provides technical capability, particularly in AI deployment and platform control over political discourse.

Trump's comprehensive AI push grants Musk free reign over federal AI policy because Musk

---

[7] N.Y. TIMES, *supra* note 2.
[8] https://x.com/tlthe5th/status/1932636861094375776 -- the entire thread should be read by scrolling upward; https://x.com/tlthe5th/status/1952410682378395707/photo/1. Also Exhibit A.
[9] Exclusive: Musk's DOGE expanding his Grok AI in US government, raising conflict concerns, REUTERS (May 23, 2025), https://www.reuters.com/sustainability/boards-policy-regulation/musks-doge-expanding-his-grok-ai-us-government-raising-conflict-concerns-2025-05-23/. - DOGE staffers have "ordered staff to train AI to identify communications suggesting an employee is not 'loyal' to Trump's political agenda"

purchased that authority, and Trump does not second-guess Musk's technical decisions. This creates operational independence serving both men's interests.

## V. THE JUNE 2-5 TIMELINE PROVES SURVEILLANCE CAPABILITIES

The mathematical improbability of June 2 private attorney-client email specifying adding Trump as defendant "after June 5 for a specific reason" followed by elaborate "feud" performance beginning exactly June 5 demonstrates real-time coordination capabilities.

The "feud" was provably fake--Newsweek reported Musk donated $15 million to pro-Trump super PACs during their supposed conflict, proving public disagreements were theatrical while private coordination continued.[10] This sophisticated deception capability makes the June 2-5 timeline evidence of systematic surveillance extending to judicial proceedings.

Courts routinely allow conspiracy cases based on circumstantial evidence when direct evidence lies within defendants' exclusive control,[11] and the timing correlation combined with documented surveillance capabilities creates compelling inference warranting discovery.

## VI. MUTUAL BENEFITS CREATE SHARED IDEOLOGICAL AGENDA

The coordination serves perfectly aligned interests: Trump gains platform control to suppress criticism and promote favorable narratives while Musk gains $15.4 billion in government contracts, regulatory protection, and freedom from antitrust enforcement. Trump doesn't just tolerate this platform control--he actively enjoys it because it serves his political interests by protecting his religious-political alliances.

---

[10] *Elon Musk Spent Millions to Get Back in Donald Trump's Good Graces*, NEWSWEEK, (August 2, 2025), https://www.newsweek.com/elon-musk-spent-millions-donald-trump-pac-2107990.
[11] *E.g. United States v. Richards*, 204 F.3d 177 (5th Cir. 2000); *United States v. Williams*, 264 F.3d 561 (5th Cir. 2001).

Both defendants express deference to Vatican authority--Trump speaking very highly of Pope Francis[12] and calling Pope Leo XIV's election "a Great Honor"[13] while Musk described meeting Pope Francis as an "honor"[14] and promoting the world leaders work with Pope Leo XIV as a world mediator[15]--creating shared framework for systematic suppression of biblical viewpoints challenging Catholic institutional authority-- through Trump's Religious Liberty Commission featuring Catholic leaders[16] and government endorsement of Vatican AI ethics.[17]

## VII. GOVERNMENT ENTANGLEMENT CREATES STATE ACTION UNDER BRENTWOOD ACADEMY

Under *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288

---

[12] NBC News, "Trump Trip: President Arrives at Vatican to Meet Pope Francis," available at https://www.nbcnews.com/storyline/trump-s-first-foreign-trip/trump-trip-president-arrives-vatican-meet-pope-francis-n763911; Vatican News, "Pope Francis telegram for inauguration of US President Trump," January 2025, available at https://www.vaticannews.va/en/pope/news/2025-01/pope-francis-telegram-for-inauguration-of-us-president-trump.html.

[13] Trump calls Robert Prevost's election as first U.S. pope 'such an honor' https://www.cnbc.com/2025/05/08/trump-pope-prevost-leo.html

[14] Elon Musk (@elonmusk), "Honored to meet @Pontifex yesterday," Twitter, July 2, 2022, available at https://twitter.com/elonmusk/status/1543050489050402816.

[15] https://www.latintimes.com/elon-musk-reposts-popes-suggestion-that-vatican-can-host-global-talks-enemy-nations-583103

[16] Trump's Religious Liberty Commission prominently features Catholic Cardinal Timothy Dolan and Bishop Robert Barron as "Christian" representatives while biblical criticism of Catholic institutions faces platform suppression. Jason DeRose, Here's how Trump's Faith Office and task force against 'anti-Christian bias' may work, NPR (Feb. 14, 2025), https://www.npr.org/2025/02/14/nx-s1-5292447/heres-how-trumps-faith-office-and-task-force-against-anti-christian-bias-may-work.

[17] https://www.3blmedia.com/news/qualcomm-signs-rome-call-ai-ethics; https://press.vatican.va/content/salastampa/en/info/2024/07/10/240710a.html; https://www.vaticannews.va/en/vatican-city/news/2024-07/world-religions-to-commit-to-rome-call-on-ai-in-hiroshima.html; https://press.vatican.va/content/salastampa/en/info/2024/07/10/240710a.html; Catholic News Agency, *Pope Leo XIV shares vision for papacy in age of artificial intelligence* (May 10, 2025) https://www.catholicnewsagency.com/news/264031/the-american-pope-s-vision-leo-xiv-talks-choice-of-name-priorities-in-first-meeting-with-cardinals and see Amended Complaint ¶¶ 60-68.

(2001), private entities become subject to constitutional constraints when government authority is "entwined in [their] management or control." This case exceeds *Brentwood Academy*: rather than as there, an athletic association with some governmental members, here a social media platform owner simultaneously exercises direct federal authority through embedded personnel and operational AI integration with a proven goal of promoting Vatican world influence.

The DOJ notably does not dispute: the extraordinary financial relationship, Musk's unprecedented government access and embedded personnel, Trump's explicit coordination statements, operational integration of Musk's AI systems in federal agencies, or movement of DOGE operations into the White House itself. Their failure to contest these allegations concedes this government entanglement -- which shows state action.

## VIII. SYSTEMATIC RELIGIOUS SPEECH SUPPRESSION RESULTS FROM COORDINATION

Plaintiff's 98% engagement suppression while Catholic perspectives receive normal or boosted treatment aligns with government preference for institutional Catholicism created by the Executive Orders and Trump's commission structure. The religious speech suppression isn't incidental--it's a desired outcome protecting Trump's Catholic political alliances while silencing biblical criticism of institutional corruption.

## IX. THE DOJ'S ARGUMENTS FAIL ON MULTIPLE GROUNDS

**A. Trump's Corrupt Coordination Falls Outside Official Capacity Protection -** As detailed in the Introduction, Trump's corrupt $300 million coordination with Musk falls outside official capacity protection, and *Ex parte Young* permits the requested prospective relief against ongoing constitutional violations.

### B. Presidential Immunity Does Not Bar This Action

Beyond the corrupt coordination detailed above, presidential immunity fails because:

**Outer Perimeter Test Not Met**: Using private platforms to suppress religious speech through financial quid pro quo falls outside the outer perimeter of legitimate presidential duties--no president has constitutional authority to coordinate with private platforms to suppress religious viewpoints.[18]

**Additional *Ex Parte Young* Authority**: The extensive 5th Circuit precedent confirms prospective relief is available against immune officials for ongoing constitutional violations.[19]

### C. Claims Are Not Implausible--They Are Documented

The DOJ cannot dismiss as "fanciful" the coordination proven by Defendants' own admissions detailed in Paragraph 2 of this brief (in the introduction), the documented financial entanglement explained in Section II, and the mathematical improbability of the June 2-5 timeline analyzed in Section V. Courts routinely accept such compelling circumstantial evidence in conspiracy cases.

### D. The DOJ's False Statements Prove Coordination

The DOJ falsely claims "Plaintiff has not yet served President Trump with the Amended Complaint in compliance with Federal Rule of Civil Procedure 4," despite Document 54 explicitly showing process server Qoral Rahming served Trump the complete amended complaint at Mar-a-Lago on July 11, 2025.

This false statement by counsel, made 18 days after Document 54 was filed, demonstrates either deliberate deception or gross incompetence. Dan Freeman's subsequent service obstruction

---

[18] *E.g.*, Nixon v. Fitzgerald, 457 U.S. 731 (1982).
[19] *E.g.*, Planned Parenthood Gulf Coast, Inc. v. Phillips, 24 F.4th 442 (5th Cir. 2022), NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389 (5th Cir. 2015).

pattern--accepting authority July 11 and July 22 (AM), denying it July 22 (PM), then accepting normally July 23--exemplifies the broader coordination through consciousness of liability and coordinated obstruction designed to delay federal proceedings.

### E. Irreparable Harm Is Both Documented and Ongoing

**98% Engagement Suppression Is Quantifiable Harm**: Plaintiff's documented engagement metrics showing 98% reduction from industry standards for comparable accounts provides concrete evidence of systematic suppression, not speculative harm.

**Evidence Destruction Continues**: The pattern of content removal following legal communications (March 19, April 5, April 6, July 3) demonstrates ongoing evidence destruction that cannot be remedied through post-trial damages.

**Constitutional Violations Cannot Be Remedied by Money**: First Amendment violations create per se irreparable harm that monetary damages cannot cure, particularly when they involve systematic suppression of religious expression in the digital public square.

### F. Presidential Records Act Does Not Preserve Relevant Evidence

The DOJ's claim that Presidential Records Act preservation obviates injunctive relief ignores that the relevant evidence includes: 1) Private platform algorithms and content moderation logs; 2) Internal X Corp. communications about government coordination; 3) AI training data showing systematic religious bias; 4) Financial coordination records between private parties.

None of this evidence falls under Presidential Records Act preservation, making immediate injunctive relief essential to prevent permanent evidence destruction.

### G. The DOJ Ignores Musk's Top Secret Security Clearance and Intelligence Access

The DOJ completely fails to address Musk's documented top secret security clearance and direct access to America's intelligence apparatus through multiple visits to the Pentagon, NSA, and CIA within a single month (March-April 2025). When departing the Pentagon on March 21, 2025, Musk explicitly told Defense Secretary Hegseth, "If there's anything I can do to be helpful, I'd like to see you"- establishing back-channel communications that continue regardless of formal titles.[20] This intelligence access, combined with platform control, creates unprecedented national security implications of X's government ties that the DOJ cannot simply ignore through immunity arguments.

**H. The DOJ Cannot Explain Musk's Political Manipulation of Algorithms**

Musk has repeatedly manipulated X's algorithms for political advantage: he ordered engineers to artificially boost his own tweets by 1,000x when dissatisfied with engagement compared to President Biden's posts,[21] and computational analysis found that after Musk's formal endorsement of Trump in July 2024, X's algorithms were manipulated to ensure Republican-leaning posts received greater engagement while Democrat-oriented content was systematically suppressed.[22] This shows the exact quid pro quo coordination alleged here - Musk uses platform control to benefit Trump politically while suppressing Trump's critics, in exchange for unprecedented government access and $15.4 billion in contracts.

---

[20] Hegseth says meeting with Elon Musk was about "innovation, efficiencies," CBS NEWS (Mar. 21, 2025, 5:44 PM), https://www.cbsnews.com/news/hegseth-meeting-elon-musk-innovation-efficiencies/.

[21] Zoë Schiffer & Casey Newton, Yes, Elon Musk Created a Special System for Showing You All His Tweets First, THE VERGE (Feb. 14, 2023). https://www.theverge.com/2023/2/14/23600358/elon-musk-tweets-algorithm-changes-twitter

[22] Graham & Andrejevic, A computational analysis of potential algorithmic bias on platform X during the 2024 US election (2024).

**I. The DOJ Fails to Address Vatican-Government-Tech Coordination**

The TRO documented systematic coordination between Trump's Religious Liberty Commission (featuring Catholic leaders claimed as "Christian" representatives), government endorsement of Vatican AI ethics frameworks, and platform suppression of Vatican-critical content following Musk's papal meeting.

This creates a complete framework for institutional Catholic religious preference over biblical Christianity, which the DOJ entirely ignores despite its clear Establishment Clause implications.

**J. The DOJ's Appearance Lacks Statutory Authority and Reveals Consciousness of Improper Coordination**

Trump's DOJ violating statutory constraints for his individual representation exemplifies his broader pattern of compelling others to ignore legal boundaries protecting his personal interests. Trump fails to qualify as an "employee of the government" under 28 USC 2671, *and* 28 USC 2679(b)(2)(A) explicitly excludes constitutional violations from Westfall Act coverage. Since this entire case alleges constitutional violations, DOJ representation is statutorily prohibited. Trump's attempt to use DOJ counsel for individual capacity constitutional claims has no precedent -- *Clinton v. Jones* required private counsel precisely because no statutory authority exists for such representation. Federal courts have repeatedly rejected Trump's attempts at DOJ representation for individual capacity claims, most recently in *E. Jean Carroll v. Trump* where three separate courts ruled DOJ lacks authority to represent presidents individually.[23]

---

[23] 28 USC 2679(b)(2)(A) bars DOJ representation for constitutional claims, stating the Act "does not extend or apply to a civil action against an employee of the Government--(A) which is brought for a violation of the Constitution of the United States." Trump is not a government "employee" under 28 USC 2671 (defining employees as "officers or employees of any federal agency"), and no alternative authority exists under 28 USC 516 (covering "the United States,"

## X. CONCLUSION

The evidence proves unprecedented government-platform fusion where Musk's purchased government influence flows directly into platform control benefiting Trump politically. The DOJ's denial strategy fails when confronted with Defendants' documented admissions, operational AI integration, mathematical proof of surveillance capabilities, and systematic coordination that transforms X's platform decisions from private conduct into government-directed constitutional violations requiring immediate judicial intervention.

**Respectfully submitted,**

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards
LWR Law Offices
3060 Williams Dr, Ste 300 #510
Fairfax, VA 22031
Tel.: (202) 981-2059
lwr@lwrlawoffices.com
VA BAR # 96671
NY BAR #4932570
*Counsel for Plaintiff*

**DATE**: August 5, 2025

---

not individuals). *Clinton v. Jones*, 520 U.S. 681 (1997), required private counsel for individual capacity claims. In *Carroll v. Trump*, Judge Lewis Kaplan ruled "The President of the United States is not an employee of the Government within the meaning of the relevant statutes," *Carroll v. Trump*, No. 1:2020cv07311 (S.D.N.Y. 2020). And the Second Circuit flatly denied Trump's attempt to substitute the DOJ for himself in 2025 (*Carroll v. Trump,* No. 24-644 (2d Cir.). DOJ's unprecedented appearance here constitutes improper taxpayer expenditure while attempting to convert individual constitutional claims into official capacity--mirroring the coordination pattern alleged throughout this case.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2025, a true and correct copy of the foregoing document was electronically transmitted to the Clerk of Court using the ECF System for filing, and was transmitted to Defendant's counsel via ECF.

/s/ Lisa Weingarten Richards

Lisa Weingarten Richards
LWR Law Offices
3060 Williams Dr
Ste 300 #510
Fairfax, VA 22031
*Tel.:* (202) 981-2059
lwr@lwrlawoffices.com
VA BAR # 96671
NY BAR #4932570
*Counsel for plaintiff*