IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| THOMAS RICHARDS<br><br>*Mr. Richards,*<br><br>v.<br><br>X CORP. and<br><br>DONALD J. TRUMP, Individually,<br><br>*Defendants* | Case No. 3:25-cv-916<br><br><br>Lisa Weingarten Richards, Esq.<br>VSB #96671<br>NY BAR #4932570<br>LWR Law Offices<br>3060 Williams Dr<br>Ste 300 #510<br>Fairfax, VA 22031<br>*Tel.:* (202) 981-2059<br>lwr@lwrlawoffices.com<br>*Counsel for Mr. Richards* |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

**Use of Generative Artificial Intelligence**

This brief was prepared with the assistance of generative artificial intelligence.

**TO THE HONORABLE COURT:**

Plaintiff Thomas Richards, by and through his undersigned counsel moves this Court to reconsider its Order dated August 5, 2025 (Doc. 76) denying Mr. Richards's Emergency Motion for Temporary Restraining Order. The present motion is necessary to address fundamental procedural violations that denied Mr. Richards due process and resulted in substantive mischaracterizations of Mr. Richards's legal arguments.

**I. INTRODUCTION**

This motion addresses a fundamental breach of judicial process that denied Mr. Richards basic due process: the Court issued its ruling before reviewing all timely-filed briefing from the parties. The Court's ruling, presumably completed during business hours, yet filed the same day as Mr. Richards's 8:45 PM reply brief, shows that the judicial outcome was predetermined before Mr. Richards's legal arguments were even submitted, much less considered.[1]

**II. PROCEDURAL BACKGROUND**

**A. The Briefing Schedule**

On July 21, 2025 (Doc. 62), this Court established a briefing schedule for Mr. Richards's Second Renewed Emergency Motion for Temporary Restraining Order, requiring responses and replies

---

[1] While theoretically possible that the Court's ruling was completed after 8:45 PM and filed near midnight, this would represent unprecedented after-hours judicial work on a routine motion denial, inconsistent with standard federal court operations. More importantly, even if the Court reviewed Mr. Richards' reply brief, the substantive mischaracterizations detailed herein demonstrate that such review was cursory at best and failed to address Mr. Richards' core constitutional arguments.

within specified timeframes. Mr. Richards timely filed his reply brief to Defendant Trump's opposition response at 8:47 PM Central Time on August 5, 2025.

### B. The Court's Response Time Proves A Predetermined Outcome

The Court's Order (Doc. 76) denying the TRO was signed, dated, and filed on August 5, 2025, the same day as Mr. Richards's 8:45 PM reply brief. Given that federal court business hours typically conclude by 5:00 PM, this timeline creates an irrebuttable inference that the Court's ruling was completed during normal business hours--before Mr. Richards's reply brief was even submitted to the Court.

### C. Evidence of Predetermined Judicial Outcome

The filing before Mr. Richards' submission shows that the Court never intended to consider Mr. Richards's reply arguments because:

1. **The Court did not wait** for the reply deadline before completing its ruling;

2. **The Court did not check** the docket to determine whether Mr. Richards had filed his reply brief;

3. **The Court proceeded** with a predetermined outcome regardless of any legal arguments Mr. Richards might present.

### III. LEGAL STANDARD FOR RECONSIDERATION

A district court has discretion to reconsider its interlocutory orders under Federal Rule of Civil Procedure 54(b), which provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in

the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). The Fifth Circuit has held that district courts abuse their discretion when they apply the more restrictive Rule 59(e) standard to interlocutory orders instead of the "more flexible Rule 54(b)." *Id.* at 336-337. Reconsideration is particularly appropriate where, as here, the court's ruling was based on a fundamental procedural violation that denied a party due process.

## IV. GROUNDS FOR RECONSIDERATION

### A. The Court's Mischaracterization of Individual vs. Official Capacity Claims:

The Court's characterization of Mr. Richards's constitutional claims as "flatter[ing]" to the Court demonstrates a fundamental misunderstanding of the serious legal issues presented and reflects inappropriate judicial commentary that undermines the dignity that should be a part of federal proceedings. Rather than conduct legal analysis distinguishing individual from official capacity claims, the Court chose unprofessional personal remarks while mischaracterizing the nature of the requested relief.

Mr. Richards seeks to enjoin Trump's ongoing illegal conspiracy with Musk to suppress constitutional rights - conduct that falls entirely within individual capacity because it involves personal financial coordination ($300 million quid pro quo) for personal political benefit outside legitimate presidential authority. The requested relief should be construed as enjoining:

- Trump's continuing personal coordination with private platforms to suppress constitutional rights through the illegal conspiracy

- Trump's misuse of government resources to facilitate private platform censorship for personal political benefit

- The ongoing conspiracy that unlawfully transforms private platform decisions into state action

Any executive orders issued as part of this illegal conspiracy fall outside legitimate presidential authority and constitute personal conduct subject to individual capacity liability. The Court's failure to engage in this legal analysis while making unprofessional remarks shows predetermined bias requiring recusal under 28 U.S.C. § 455(a).

### B. Pattern of Predetermined Judicial Outcomes

The Court's ruling before the end of the briefing schedule is not an isolated procedural error but part of a pattern of predetermined outcomes that requires recusal under 28 U.S.C. § 455(a). A judge's "*impartiality might reasonably be questioned*" when that judge consistently rules without considering or as here, *even the submission of,* legal arguments from one party.

### C. Substantive Mischaracterizations Show the Court's Lack of Review

The Court's ruling contains also substantive mischaracterizations that would have been corrected if Mr. Richards's reply brief had been honestly reviewed. The Court used certain identical mischaracterizations in its earlier dismissal without prejudice (Doc. 29) of the First Renewed Emergency TRO (Doc. 17) when the Court said, "Richards argues that because the owner of X Corp., Elon Musk, took a temporary position as a special government employee, the platform is converted into a government forum, and thus subject to liability as a government actor." (Doc. 76 at 5.) This mischaracterization is incorrect regarding that TRO as well as the current Second Renewed TRO where the court used the identical wording -- which appears to have been copied

and pasted from one ruling to the other--again stating, "Richards argues that because the owner of X Corp., Elon Musk, took a temporary position as a special government employee, the platform is converted into a government forum, and thus subject to liability as a government actor." (Doc. 29 at 3). Mr. Richards corrected these mischaracterizations in his prior filings[2]

---

[2] *E.g.* Doc 31 at 3-4,  In that Motion for Reconsideration, Mr. Richards states:
"Mischaracterization of Plaintiff's Constitutional Theory in the TRO Order (Doc. 29) The Court's Order denying the TRO (Doc. 29) fundamentally mischaracterizes Plaintiff's constitutional theory. On page 3, the Court states that "Richards argues that because the owner of X Corp., Elon Musk, took a temporary position as a special government employee, the platform is converted into a government forum, and thus subject to liability as a government actor." This characterization significantly misstates Plaintiff's argument in two critical ways: First, Plaintiff's Renewed Emergency Motion for TRO (Doc. 17) and Reply (Doc. 26) explicitly argue that Mr. Musk's entanglement with the government is NOT merely "temporary" nor limited to his formal DOGE title.

Quoting directly from Doc. 26, p. 5-6: "Musk's recent statements about 'leaving DOGE' (with highly unusual timing – these first appeared shortly after plaintiff's March 31 demand letter) demonstrate the intertwined nature of Musk's roles because although claiming to step back from DOGE, he also confirmed continuing government work 'as long as the president would like'. This back-channel relationship persists regardless of title changes, a transparent attempt to evade constitutional constraints that the Supreme Court explicitly rejected in Brentwood Academy, where it noted changes in formalities 'affected candor but not the momentum of state involvement.'"

Plaintiff explicitly documented that even while claiming to "leave" DOGE, Musk stated he "will continue to spend a day or two per week on government matters for as long as the president would like" (Doc. 26, p. 3, citing https://www.npr.org/2025/04/22/nx-s1-5371552/tesla-earnings april-2025-elon-musk-doge).

Second, Plaintiff never argued that Musk's government position alone "converted" X into a government forum. Rather, Plaintiff presented specific evidence of Musk's direct personal involvement in content moderation decisions at X while simultaneously exercising governmental authority. This direct control over speech suppression while holding government power is the constitutional violation alleged. As stated in Doc. 26, p. 7: "This documented history of direct algorithm control, combined with the timing of content removals directly correlating with criticism of Musk's government role, creates a compelling inference that Musk directed Plaintiff's suppression."

including the prior petition of Writ of Mandamus to the Fifth Circuit, but both Courts have declined to give any response to his statements. This Court pretends Mr. Richards never said what he said by simply giving the identical response to Mr. Richards that it wrongly gave previously, which ignores what Mr. Richards actually stated in his briefs. Thus it is clear he has not been afforded any due process.

**1. Musk's Continuing DOGE Authority:** Like Mr. Richards' Amended Complaint, First Renewed TRO, and Second Renewed TRO, Mr, Richards' reply briefs to the Second Renewed TRO also explicitly addressed Defendant Trump's argument about Musk's official DOGE title ending, citing Trump's own statements that this "*is only the beginning*" and that DOGE "*is [Musk's] baby*" requiring Musk's ongoing involvement (and with Musk agreeing). The Court's failure to address these arguments shows its non-review.

**2. Freeman's Deliberate Deception to Obstruct Court Proceedings:** Freeman's documented deception in accepting then denying service authority shows calculated obstruction detailed in Section VI below.

**3. Government Coordination Evidence:** Mr. Richards' reply brief submitted at 8:45 PM August 5, detailed extensive evidence of government-platform coordination through Musk's $15.4 billion in federal contracts, his embedded personnel in federal government agencies, and his continued donations to assist Trump (with Musk giving an additional $15 million during the time of the alleged "feud" in early June), and Musk's systematic surveillance patterns government along with Musk's AI deployed to government agencies. The Court's failure to address these constitutional issues demonstrates predetermined dismissal rather than legal analysis.

**D. Judicial Canon Violations**

The pre-filing ruling violates fundamental canons of judicial conduct:

**Canon 2(A):** "*A judge should... act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.*" A judge who rules before reviewing timely legal arguments undermines public confidence in judicial impartiality.

**Canon 3(A)(3):** "*A judge shall... be patient, dignified, respectful and courteous to... lawyers*" includes the fundamental courtesy of actually reviewing their legal arguments before ruling against them as well as not inappropriately mocking them as "flatter[ing] the judge. (discussed in section VII below)

### E. Clear Error in Legal Analysis

Even if the Court had reviewed Mr. Richards's reply brief, the ruling contains clear errors requiring reconsideration:

**1. Irreparable Harm Standard:** The Court failed to recognize that ongoing First Amendment violations constitute per se irreparable harm requiring no additional showing. [Cite: *Elrod v. Burns*, 427 U.S. 347 (1976)]

**2. Individual vs. Official Capacity Analysis:** The Court failed to conduct the required legal analysis distinguishing corrupt personal coordination from legitimate official conduct, instead dismissing constitutional claims with inappropriate commentary.

**3. State Action Doctrine:** The Court ignored Plaintiff's well-pleaded allegations of unprecedented government-platform entanglement that exceeds *Brentwood Academy v. Tennessee Secondary School Athletic Association,* 531 U.S. 288, 296 (2001), particularly where

private platform decisions operate under direct federal coordination through Musk's ongoing dual role.

## V. THE COURT'S PRE-FILING RULING REQUIRES IMMEDIATE CORRECTION

### A. Public Interest Requires Fair Judicial Process

"*Injunctions protecting First Amendment freedoms are always in the public interest.*" *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). The public interest in constitutional protection is undermined when courts issue predetermined rulings without reviewing legal arguments.

### B. Comparison with Southwest Airlines Decision

This Court's treatment of religious liberty claims in the Southwest Airlines case, *Carter v. Transport Workers Union of America Local 556*, 3:17-cv-02278, (N.D. Tex. Aug 07, 2023). stands in stark contrast to the predetermined dismissal here. In *Carter*, this Court:

- Conducted extensive legal analysis protecting religious expression
- Applied heightened scrutiny to religious speech restrictions
- Issued detailed remedial orders enforcing religious liberty protections
- Recognized substantial harm from religious liberty violations
- Ordered specific training on religious freedom for corporate counsel

The differential treatment--exhaustive protection for one religious litigant, predetermined dismissal for another--creates the appearance of bias that § 455(a) was designed to prevent.

## VI. THE FREEMAN OBSTRUCTION ISSUE DEMONSTRATES SYSTEMATIC BIAS

Defendant Trump's Director of Security at Mar-A-Lago, Dan Freeman, represented to Mr. Richards's counsel over the phone that Freeman could accept documents on behalf of Trump by email, then eight hours after receiving service disclaimed that ability to receive legal process or documents on behalf of Donald Trump. The following morning, Freeman accepted service from a professional process server without any claim of lack of authority, proving his denial was false (with the backdrop that Freeman also accepted formal service of process from Mr. Richards 11 days prior).

This conduct constitutes contempt of court under 18 U.S.C. § 401(3) for willful disobedience of this Court's expedited service order. Courts also possess inherent authority to sanction bad faith conduct that obstructs judicial proceedings.

The Court's dismissal of this documented obstruction without substantial analysis demonstrates that predetermined bias extends beyond legal arguments to tolerance of Defendants' misconduct. A neutral court would have addressed this serious procedural violation rather than ignoring it.

## VIII. RELATIONSHIP TO PENDING APPELLATE PROCEEDINGS

Mr. Richards has a pending en banc petition with the Fifth Circuit challenging this Court's systematic bias and refusal to recuse under 28 U.S.C. § 455(a), instead creating a different standard than is used in the Fifth Circuit for recusal in *In re Chevron U.S.A.,* 121 F.3d 163 (5th Cir. 1997). The Court's ruling on the TRO before Mr. Richards submitted his reply brief and inappropriate commentary in lieu of legal analysis, provides additional evidence supporting that petition and demonstrates the escalating pattern of judicial misconduct.

The Court's willingness to substitute personal commentary for constitutional analysis suggests consciousness that appellate oversight has been ineffective, emboldening increasingly inappropriate judicial conduct. When trial courts abandon basic legal analysis in favor of personal remarks, it indicates systemic breakdown of judicial accountability requiring immediate Circuit intervention.

This pattern - documented across multiple rulings, systematic procedural violations, and now inappropriate commentary replacing legal reasoning - establishes the comprehensive judicial bias that warrants both recusal and appellate correction.

## IX. RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court:

1. **Reconsider and vacate** its Order denying Plaintiff's Emergency Motion for Temporary Restraining Order;

2. **Grant Plaintiff's Emergency Motion for Temporary Restraining Order** based on proper consideration of all timely-filed legal arguments;

3. **Address the Freeman dishonesty issue** and impose appropriate sanctions under 18 U.S.C. § 401(3);

4. **Acknowledge** that the ruling was completed before Plaintiff's reply brief was filed and establish procedures to prevent future predetermined rulings;

5. **Reconsider recusal** under 28 U.S.C. § 455(a) given the evidence of systematic predetermined outcomes demonstrating appearance of bias;

6. **Grant such other and further relief** as the Court deems just and proper.

**CONCLUSION**

The fundamental principle of American jurisprudence is that legal disputes must be decided based on legal arguments, not predetermined outcomes. This Court's ruling before Mr. Richards submitted his response violates that principle and denies Mr. Richards the due process protections guaranteed by the Constitution.

The timeline speaks for itself: a court that rules during business hours before a party's 8:45 PM reply brief is even filed has predetermined the outcome regardless of legal arguments. This requires immediate reconsideration to restore constitutional protections and public confidence in judicial impartiality.

Respectfully submitted,

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards
VSB #96671
NY BAR #4932570
LWR Law Offices
3060 Williams Dr
Ste 300 #510
Fairfax, VA 22031
Tel.: (202) 981-2059
lwr@lwrlawoffices.com
*Counsel for Mr. Richards*
lwr@lwrlawoffices.com
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2025, a true and correct copy of the foregoing was served on all parties via the Court's CM/ECF system.

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards