IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THOMAS RICHARDS,

               Plaintiff,

v.

X CORP. and
DONALD J. TRUMP, Individually,

               Defendants.

Civil Action No. 3:25-cv-00916-X

**DEFENDANT X CORP.'S MOTION TO DISMISS**
**<u>PLAINTIFF'S AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES</u>**

## I.     INTRODUCTION

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal of Plaintiff's First Amended Complaint (Dkt. 22; "FAC"). There, Plaintiff alleges that X Corp. removed or restricted certain of Plaintiff's posts and other content on X, the social media platform X Corp. operates, and suspended his X account. Plaintiff's claims, all of which rely on these allegations, fail for at least four reasons:

*First*, the relevant versions of X Corp.'s Terms of Service ("TOS") and Purchaser Terms of Service ("Purchaser Terms"), to which Plaintiff necessarily agreed when he created his account and subscribed to paid services on X, provide X Corp. the express contractual right to moderate his content and suspend Plaintiff's account without liability to him, and disclaim any warranty or liability for those actions.

*Second*, section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 ("Section 230"), immunizes X Corp. from liability for its decisions whether to publish Plaintiff's content posted on X.

*Third*, the First Amendment bars his claims, which seek to hold X Corp. liable for its editorial decisions about whether to permit Plaintiff's content to be disseminated on X, X Corp.'s private social media platform.

*Fourth*, Plaintiff fails to state any claim against X Corp. because the FAC fails to plausibly allege any of his claims, for a host of reasons.

Finally, because no amendment can evade the inescapable bars to liability imposed by the TOS and the Purchaser Terms, Section 230, and the First Amendment, Plaintiff's FAC should be dismissed with prejudice.

## II.     BACKGROUND

### A.     Plaintiff's Allegations

Plaintiff filed this action on April 13, 2025. (Dkt. 1; "Complaint"). Several months later,

Plaintiff filed an amended complaint. (Dkt. 44; "FAC"). In the FAC, Plaintiff alleges that, "for approximately 16 years," he has had an X account with the username "@tlthe5th," through which he has allegedly made "over 61,600 posts" about his "religious beliefs." FAC ¶ 28. Plaintiff also alleges he became "a paid [X] Premium subscriber for approximately 18 months." FAC ¶ 37.

Plaintiff further alleges that X Corp. "shadowban[ned]"[1] his account, which "limited" Plaintiff's "reach" on X, "over an extended period," and that this "content suppression . . . intensified" after Elon Musk's July 2, 2022 visit to the Vatican.[2] FAC ¶¶ 1, 41, 89. Plaintiff also alleges that X Corp. suspended Plaintiff's account on February 14 and March 12, 2025, and "throttl[ed]" his "four automated ('bot') accounts." FAC ¶¶ 97, 103. Furthermore, according to the FAC, X Corp. allegedly removed most of Plaintiff's posts on X between March 19 and April 6, 2025. FAC ¶¶ 83–85. Plaintiff alleges he has not violated "X's Terms of Service" and that X Corp.'s purported conduct was "discrimination against his religious viewpoint." FAC ¶¶ 37, 89. And he alleges X Corp.'s conduct breached X Corp.'s "User Agreement." FAC ¶ 215. Based on this same alleged conduct, Plaintiff contends X breached its "Free Speech Commitment" and "transparency commitment," and committed "Premium Service Fraud." FAC ¶ 215.

Plaintiff also alleges that, although Elon Musk has left his "official government position," Mr. Musk's departure from his temporary role with the federal government was a manufactured "feud" between him and defendant Donald Trump, purportedly arising from Mr. Trump's alleged use of "surveillance capabilities" to view Plaintiff's attorney-client email discussions regarding

---

[1] "Shadow ban" means "to cause (a user or their content) to be hidden from some or all other users usually without the user's knowledge." https://www.merriam-webster.com/dictionary/shadow%20ban.

[2] As before, Plaintiff alleges X Corp. is "owned" by Elon Musk, who has an "official role" in the "Department of Government Efficiency (DOGE)" in the Trump Administration. FAC ¶ 106; Compl. ¶ 56. Plaintiff also continues to allege other purported ties between Mr. Musk and the federal government. *See* FAC ¶¶ 104–131; Compl. ¶¶ 55–74.

potentially adding Mr. Trump as a party to this lawsuit. *Id.* ¶¶ 7, 10–12. On this basis, the FAC includes allegations regarding "The Trump Administration's Coordinated Censorship Infrastructure." FAC ¶¶ 13–17. Plaintiff alleges that Mr. Trump is directly involved in the alleged suppression of Plaintiff's X account and imposing a pro-Catholic bias. *Id.* ¶¶ 177–200; 235–266. Plaintiff also has allegations regarding Executive Order 14179 ("Removing Barriers to American Leadership in Artificial Intelligence") and the influence of its "AI policy directive" upon X's "platform control" in support of "content suppression." *Id.* ¶ 123.

The FAC asserts claims for: (1) Direct Constitutional Violation – First Amendment; (2) Conspiracy to violate Constitutional rights; (3) Establishment Clause violation; (4) Section 230(C)(2)(A) violation; (5) promissory estoppel; (6) breach of contract; (7) violation of the Texas Deceptive Trade Practices Act ("DTPA"); (8) Religious Freedom Restoration Act violation; (9) tortious interference with business relations; (10) civil RICO violation (18 U.S.C. § 1962); (11) "common carrier liability"; and (12) artificial intelligence discrimination under color of law. *Id.* ¶¶ 177–266.

### B. The Relevant TOS and Purchaser Terms

In creating and using his Twitter account, Plaintiff necessarily agreed to the X Terms of Service ("Relevant TOS"). RJN, Ex. 1 at 1 ("These Terms are an agreement between you and X Corp., which provides X and the Services . . . ."). And by subscribing to receive premium services on X, Plaintiff necessarily agreed to the Purchaser Terms. *Id.*, Ex. 2 at 1 ("By using or accessing a Paid Service[] from X [Corp.] . . . you agree to be bound by the [Purchaser] Terms.").

The Relevant TOS, which Plaintiff references in the FAC (*id.* ¶ 215), provides that X Corp. "may . . . limit distribution or visibility of any Content" and "suspend or terminate users . . . without liability to" Plaintiff, as well as "terminate [Plaintiff's] account . . . for any . . . reason or no reason." RJN, Ex. 1 at 2, 3. Those terms also contain a disclaimer providing that X Corp.

"disclaim[s] all . . . liability for . . . the . . . availability . . . of the Services," or any "harm that results from your access to or use of the Services or any Content." *Id.*, Ex. 1 at 3. The Relevant TOS also contains a limitation of liability provision that states:

> [X Corp.] SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES . . . WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR ANY . . . INTANGIBLE LOSSES, RESULTING FROM . . . YOUR ACCESS TO OR USE OR INABILITY TO ACCESS OR USE THE SERVICES . . . [and] ANY CONDUCT OR CONTENT OF ANY THIRD PARTY ON THE SERVICES, INCLUDING WITHOUT LIMITATION, ANY . . . OFFENSIVE OR ILLEGAL CONDUCT OF OTHER USERS OR THIRD PARTIES . . . . THE LIMITATIONS OF THIS SUBSECTION SHALL APPLY TO ANY THEORY OF LIABILITY, WHETHER BASED ON WARRANTY, CONTRACT, STATUTE, [or] TORT . . . .

*Id.*, Ex. 1 at 4.

The relevant version of the Purchaser Terms provide that "X [Corp.] may suspend or terminate [the user's] access to Paid Service(s), or cease providing [the user] with all or part of the Paid Services, or take any other action it deems appropriate, including, for example, suspend [the user's] your account, (without any liability) at any time for any or no reason." *Id.*, Ex. 2 at § 2. Those terms also have a limitation of liability provision that is substantively identical to the provision contained in the TOS. *Id.*, Ex. 2 at § 3. The Purchaser Terms also state that "[X Corp.] MAKES NO WARRANTY OR REPRESENTATION AND DISCLAIMS ALL RESPONSIBILITY AND LIABILITY FOR . . . . THE AVAILABILITY OF THE PAID SERVICES . . . ." *Id.*, Ex. 2 at § 2.

## III.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Id*.

While "pro se complaints are held to less stringent standards . . . regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002) (cleaned up).

## IV.    ARGUMENT

### A.    The Relevant TOS and Purchaser Terms Bar Plaintiff's Claims

Plaintiff's claims are barred by the Relevant TOS and Purchaser Terms, which give X Corp. the contractual right to (a) remove his posts and media content from X, (b) limit the visibility of his content on X, and (c) suspend his account—all without liability to Plaintiff.

The Relevant TOS provides that X Corp. "may . . . remove or refuse to distribute any Content on the Services, limit distribution or visibility of any Content on the service, suspend or terminate users . . . without liability to" Plaintiff, and may "terminate [Plaintiff's] account or cease providing [him] with all or part of [X Corp.'s] Services for any . . . reason or no reason." RJN, Ex. 1 at 3–4. The Purchaser Terms also provide that "X [Corp.] may suspend or terminate [the user's] access to Paid Service(s) or cease providing [the user] with all or part of the Paid Services (without any liability) at any time for any or no reason." *Id.*, Ex. 2 at 2. These provisions bar all his claims, which seek to hold X Corp. liable for allegedly exercising its contractual right to remove his posts and media content from X, to limit the visibility of his content, and to suspend his account. *See Zhang v. Twitter Inc*., 2023 WL 5493823, at *5 (N.D. Cal. Aug. 23, 2023) (dismissing claim based on alleged suspension of X account where "under the express terms of the Terms of Service, [X Corp.] had the contractual right to terminate Plaintiff's account for any reason"), *aff'd*, 2025 WL 66050 (9th Cir. Jan. 10, 2025), *cert. denied sub nom. Zhang v. X Corp*., 2025 WL 663740 (U.S. Mar. 3, 2025); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *5 (N.D. Cal. Nov. 7, 2022) (same).

6

The disclaimer and limitation of liability clauses in the TOS and the Purchaser Terms, which are binding on Plaintiff, also bar Plaintiff's claims against X Corp. The Relevant TOS provides that X Corp. "disclaim[s] all . . . liability for . . . the . . . availability . . . of the Services." RJN, Ex. 1 at 4. And the Relevant TOS and Purchaser Terms provide that X Corp. "SHALL NOT BE LIABLE FOR ANY . . . DAMAGES . . . , RESULTING FROM . . . [Plaintiff's] ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE SERVICES," under "ANY THEORY OF LIABILITY," including "STATUTE" and "TORT." *Id.*, Ex. 1 at 4–5; Ex. 2 at 3–4. The Purchaser Terms also provide that "[X Corp.] MAKES NO WARRANTY OR REPRESENTATION AND DISCLAIMS ALL RESPONSIBILITY AND LIABILITY FOR . . . . THE AVAILABILITY OF THE PAID SERVICES . . . ." *Id.*, Ex. 2 at § 2.

Plaintiff's claims are all based on X Corp.'s alleged removal of his content from X, its alleged limitation of his visibility, and its alleged suspension of his account. *See, e.g.*, FAC ¶¶ 1, 41, 88, 97–103, 184, 225. His claims therefore fall squarely within, and are completely barred by, the disclaimer and limitation of liability clauses in the Relevant TOS and the Purchaser Terms. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 231 (Tex. 2019) (under Texas law, "[l]imitation-of-liability clauses . . . are generally valid and enforceable"); *Curtis v. Cerner Corp.*, 621 B.R. 141, 187 (S.D. Tex. 2020) (granting motion to dismiss where enforceable limitation of liability clause applied to claims "based in contract, tort, strict liability, or any other theory of law"); *Moon Soo Kim v. Stanley Convergent Sec. Sols., Inc.*, 2013 WL 1715789, at *3 (N.D. Tex. Apr. 19, 2013) (enforcing limitation of liability clause on motion to dismiss). Thus, Plaintiff's claims all should be dismissed with prejudice.

### B.  Section 230 Immunizes X Corp. From Plaintiff's Claims

Section 230 bars Plaintiff's claims, which seek to hold X Corp. liable for its "traditional editorial functions," which include its decisions about whether to publish Plaintiff's content on X.

47 U.S.C. §§ 230(c)(1), 230(e)(3); *see also McCall v. Zotos*, 2023 WL 3946827, at *3 (11th Cir. June 12, 2023) (Section 230 bars lawsuits seeking to impose liability for the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content").

"By its plain text, [Section] 230 creates federal immunity to any cause of action that would make internet service providers liable for information originating with a third-party user of the service." *Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020), *cert. denied*, 142 S. Ct. 139 (2021). Under Section 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Section 230(e)(3) provides, aside from exceptions not relevant here, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." "Courts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (collecting cases).

Here, all three prongs the Section 230(c)(1) analysis are met: (1) X Corp. is an "interactive computer service" provider; (2) Plaintiff's X account and content are "information provided by another information content provider"; and (3) Plaintiff's allegations seek to treat X Corp. as a "publisher" of that content. *See* 47 U.S.C. § 230 (c)(1). Therefore, X Corp. is immune from liability for Plaintiff's claims.

**X Corp. is an "interactive computer service" provider.** Section 230 broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer . . . service." 47 U.S.C. § 230(f)(2). As courts unanimously have held, social media platforms, including X Corp. (formerly

Twitter, Inc.), are "interactive computer service providers." *E.g., Morton v. Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) ("Twitter provides the prototypical service entitling it to protections of [Section 230]" and "[e]very decision the Court has seen to consider the issue has treated Twitter as an interactive computer service provider, even at the motion to dismiss stage." (citation omitted)). Plaintiff's allegations require the same conclusion. *See* FAC ¶ 166 (X Corp. is a "large social media platform[] . . . .").

**Plaintiff's X account and content are information provided by another "information content provider."** Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Plaintiff's X account and his posts and media posted on X constitute "information provided by another information content provider"—*i.e.*, not X Corp.—within the meaning of the second prong of the Section 230 analysis. *See Wells v. Youtube, LLC*, 2021 WL 2652966, at *4 (N.D. Tex. May 17, 2021) (YouTube was not the "information content provider" because plaintiff "fails to allege that [YouTube] contributed to the creation or development" of the content at issue), *report & recomm. adopted*, 2021 WL 2652514 (N.D. Tex. June 28, 2021); *see also La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017) (Facebook was not the "information content provider" because plaintiff "fail[ed] to allege a single fact suggesting that the Facebook Defendants authored the offending posts."); *Thomas v. Twitter Corp. Off.*, 2023 WL 8452200, at *8 (S.D.N.Y. Dec. 6, 2023) (Plaintiff, not Twitter Inc., was the "information content provider" of "his tweets").

**Plaintiff seeks to treat X Corp. as a "publisher."** For purposes of the third prong of the Section 230 immunity test, what matters "is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher

or speaker' of content provided." *Barnes v. Yahoo, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009). Plaintiff's claims all seek to hold X Corp. liable for protected "publishing" activity, *i.e.*, its alleged decisions to remove Plaintiff's posts and content from its platform and to suspend his account. *See* FAC ¶¶ 1, 41, 89 (alleging that X Corp. "shadowban[ned]" his account, which "limited" Plaintiff's "reach" on X, "over an extended period," and "content suppression"); *id.* ¶¶ 83–85 (alleging that, between March 19 and April 6, 2025, X Corp. allegedly removed most of Plaintiff's posts on X); *id.* ¶¶ 97–103 (alleging that X Corp. suspended Plaintiff's account on February 14 and March 12, 2025, and "throttl[ed]" his "four automated ('bot') accounts"); *id.* ¶¶ 37, 89 (alleging that X Corp. wrongfully moderated his content because he allegedly has not violated "X's Terms of Service" and that X Corp.'s purported conduct was "discrimination against his religious viewpoint"); *id.* ¶ 215 (alleging that X Corp.'s alleged removal of his posts and content and its suspension of his account breached the X Corp.'s "User Agreement," constituted "Premium Service Fraud" and "API Service Breach.").

Because Plaintiffs' claims seek to hold X Corp. liable for its "publishing" activity, the third prong of the Section 230 test is met. *See* 47 U.S.C. § 230(c)(1); *see also La'Tiejira*, 272 F. Supp. 3d at 993 ("[T]he monitoring, screening, and deletion of user-generated content are actions quintessentially related to a publisher's role." (citation modified) (quoting *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003))); *Thomas*, 2023 WL 8452200, at *8 ("Section 230 would appear to immunize Twitter from . . . all lawsuits seeking to hold Twitter liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter the content provided by Plaintiff." (cleaned up)); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020) (Section 230 barred First Amendment claims where plaintiff alleged defendants "demonetiz[ed], censor[ed], restrict[ed] and remov[ed] his videos"); *Green v.*

*YouTube, LLC*, 2019 WL 1428890, at *2–3, *6 (D.N.H. Mar. 13, 2019) (allegations that Twitter, Inc. and other defendants "engaged in shadowbanning," among other acts, "describe conduct that constitutes the exercise of a publisher's traditional editorial functions" (quotation marks omitted)), *report & recomm. adopted*, 2019 WL 1428311 (D.N.H. Mar. 29. 2019).

In sum, X Corp. meets all three requirements for Section 230 immunity, and therefore all of Plaintiff's claims should be dismissed.

### C.       The First Amendment Bars Plaintiff's Claims

The Supreme Court recently confirmed that "[w]hen [social media] platforms use their Standards and Guidelines to decide which third-party content those feeds will display . . . they are making expressive choices. And because that is true, they receive First Amendment protection." *Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024). Consistent with this conclusion, courts have recognized that X Corp. "has a First Amendment right to decide what to publish and what not to publish on its platform." *Mac Isaac v. Twitter, Inc*., 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021); *see also O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–88 (N.D. Cal. 2022) ("Like a newspaper or a news network, [X Corp.] makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment."), *aff'd on other grounds sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *id.* ("[X Corp.] has important First Amendment rights that would be jeopardized by a Court order telling [X Corp.] what content-moderation policies to adopt and how to enforce those policies.").

Plaintiff's claims all seek to hold X Corp. liable for its editorial decisions about whether it permits Plaintiff's content to be disseminated on X, its private social media platform. *See, e.g.*, FAC ¶¶ 1, 41, 88, 97–103, 184, 225. Thus, the First Amendment bars Plaintiff's claims, which should be dismissed. *See Moody*, 603 U.S. at 740; *Mac Isaac*, 557 F. Supp. 3d at 1261; *O'Handley*,

579 F. Supp. 3d at 1186–88; *see also Geegieh v. Unknown Parties*, No. CV-24-02993-PHX-SMB, 2025 WL 1769766, at *5 (D. Ariz. June 26, 2025) (in case brought by a pro se plaintiff, holding that "the First Amendment would bar his claims" against X Corp. arising from content it permitted to remain on X).

### D. Plaintiff Fails to State Any Claim

#### 1. *Plaintiff fails to plausibly allege First Amendment claims*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Julapalli v. Boom*, No. 24-20276, 2025 WL 314123, at *2 (5th Cir. Jan. 28, 2025).[3]

Plaintiff fails to plausibly allege X Corp. violated his rights under the First Amendment because Plaintiff has no First Amendment right to post his content on X, a privately owned social media platform.[4] "[C]orporate liability under section 1983 requires proof of three elements: 'a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.'" *Sims v. Dallas Indep. Sch. Dist.*, 2023 WL 4826210, at *2 (N.D. Tex. July 26, 2023) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). The FAC fails to identify any policymaker at X Corp. for purposes of his First Amendment claims. *See Jones v.*

---

[3] Although Plaintiff's FAC was amended from the original Complaint to no longer expressly reference 42 U.S.C. § 1983 ("Section 1983"), his First Amendment claims otherwise remain substantively identical to when they were pleaded pursuant to Section 1983. Accordingly, X Corp. interprets that Plaintiff still asserts these claims under Section 1983, as Section 1983 is the "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

[4] This analysis applies to all three claims that Plaintiff is attempting to assert under the First Amendment: Count I, for "Direct Constitutional Violation – First Amendment," Count III, for "Establishment Clause Violation", and Count XII, for "Artificial Intelligence Discrimination Under Color of Law."

*Johnson Cnty.*, 2006 WL 8437377, at *2 (N.D. Tex. Feb. 8, 2006) (dismissing Section 1983 claim where "Plaintiff wholly fails to identify any policymaker who promulgated policies or customs that caused his injury."). Nor does Plaintiff identify any official policy or custom of X Corp., much less plausibly allege any policy or custom was the "moving force" of the removal of his X content. *See Lasyone v. Mgmt. & Training Corp.*, 2024 WL 330482, at *4 (N.D. Tex. Jan. 29, 2024) (dismissing Section 1983 claim where plaintiff failed to allege corporation had "an official custom or policy that resulted in a violation of his constitutional rights"). Accordingly, Plaintiff fails to plausibly allege the first element of his First Amendment claims.

Plaintiff also fails to plausibly allege the second element of his purported First Amendment claims: that X Corp. acted under color of state law. "Federal officials acting under color of federal law are not subject to suit under Section 1983, nor does the statute reach purely private conduct." *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016). "Where, as here, the defendant[] [is a] private actor[], the challenged conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State for Section 1983 to apply." *Id.* (internal quotation marks omitted). While Plaintiff alleges Mr. Musk had an "official role" and other ties to the Trump Administration (FAC ¶¶ 104–131), he does not allege any conduct by X Corp. that can be attributed to any *state* government or entity. *See Munoz v. S. Foodservice Mgmt., Inc.*, 2024 WL 3886504, at *3 (W.D. Tex. July 24, 2024) (dismissing section 1983 claim with prejudice where plaintiff alleged private corporation acted under color of federal, but not state, law), *report & recomm. adopted*, 2024 WL 3883511 (W.D. Tex. Aug. 19, 2024); *Brown v. Praxair, Inc.*, 2018 WL 4365526, at *2 (M.D. La. Sept. 13, 2018) (same).

In sum, Plaintiff fails to plausibly allege his First Amendment claims.

### 2. Plaintiff fails to plausibly allege "Conspiracy to Violate Constitutional Rights"

"The essential elements [of a conspiracy claim] are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Leigh v. Danek Med., Inc.*, 28 F. Supp. 2d 401, 405 (N.D. Tex. 1998) (granting motion to dismiss conspiracy claim). Plaintiff fails to plausibly allege facts sufficient to meet these elements.

To assert his claim for conspiracy, Plaintiff alleges that "Defendants Trump and X Corp. engaged in a conspiracy to systematically deprive Mr. Richards of his constitutional rights." FAC ¶ 188. Plaintiff's claim fails in the first instance because he does not allege a "meeting of minds" between Mr. Trump and X Corp. To make this showing, a plaintiff must allege that the purported conspirators had the "specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means" such that they were "aware of the harm or wrongful conduct at the inception of the combination or agreement." *Conceal City, L.L.C. v. Looper L. Enf't, LLC*, 917 F. Supp. 2d 611, 617 (N.D. Tex. 2013) (citations omitted). The FAC has no allegations sufficient to establish that Mr. Trump and X Corp. had a "specific intent" to supposedly violate Plaintiff's constitutional rights. The FAC only vaguely alleges collusion between the federal government and Elon Musk (sometimes with X Corp.'s involvement) in supposedly restricting constitutional rights (FAC ¶¶ 188, 192), as well as Mr. Trump and Mr. Musk's alleged attempts to obscure such collusion through a manufactured feud (FAC ¶¶ 189–191). But nowhere does Plaintiff establish that Mr. Trump and X Corp. specifically intended to cause damage to him.

In addition, Plaintiff's claim fails because Plaintiff fails to plausibly allege any "unlawful, overt act" upon which the supposed conspiracy is based. Under Texas law, "conspiracy is not an independent cause of action;" rather, it "requires an underlying tort." *In re Enron Corp. Sec.,*

*Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 579 (S.D. Tex. 2011) (dismissing conspiracy claim where underlying tort was inadequately pled). Plaintiff's alleged conspiracy was to violate Plaintiff's constitutional rights. But as described above (*supra* § IV.D.1.), Plaintiff has failed to plausibly allege his claims for constitutional violations. As a result, his conspiracy claim, which is predicated upon these supposed violations, should be dismissed. *Duzich v. Advantage Fin. Corp.*, 424 F. Supp. 2d 910, 915 (S.D. Tex. 2003), *aff'd*, 395 F.3d 527 (5th Cir. 2004) (plaintiff's conspiracy claim must be dismissed where plaintiff also failed to state a claim for the tort underlying conspiracy claim).

### 3. *Plaintiff fails to plausibly allege "Section 230(c)(2)(A) Violation"*

As explained above, Section 230 shields internet service providers from liability for claims arising from their moderation of content from third-party users of their platforms. *Supra* §IV.B. Plaintiff's "Section 230(c)(2)(A) Violation" claim should be dismissed because it is not a cause of action. *Rogers v. U.S. Army*, No. CIV.A. H-06-1389, 2007 WL 1217964, at \*8 (S.D. Tex. Apr. 23, 2007) (plaintiff's attempt to bring claim under statute that did not create a private right of action was dismissed pursuant to Rule 12(b)(6)).

Even if construed as Plaintiff's attempt to deny X Corp.'s Section 230 immunity (*see* FAC ¶¶ 201–206), Plaintiff's argument is mistaken. X Corp. does not invoke immunity from liability under Section 230(c)(2), which applies where an "interactive computer service" provider has taken:

> any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected

47 U.S.C. § 230(c)(2)(A). Rather, as explained above (*supra* § IV.B.), subsection (c)(1) of Section 230 immunizes X Corp. from Plaintiff's claims. The Court need not analyze subsection (c)(2) of

Section 230, and Plaintiff's argument is misplaced. *See Fed. Trade Comm'n v. Match Grp., Inc.*, 2022 WL 877107, at *10 (N.D. Tex. Mar. 24, 2022) ("Because immunity under § 230 (c)(1) applies, the Court need not reach the question of whether § 230 (c)(2) also bars Count I.").

### 4.    *Plaintiff fails to plausibly allege a claim for promissory estoppel*

The elements of a claim for promissory estoppel are: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 360 (5th Cir. 1996) (citation omitted). Plaintiff fails to state a promissory estoppel claim for several reasons.

*First*, as a threshold matter, Plaintiff's promissory estoppel claim is based on the same representations underlying his breach of contract claim (*compare* FAC ¶ 209 *with* FAC ¶¶ 215–218). "Promissory estoppel is not applicable to a promise covered by a valid contract between the parties." *Alvarado v. PNC Bank Nat'l Ass'n*, 660 F. Supp. 3d 612, 619 (S.D. Tex. 2023). Thus, to the degree that Plaintiff's promissory estoppel claim is co-extensive with his breach of contract claim, it should be dismissed. *Fric v. Allstate Life Ins. Co.*, 664 F. Supp. 3d 756, 770 (S.D. Tex. 2023), *aff'd*, No. 23-40244, 2024 WL 1758286 (5th Cir. Apr. 24, 2024) (dismissing promissory estoppel claim where defendant "made no further promise" to plaintiff other than that which formed a contract between the parties).

*Second*, to the extent Plaintiff's claim is not based on contractual commitments (and, as explained above, is thus precluded), Plaintiff does not identify any "promise" made by X Corp. Rather, Plaintiff refers to general statements: a statement from Elon Musk that X "doesn't censor beyond what is legally required," two statements found in X's Help Center (FAC at n.135); and unspecified "promises to Premium subscribers about prioritized visibility for their content." FAC ¶ 209. To support a claim for promissory estoppel, a promise cannot be "too vague and indefinite." *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 301 (5th Cir. 2010). All of Plaintiff's

alleged "promises" are simply open-ended representations—they do not reflect any promise on the part of X Corp., much less a sufficiently definite promise, made to Plaintiff as to how X Corp. would moderate his content or his account.

*Third*, Plaintiff has not demonstrated reasonable reliance on any alleged promise. Plaintiff alleges he has been operating his X account for sixteen years. The representations alleged by Plaintiff to constitute "promises" appear to have occurred only very recently, such as Musk's statement made on October 17, 2024 (FAC n. 134). Plaintiff does not identify any statement that occurred prior to his creation of an X account, such that he would have relied upon in joining X. As such, he cannot claim reasonable reliance, and his claim fails. *Savoy IBP 8, Ltd. v. Nucentrix Broadband Networks, Inc.*, 333 B.R. 114, 125 (N.D. Tex. 2005) (promissory estoppel claim failed where plaintiff did not show reasonable reliance on the alleged promises).

Thus, Plaintiff's promissory estoppel claim should be dismissed.

### 5.    *Plaintiff fails to plausibly allege a claim for breach of contract*

The elements of a breach of contract claim are: "(1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained as a result of the breach." *Judwin Props. Inc. v. Lewis*, 615 S.W.3d 338, 348 (Tex. Ct. App. 2020) (citation omitted).

Plaintiff fails to plausibly allege the required elements of this claim. There are only two contracts between Plaintiff and X Corp.: the Relevant TOS and the Purchaser Terms. But Plaintiff's breach of "contract" claim invokes numerous statements that are not valid contracts. Specifically, Plaintiff claims that X Corp. "breached" X's "Free Speech Commitment" (an X post by Elon Musk (FAC n.134)) and "transparency commitment" (a page within X's Help Center), and that X Corp. committed "Premium Service Fraud" and "API Service Breach." FAC ¶ 215. Plaintiff also relies upon various alleged quotations from X personnel (FAC ¶ 216–217), and X's

17

"purported Freedom of Speech, Not Reach" policy (FAC ¶ 218), which is merely a blog post (FAC n.136). None of these statements bear the requirements of a contract between Plaintiff and X Corp. Rather, they are just "vague assertions" that fail to demonstrate the requisite mutual intent of X Corp. to contract with Plaintiff. *Forsterling v. A&E Television Networks, LLC*, No. CV H-16-2941, 2017 WL 980347, at *2 (S.D. Tex. Mar. 9, 2017) (no breach of contract where defendant had performed terms of written contract, but plaintiff sought to hold defendant liable for not complying with additional "vague assertions" made outside of their agreement); *Wells v. Hoisager*, 553 S.W.3d 515, 522 (Tex. Ct. App. 2018) (no valid contract formed where parties had no meeting of the minds, as enforceable contract "must be sufficiently definite in its terms so that a court can understand what the promisor under took . . . " and the "material terms of the contract must be agreed upon before a court can enforce the contract.").

Plaintiff claims a breach of only one actual contract between he and X Corp.: that X Corp. breached "Section 3.1 of X's User Agreement [*i.e.*, the Relevant TOS], which [purportedly] guarantees users the right to post content in compliance with X's policies." FAC ¶ 215. But the Relevant TOS has no "Section 3.1." RJN Ex. 1. Because Plaintiff fails to identify any specific provision that was allegedly breached, his breach of contract claim fails. *See McKinney v. Wells Fargo Bank, N.A.*, No. SA-19-CV-674-XR, 2019 WL 3305607, at *2 (W.D. Tex. July 23, 2019) ("Plaintiff does not identify any specific provision breached. Thus, to the extent she brings a breach of contract claim, that claim is dismissed."); *Thomas Mushroom & Specialty, IV, Inc. v. Am. Int'l Grp., Inc.*, No. 3:21-CV-1783-G, 2023 WL 5945856, at *5 (N.D. Tex. Sept. 11, 2023) ("[T]o plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that a defendant allegedly breached."). In any event, the Relevant TOS does not contain any term that "guarantees users the right to post content in compliance with X's policies." *See generally* RJN

Ex. 1. To the contrary, as explained above, the Relevant TOS expressly reserves the right to remove or limit visibility of Plaintiff's content on X and to suspend Plaintiff's account. *Supra* § IV.A. X Corp.'s alleged removal of his content on X, limitation of the visibility of that content on X, and suspension of his account are entirely consistent with that contractual right, therefore cannot be a breach of contract.

In sum, Plaintiff fails to state a breach of contract claim, which should be dismissed.

### 6. *Plaintiff fails to plausibly allege a claim for violation of the Texas Deceptive Trade Practices Act*

To state a claim under the Texas Deceptive Trade Practices Act ("DTPA"), a plaintiff must plausibly allege (1) the plaintiff "is a consumer under the DTPA," (2) the defendant "committed a false, misleading, or deceptive act under § 17.46(b) of the DTPA, breached an express or implied warranty, or engaged in an unconscionable action or course of action," and (3) the defendants' "acts were the producing cause" of the plaintiff's "actual damages." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002). Plaintiff does not plausibly allege any violation of the DTPA, for several reasons.

*First*, his claim fails because Plaintiff is not a "consumer." The DTPA defines "consumer" as "an individual . . . who seeks or acquires *by purchase or lease*, any goods or services." Tex. Bus & Com. Code § 17.45(4) (emphasis added). Plaintiff's DTPA claims arise from his allegations that X Corp. engaged in religious discrimination by moderating his X content and account. FAC ¶ 224. But X is provided free of charge to its users; Plaintiff did not "purchase" or "lease" access to X. Although Plaintiff allegedly did subscribe to an X Premium account, the gravamen of Plaintiff's DTPA claim concerns only X's basic services, which are available without purchase. *Hunter v. Navy Fed. Credit Union*, 749 F. Supp. 3d 743, 756 (N.D. Tex. 2024) (plaintiff who did not "acquire goods or services within the meaning of the DTPA" lacked standing to bring DTPA claim).

*Second*, Plaintiff's claim fails because he does not meet the heightened pleading requirements of Rule 9(b), which applies to claims alleging violations of the DTPA. *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (dismissing DTPA claims that were not sufficiently pled to Rule 9(b) standard). Plaintiff accuses X Corp. of falsely characterizing its platform as being non-discriminatory. FAC ¶ 224. Under Rule 9(b), however, Plaintiff was required to provide the "who, what, when, where, and how" of these supposed misrepresentations. *Atl. Cas. Ins. Co. v. Primelending, A Plainscapital Co.,* No. 3:15-CV-1475-D, 2016 WL 1322235, at *3 (N.D. Tex. Apr. 5, 2016). Plaintiff has not done so. Rather, Plaintiff enumerates certain of the "laundry-list" varieties of misconduct under the DTPA, and provides only a conclusory statement of their application to the present case. FAC ¶ 224. This is insufficient, and Plaintiff's claim should be dismissed. *Kumar v. Panera Bread Co.,* 750 F. Supp. 3d 785, 792 (S.D. Tex. 2024) (DTPA claim was properly dismissed where it was supported only by a "conclusory statement" which is "precisely the type of allegation that should be disregarded when evaluating pleadings.")

### 7. Plaintiff fails to plausibly allege a claim for violation of the Religious Freedom Restoration Act

The Religious Freedom Restoration Act ("RFRA") provides that "*Government* shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb (emphasis added). As with his attempt to hold X Corp. liable for violations of the First Amendment, Plaintiff fails to plausibly allege a RFRA claim because he does not allege government action on the part of X Corp. *Supra* § IV.D.7. Plaintiff's RFRA claim fails for the additional reason that he has not plausibly alleged that any purported restrictions on his X activity pose a "substantial burden" on his practice of religion. *See Collins v. Scott*, 961 F. Supp. 1009, 1014 (E.D. Tex. 1997) (stating that the RFRA requires a "substantial burden," as

measured by "the degree of the burden placed on an individual and the centrality of the particular practice burdened," and holding that the strip searching of a Muslim prisoner at odds with the Koran's modesty teaching did not constitute a "substantial burden" on prisoner's religion for purposes of the RFRA).

> **8.    *Plaintiff fails to plausibly allege a claim for tortious interference with business relations***

Under Texas law, a plaintiff alleging tortious interference with business relations must show: "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Nix v. Major League Baseball*, 62 F.4th 920, 934 (5th Cir.), *cert. denied*, 144 S. Ct. 165 (2023) (citation omitted). The FAC lacks allegations sufficient to meet these elements.

*First*, Plaintiff has not plausibly alleged a reasonably probable business relationship between him and a third party. To meet this element, a party must show a "specific business relationship" with a "third party" and cannot rely upon "vague assertions that future business relationships" with "unnamed" and "unspecified" individuals "would possibly or potentially be harmed." *Stone v. FINRA*, 694 F. Supp. 3d 774, 790 (E.D. Tex. 2023). Plaintiff alleges he had a "reasonable expectation" of "speaking engagements" and "donation opportunities," as well as "other miscellaneous potential income." FAC ¶ 236. These allegations fail to specify any opportunity for business with a potential business partner. Accordingly, they are insufficient to show the reasonable probability element. Plaintiff additionally alleges he could have earned revenue from the X Creator programs. *Id.* These allegations also fail to plausibly

allege this element because any such revenue comes from X Corp.—not a third party, as required to state a claim for tortious interference with business relations. *Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, 114 F.4th 382, 401 (5th Cir. 2024) ("a party cannot interfere with its own contracts"). In short, nothing in the FAC plausibly alleges that Plaintiff was reasonably certain to enter into a "prospective business relationship" for purposes of his tortious interference claim.

*Second*, the FAC contains no allegations that X Corp. acted with "conscious desire" to disrupt any business relationship. He alleges only that X Corp. "systematically interfered." FAC ¶ 237. This is insufficient. *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 931 (S.D. Tex. 2019) (tortious interference claim failed where plaintiff failed to show "conscious desire" of defendant to interfere).

*Third*, Plaintiff fails to plausibly allege his claim because the only "unlawful conduct" he alleges are the "constitutional violations, deceptive trade practices, fraudulent inducement, and contractual breaches detailed in preceding counts." FAC ¶ 238. Thus, the claim's viability rests on the success of Plaintiff's other claims. Because, as explained above, Plaintiff fails to plausibly allege all those claims, he necessarily fails to plausibly allege his tortious interference claim. *Phoneternet, L.L.C. v. LexisNexis Risk Sols., Inc.,* 816 F. App'x 909, 914 (5th Cir. 2020) (where plaintiff failed to allege "an independent tort or any other meritorious claim," then its tortious interference claim must also fail).

In sum, Plaintiff fails to state a tortious interference claim, which should be dismissed.

### 9. Plaintiff fails to plausibly allege a civil RICO claim under 18 U.S.C. § 1962

"To state a civil RICO claim under 18 U.S.C. § 1962, a plaintiff must allege three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Orozco v. CVS Health Corp.*, No.

4:24-CV-885-P, 2025 WL 1402280, at *2 (N.D. Tex. May 1, 2025), *report and recommendation adopted*, No. 4:24-CV-0885-P, 2025 WL 1397528 (N.D. Tex. May 14, 2025) (citation omitted). For RICO claims where the pattern of racketeering activity is composed of alleged wire fraud and mail fraud (like Plaintiff's), plaintiff must plead scienter allegations that "meet the heightened pleading requirements of Rule 9(b)" and "must . . . provide some factual basis for conclusory allegations of intent." *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 716 (N.D. Tex. 2018) (dismissing RICO claims for failure to meet scienter requirement). Plaintiff fails to plausibly allege a civil RICO claim for several reasons.

*First*, the FAC has no allegations regarding X Corp.'s intent, and so he fails to plausibly allege a RICO claim. *Id.*; *Orozco*, 2025 WL 1402280, at *4 (plaintiff failed to allege sufficient intent for wire fraud predicate act).

*Second*, Plaintiff fails to plausibly allege the specific requirements for the three varieties of RICO claims he is asserting. For his claim under section 1962(a) (arising from use or investment of racketeering income), Plaintiff alleges only that defendants "use[d] income from racketeering . . . to maintain enterprise operations." FAC ¶ 251. This injury, however, is indistinguishable from the "predicate racketeering acts themselves" and is thus insufficient to state a 1962(a) claim. *See Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (section 1962(a) claim failed where plaintiff alleged in conclusory fashion that injury was caused by "use and investment of income derived" and identified no separate wrongful act from the predicate racketeering). With respect to section 1962(c) (personal participation in the enterprise), a plaintiff must plead "specific facts that establish an association that exists other than merely to commit the predicate acts." *Gordon v. Neugebauer*, 57 F. Supp. 3d 766, 779 (N.D. Tex. 2014) (dismissing claims where plaintiff lacked specific factual allegations regarding existence of enterprise). Put a different way, "the RICO

person and the RICO enterprise must be distinct." *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995). In the FAC, Plaintiff attempts to hold X Corp. liable for participation in the alleged X Corp.-Trump enterprise, but the latter is not a sufficiently distinct enterprise and thus he fails to allege facts sufficient to state a section 1962(c) claim. *See id.* (RICO claim failed where plaintiff attempted to plead that defendant participated in an enterprise that was just the defendant and another individual). Plaintiff also fails to plausibly allege a claim under section 1962(d) (an agreement to commit a RICO violation) because he lacks any specific allegation of such an agreement. *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) (section 1962(d) claim failed because "nowhere does [plaintiff] allege facts implying any agreement to commit predicate acts of racketeering"); *see generally* FAC.

Thus, Plaintiff fails to plausibly allege his civil RICO claim.

### 10. *"Common carrier liability" is not a cognizable claim*

Plaintiff's claim for "common carrier liability" based on alleged breaches of "fundamental common carrier duties" (FAC ¶ 255) necessarily fails because it is not a cognizable claim.[5] *See Dick v. Colorado Hous. Enters., LLC*, 2017 WL 6492114, at *2 (N.D. Tex. Mar. 31, 2017) ("Plaintiff cannot meet her burden of showing substantial likelihood of success on the merits as to her claim for unclean hands because such cause of action does not exist under Texas law."); *Jones v. Performance Serv. Integrity*, 492 F. Supp. 2d 590, 596 (N.D. Tex. 2007) (dismissing claim "not

---

[5] Justice Thomas's concurrence in *Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021), does not support recognizing Plaintiff's purported "common carrier liability" claim. There, the Second Circuit found that President Trump's X account was a public forum, but the Supreme Court later vacated that finding because of the change in presidential administration in 2021. *Id.* at 1221. Justice Thomas offered an "analogy between common carriers and digital platforms" to "help explain the Second Circuit's intuition," but recognized there was not sufficient information in the record to substantiate the analogy. *Id.* at 1225. Similarly, in his concurrence in *Moody*, Justice Thomas noted that "transportation and communications networks" were comparable to common carriers, but ultimately declined to apply such a comparison. 603 U.S. at 751–52.

recognized" by state or federal law). Therefore, this claim should be dismissed.

### E. Leave to Amend Should Be Denied

Dismissal without leave to amend is "appropriate" where "amendment is futile because . . . the legal theory upon which a complaint relies is indisputably meritless." *Meeks v. DeBouse*, No. 24-10431, 2024 WL 4457846, at *1 (5th Cir. Oct. 10, 2024) (internal quotation marks omitted) (affirming denial of leave to amend). That is the case here. Plaintiff's claims are inescapably barred by the Relevant TOS and Purchaser Terms, Section 230, and the First Amendment. Even if they were not, Plaintiff already has had an opportunity to replead his claims with this FAC; as explained above, he has failed to state any of his claims. Leave to amend therefore should be denied. *See Whitfield v. Am. Express Nat'l Bank*, No. SA-24-CV-00081-JKP, 2024 WL 1543236, at *3 (W.D. Tex. Apr. 9, 2024) (denying pro se plaintiff leave to amend because "amendment would be futile").

## V.  CONCLUSION

For these reasons, the FAC should be dismissed with prejudice.

Dated: August 14, 2025

Respectfully submitted,

By: */s/ Kenneth M. Trujillo-Jamison*
    Kimberly Priest Johnson
    SHOOK, HARDY & BACON, LLP
    Texas Bar No. 24027753
    kpj@shb.com
    100 Crescent Ct., Suite 700
    Dallas, Texas 75201

    Norma N. Bennett
    SHOOK, HARDY & BACON, LLP
    Texas Bar No. 24028492
    nbennett@shb.com
    600 Travis, Suite 3400
    Houston, Texas 77002
    (713) 227-8008 (Telephone)
    (713) 227-9508 (Facsimile)

    Kenneth M. Trujillo-Jamison

(admitted pro hac vice)
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, CA 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250
ktrujillo-jamison@willlenken.com

*Attorneys for Defendant X Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2025, the foregoing document was electronically filed with the Court's CM/ECF system, thereby effectuating service on counsel for all parties.

*/s/ Norma N. Bennett*
Norma N. Bennett