# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

# DALLAS DIVISION

| | |
|---|---|
| THOMAS RICHARDS *Plaintiff,* v. X CORP. and DONALD J. TRUMP, Individually, *Defendants* | Case No. 3:25-cv-916 |
| | Lisa Weingarten Richards, Esq. VSB #96671 NY BAR #4932570 LWR Law Offices 3060 Williams Dr Ste 300 #510 Fairfax, VA 22031 *Tel.:* (202) 981-2059 lwr@lwrlawoffices.com *Counsel for plaintiff* |

.

## **PLAINTIFF'S REPLY REGARDING SERVICE OF PROCESS**

Plaintiff respectfully submits this reply to address DOJ's mischaracterization of the record. **The central question is simple: Why did new DOJ attorney Najib Gazi appear on the docket on September 15 if DOJ had no intention of filing a response to the complaint?** The only logical answer exposes DOJ's contradictory conduct.

I. DOJ'S ATTORNEY APPEARANCE PROVES INTENT TO DEFEND

A. The Inexplicable Contradiction

DOJ's position requires this Court to believe an impossibility: that new counsel appears in federal litigation without intending to participate in that litigation. This defies logic and legal practice.

**If DOJ was never properly served**, Najib Gazi had no authority or reason to appear. **If DOJ lacked statutory authority to represent Trump**, Gazi should not have appeared at all. **If DOJ genuinely intended only to contest service**, they would have filed their Rule 12(b)(5) motion immediately rather than appearing on the docket first.

The only reasonable explanation for Gazi's September 15 appearance: **DOJ intended to file their overdue response but missed even their own internal deadline.**

I. DOJ'S RESERVATION LANGUAGE CANNOT CURE THEIR PROCEDURAL DEFECTS

DOJ attempts to rehabilitate their position by pointing to a single sentence buried in their July 29 TRO response. This tactical approach demonstrates precisely the kind of gamesmanship that default rules are designed to prevent.

A. The Reservation Did Not Create Fair Notice

DOJ's reservation language was buried in a substantive brief responding to an emergency motion. A reasonable plaintiff, focused on addressing the merits of DOJ's TRO arguments under court-imposed deadlines, would not expect critical service objections to be hidden in such manner.

This approach violated basic principles of fair notice. If DOJ genuinely believed service was deficient, they should have filed a proper Rule 12(b)(5) motion or prominently flagged the issue rather than burying it in emergency briefing.

### B. Plaintiff's Reasonable Reliance

Plaintiff's conduct throughout this litigation demonstrates meticulous attention to procedural requirements. Plaintiff has:

- Sought sanctions when appropriate (ECF No. 67)
- Filed multiple mandamus petitions when necessary
- Used professional process servers even when arguably unnecessary
- Waited additional days beyond deadlines before seeking default to ensure fairness

Had DOJ properly raised service concerns in July, Plaintiff would have immediately addressed them. Plaintiff's track record proves this conclusively.

### C. The Attorney Appearance Timeline

The timeline reveals the procedural issues:

- **July 29**: Kenneth Coffin files TRO response with buried reservation language
- **August 1**: Response deadline passes under normal Rule 12(a) calculation

- **September 9**: Response deadline passes even under generous federal officer interpretation

- **September 10-14**: Plaintiff delays filing default motion to allow for emergencies or excusable circumstances

- **September 15**: Najib Gazi suddenly appears on docket

- **September 15**: Plaintiff immediately files for default upon seeing new appearance without explanation for delay

- **September 15**: Gazi files service objection rather than substantive defense

- **Present**: Neither attorney has filed any answer to complaint

**The Legal Inconsistency**: New counsel doesn't appear in cases where clients were never served - they appear to defend cases. Gazi's appearance without any substantive filing or motion for relief under proper rules created reasonable expectations that were immediately contradicted by procedural objections.

**D. Forfeiture Through Delay and Conduct**

Even properly preserved defenses can be forfeited through unreasonable delay and litigation conduct. In *King v. Taylor*, 694 F.3d 650, 658-59 (6th Cir. 2012), the court held that "even where a defendant properly preserves a Rule 12(b) defense by including it in an answer, he may forfeit the right to seek a ruling on the defense at a later juncture through his conduct during the litigation." The court emphasized that defendants are "required at some point to raise the issue by motion for the court's determination" and that "[w]aiting too long to do so can forfeit the defense."

The *King* court found forfeiture where the defendant waited until summary judgment to raise service defenses, noting that such delay "for gamesmanship purposes, weighs against" the defendant. 694 F.3d at 661. Here, DOJ's 48-day delay combined with their tactical use of new counsel appearances demonstrates similar gamesmanship.

Additionally, in *Eiden v. McCarthy*, 531 F. Supp. 2d 333, 344-45 (D. Conn. 2008), the court noted that defendants must raise insufficient service defenses with specificity, and that general assertions about preserving defenses are insufficient. Even if DOJ's reservation language was adequate initially, their subsequent conduct and delay forfeited the defense.

DOJ's assertion that "a party waives an insufficient service of process defense only by failing to assert the defense in a motion under Rule 12 or a responsive pleading" (ECF No. 89 at 2), directly contradicts established federal precedent. In *Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1303 (2d Cir. 1990), the Second Circuit held that "[a]delay in challenging personal jurisdiction by motion to dismiss has resulted in waiver, even where, as here, the defense was asserted in a timely answer." Similarly, in *Buon v. Spindler*, 65 F.4th 64, 74 (2d Cir. 2023), the court held that "even if insufficiency of process is raised in a motion or response, it can subsequently be waived by 'submission through conduct' that leads plaintiffs to believe service was adequate and no such defense will be continued", citing the Seventh Circuit's holding in *Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732-33 (7th Cir. 1991). Moreover, courts recognize that even properly preserved defenses can be subject to "waiver of waiver" - where defendants waive their own waiver defense through subsequent conduct that misleads plaintiffs. *Giotis v. Apollo of Ozarks, Inc.*, 800 F.2d 660, 663 (7th Cir. 1986) ("there can be a waiver of a waiver, i.e., a defense of waiver can itself be waived by not being raised"). DOJ's position ignores that preservation of a

defense is only the first step - defendants must still actively pursue preserved defenses or risk forfeiture through delay and contradictory conduct.

This conduct demonstrates the tactical nature of their position: appear when convenient for objections, disappear when time to actually defend.

## II. DOJ'S RULE 4(i) ARGUMENT REMAINS FUNDAMENTALLY FLAWED

### A. Individual Capacity Claims Distinguished

Plaintiff maintains that Rule 4(i) service requirements do not apply because DOJ lacks statutory authority to represent former or current presidents for individual capacity constitutional violations arising from personal conduct. This is why Plaintiff sued Trump individually and served him individually.

Had Plaintiff intended to sue Trump in his official capacity, Plaintiff would have served DOJ pursuant to Rule 4(i) - that is Plaintiff's practice in federal litigation. Plaintiff does not play procedural games or seek technical advantages. The decision to sue Trump individually was deliberate and based on the nature of the constitutional claims alleged.

Federal courts have rejected DOJ representation in similar circumstances involving individual capacity constitutional claims. In *Carroll v. Trump*, No. 1:2020cv07311 (S.D.N.Y. 2020) (Docket No. 32), the court rejected DOJ representation for individual conduct. Similarly, *Clinton v. Jones*, 520 U.S. 681 (1997), required presidents to obtain private counsel for individual capacity claims, recognizing the absence of statutory authority for DOJ representation of personal conduct.

### B. Actual Notice Achieved

Even if Rule 4(i) applied, the constitutional purpose of service—providing notice and opportunity to respond—was fully satisfied:

- Trump received actual notice through proper service at Mar-a-Lago
- DOJ received actual notice (evidenced by their July 29 response)
- All parties had full opportunity to respond

**C. Same Method, Same Person, Same Location**

The critical fact DOJ ignores: Plaintiff served both the TRO motion and the complaint using identical methods at the identical location to the identical person (Dan Freeman, Director of Security at Mar-a-Lago) (ECF Nos. 54, 66). DOJ cannot claim the TRO service was adequate while the complaint service was deficient when both used identical procedures.

## III. THIS COURT'S PRACTICAL APPROACH TO SERVICE SUPPORTS DEFAULT

Judge Starr has twice authorized service "by whatever means necessary" in this very case (ECF Nos. 20, 62). This demonstrates his practical approach that prioritizes actual notice over technical compliance.

Here, actual notice was unquestionably achieved. DOJ's response proves they received notice and had full opportunity to respond. Their technical objection runs counter to this Court's demonstrated preference for substance over form.

## IV. DOJ'S PATTERN MIRRORS TRUMP'S DOCUMENTED EVASION TACTICS

DOJ's conduct follows the same evasion pattern established by Trump and his associates throughout this litigation. As documented in Plaintiff's sanctions motion (ECF No. 67), Trump's

security director initially falsely denied authority to accept service, then accepted service normally 16 hours later when confronted.

**The timing of DOJ's sudden action reveals their true motivation:** Najib Gazi's appearance occurred immediately after two critical developments:

1. **Plaintiff filed for default against Yaccarino** in the related case, demonstrating Plaintiff's willingness and ability to obtain default judgments against non-responsive defendants

2. **Plaintiff's client posted on social media platform X** that even though Trump has been served in the lawsuit, he will not acknowledge the censorship or help – thus creating public attention to Trump's non-response. (Tommy Richards (@tlthe5th), X (Sept. 13, 2025, 10:32 AM),https://x.com/tlthe5th/status/1966872567001870694).

These events apparently alerted DOJ that their evasion strategy was failing and that consequences were imminent. Only then did Gazi suddenly appear to manufacture procedural objections.

**If DOJ genuinely believed they were never served, their logical response would have been:**

- Kenneth Coffin notices default motion filed
- No new attorney appearance necessary

**Instead, DOJ's actual response reveals their knowledge of proper service:**

- Complete silence from Coffin despite monitoring the docket
- Sudden appearance of new attorney Najib Gazi just as default was imminent
- Manufacturing of service objections only when facing consequences

This pattern demonstrates that DOJ, like Trump's security team, knew service was proper but attempted evasion tactics until cornered by Plaintiff's demonstrated effectiveness in obtaining defaults and public scrutiny of their non-response.

**V. EQUITABLE PRINCIPLES BAR DOJ'S BELATED OBJECTION**

DOJ cannot simultaneously claim authority to appear and represent Trump while asserting they were never properly served. This contradiction violates principles of judicial estoppel and fair play.

Plaintiff reasonably relied on DOJ's substantive response in structuring subsequent litigation. DOJ's tactical reversal nearly two months later causes concrete prejudice and should be rejected.

**CONCLUSION**

DOJ's conduct forces this Court to choose between two possibilities:

1. **Accept DOJ's Story**: Believe that new counsel appears in federal litigation with no intention of defending, that buried reservation language excuses 48-day delays, and that defendants can manufacture service defects after missing deadlines.

2. **Acknowledge the Obvious**: DOJ intended to defend the case (evidenced by Gazi's appearance), missed their own internal deadlines, and is now manufacturing procedural objections to avoid the consequences of their failure.

**The evidence compels the second conclusion.** Najib Gazi appeared on September 15 because DOJ planned to file their response but failed to meet even their own deadlines. When caught, they pivoted to procedural gamesmanship rather than accept responsibility for their delay.

This Court should not reward such conduct. **The motion for default should be granted.**

**Courts exist to resolve disputes on the merits, not to enable endless procedural manipulation by government lawyers who do not meet basic deadlines.** DOJ had 48 days, multiple opportunities for proper relief, and chose tactical obstruction instead.

**The only reasonable response is default judgment.**

Dated: September 16, 2025

**Respectfully submitted,**

Lisa Weingarten Richards
LWR Law Offices
3060 Williams Dr, Ste 300 #510
Fairfax, VA 22031
Tel.: (202) 981-2059
lwr@lwrlawoffices.com
VA BAR # 96671
NY BAR #4932570
Counsel for Plaintiff

---

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2025, a true and correct copy of the foregoing document was served upon all parties of record via the Court's ECF system.

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards