# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

# DALLAS DIVISION

| | |
|---|---|
| THOMAS RICHARDS<br><br>*Plaintiff,*<br><br>v.<br><br>X Corp., Donald J. Trump<br><br>*Defendants* | Case No. 3:25-cv-916<br><br><br><br>Lisa Weingarten Richards, Esq.<br>VSB #96671<br>NY BAR #4932570<br>LWR Law Offices<br>11166 Fairfax Blvd. Suite 500 #1344<br>Fairfax, VA 22030<br>*Tel.:* (202) 981-2059<br>lwr@lwrlawoffices.com<br>*Counsel for plaintiff* |

## SUPPLEMENTAL BRIEF REGARDING INVALIDITY OF X CORP'S TERMS OF SERVICE DEFENSE

**Use of Generative Artificial Intelligence**
This brief was prepared with the assistance of generative artificial intelligence.

# I. INTRODUCTION

Defendant X Corp.'s Motion to Dismiss relies fundamentally on their Terms of Service as a defense to Plaintiff's constitutional, statutory, and contractual claims. However, recently discovered evidence reveals that when Plaintiff created his account in October 2009, no terms of service acceptance mechanism existed. Under established precedent governing browsewrap agreements, the complete absence of terms reference during account creation renders any purported contractual obligations legally invalid.

# II. FACTUAL BACKGROUND

## A. Plaintiff's 2009 Account Creation

Mr. Richards created his Twitter account (@tlthe5th) in October 2009. Wayback Machine archives from that period available at https://web.archive.org/web/20091027002839/http://twitter.com/ (and also provided as Exhibit A) demonstrate that while terms of service appear to have existed on the website, they were buried at the end, called "terms", among a long list of links, and not referenced, linked, or made available during the actual account creation process.

## B. Inadequate Browsewrap Notice in 2009 Signup Process

The 2009 signup process lacked adequate browsewrap elements:

- No terms of service link on signup page

- No statement that signup constituted agreement to terms

- No reference to any governing contractual provisions during account creation

- No opportunity to review or acknowledge any terms

These "terms" were physically located at the very bottom of the webpage—appearing on page 3 when printed—while the actual signup functionality appeared prominently at the top of page 1. Users completing the signup process would have no reason to scroll through multiple pages of content to discover potential contractual obligations buried at the bottom.

This stands in stark contrast to compliant signup pages, which typically include language such as "By signing up, you agree to our Terms of Service" and generally require the user to read through and assent to such terms before signing up.

### C. Plaintiff's Limited Platform Use Until 2022

From 2009 until approximately 2022, Mr. Richards used automated posting to cross-post content from Facebook to Twitter. He did not actively engage with the Twitter platform, review terms, or participate in the Twitter ecosystem. His active use began only shortly before Musk's acquisition, when he began intentionally posting original religious content on Twitter and building his follower base.

### III. LEGAL ANALYSIS

### A. Governing Law and Legal Standards

Since Twitter was headquartered in California when Plaintiff created his account in October 2009, California law may govern the contract formation analysis. However, Texas and California law are substantively identical on browsewrap enforceability, both requiring adequate notice and unambiguous manifestation of assent. Accordingly, this brief addresses both jurisdictions' standards, demonstrating that Plaintiff's 2009 signup fails under either approach.

**B. Texas Federal and State Court Browsewrap Standards**

The Northern District of Texas has established clear standards for browsewrap agreement enforceability. In *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006), the court emphasized that browsewrap agreements fail when "consumers are urged to download free software at the immediate click of a button" while "a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms." (at 781)

The *Recursion* court found that browsewrap licenses allow "a user to download software...prior to manifesting assent to its terms," (at 781) creating inadequate notice when terms are physically separated from the primary user action.

This analysis directly applies to Twitter's 2009 signup, where users could complete account creation prominently displayed at the top of the page while any terms reference remained buried at the bottom, creating the same "submerged screen" problem that courts have consistently found insufficient for contract formation.

Texas state courts apply similarly strict notice requirements for browsewrap agreement enforceability. In *StubHub, Inc. v. Ball*, 676 S.W.3d 193 (Tex. App.—Houston [14th Dist.] 2023), the court emphasized that "the validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." (at 201)

The StubHub court established that browsewrap agreements must provide adequate notice through website design. The court emphasized that "in the context of web-based contracts, clarity

and conspicuousness are a function of the design and content of the relevant interface." (citation modified - at 203)

Significantly, the StubHub court found insufficient evidence of agreement formation even where the defendant claimed the user had gone through an account creation process, because the defendant did not conclusively prove that it provided the user with sufficient notice of the User Agreement containing the arbitration provision due to lack of evidence about "the design and content of the relevant [user] interface." at 203.

**C. California Courts Apply Consistent Standards**

California courts apply consistent standards. In fact, browsewrap agreements face even stricter scrutiny under California law. The Ninth Circuit, applying California law in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), held that "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." (at 1179.)

The court requires "something more" to capture user attention, such as explicit textual notice warning users that their actions signify agreement to terms. (*Id.* at 1178, n. 1.) In *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021), the California Court of Appeal reinforced that courts are "generally finding" "browsewrap agreements to be unenforceable" (at 466) and emphasized that "reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." (at 469 citation modified)

Most critically, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022), established that enforceable agreements require: (1) reasonably conspicuous notice of the terms, and (2) an unambiguous manifestation of assent. The court held that websites must explicitly notify users of the legal significance of their actions to establish assent.

In *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016), the California Court of Appeal held that terms links requiring users to "scroll below layers of order summary details, advertisement banners" (at 866) and other information are insufficient for enforceability, emphasizing that "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." (at 867)

**D. Application to 2009 Twitter Signup**

Plaintiff's 2009 signup fails under both Texas and California standards. The archived signup page demonstrates that any terms reference was physically located at the very bottom of the webpage in small print—appearing on page 3 when printed—while the actual signup functionality appeared prominently at the top of page 1.

Under both legal frameworks, this extreme physical separation between the signup mechanism and potential terms reference creates an even stronger case for invalidity than typical browsewrap challenges where terms links appear on the same screen as user actions. Users completing the signup process would have no reason to scroll through multiple pages of content to discover potential contractual obligations buried at the bottom.

The 2009 signup process contained none of the elements required for valid browsewrap formation:

- No terms reference during actual account creation

- No statement that signup constituted agreement to terms

- No opportunity to review or acknowledge any terms

- No explicit notice of legal significance of user actions

This complete absence of adequate notice falls far short of the "reasonably conspicuous" standard required under both Texas and California law. As the *Long* court emphasized, "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." A "terms" link buried on page 3 while signup occurs on page 1 would clearly fail this standard under any jurisdiction's requirements.

### E. Corporate Succession Cannot Cure Formation Defects

X Corp. (Texas) inherited Twitter Inc.'s (California) legal obligations as a successor corporation. Invalid contracts cannot be retroactively validated through corporate relocation. The 2009 formation defects under California law remain permanently uncured.

## IV. APPLICATION TO DEFENDANT'S ARGUMENTS

### A. Contract-Based Limitation Defenses

X Corp. argues their Terms of Service contain limitation clauses that bar or restrict Plaintiff's claims. Invalid terms cannot provide such protection. This strengthens Plaintiff's:

- DTPA claims (no contractual limitations)

- Constitutional claims (no waiver provisions)

- Damages claims (no liability caps)

### B. FAQ Promise Arguments Remain Valid

Importantly, invalidating the general Terms of Service does not affect Plaintiff's arguments based on specific FAQ promises. As Plaintiff argued in his Response in Opposition (ECF No. 82), FAQ promises create "specific", "binding obligations" separate from general disclaimer language. (ECF No. 82 at 2, 9)  The *Calise v. Meta Platforms* framework recognizes platform functionality promises as enforceable contracts independent of general terms.

X Corp.'s FAQ promises remain binding:

- "When you follow someone, every time they post a new message, it will appear on your X Home timeline." (ECF No. 82 at 2, 9, 13)

- "We do not block, limit, or remove content based on an individual's views or opinions." (ECF No. 82 at 17)

- "Simply put, we don't shadow ban! Ever." (ECF No. 82 at 17)

These specific representations created reasonable user expectations and induced reliance, supporting Plaintiff's breach of contract and promissory estoppel claims.

## V. EXECUTIVE PROMISE FRAMEWORK

Invalidating the Terms of Service strengthens Plaintiff's reliance on executive promises by Musk and former CEO Yaccarino:

- Musk: "X doesn't censor beyond what is legally required" (Elon Musk (@elonmusk), X (Oct. 17, 2024, 12:39 AM), https://x.com/elonmusk/status/1846772929167552549/.)

- Yaccarino: "Free Speech. Today. Tomorrow. Always" (X (Oct. 8, 2024, 1:35 PM), https://x.com/lindayaX/status/1843706908353626223 ("Free Speech. Today. Tomorrow. Always. X.").

Without valid Terms of Service disclaimers, these executive promises become primary sources of contractual obligation, supporting Plaintiff's promissory estoppel and deceptive practices claims.

## VI. GOVERNMENT ENTANGLEMENT ANALYSIS

The absence of valid Terms of Service strengthens Plaintiff's constitutional claims by eliminating X Corp.'s argument that Plaintiff "consented" to content moderation practices. When government officials (through Musk's dual role as DOGE head and platform owner) suppress constitutional rights, no private contract can waive such violations.

This supports Plaintiff's core argument that unprecedented government-platform entanglement transforms private content moderation into direct constitutional violations requiring judicial intervention.

## VII. DTPA CLAIMS STRENGTHENED

Invalid Terms of Service eliminate X Corp.'s primary defense against Plaintiff's Texas Deceptive Trade Practices Act claims. As Plaintiff argued (ECF No. 82), "DTPA liability springs from the statute rather than contractual agreements," (ECF No. 82 at 14), and limitation clauses cannot shield defendants from statutory violations.

Without valid contractual limitations, X Corp. faces full DTPA liability for:

- False service characteristics (promising free speech while implementing censorship)
- Misrepresented service quality (promising content delivery while preventing it)
- Material omissions (concealing shadowbanning while publicly denying it)

## VIII. CONCLUSION

The lack of proper terms reference during Plaintiff's 2009 account creation renders X Corp.'s Terms of Service defense legally invalid under established Texas browsewrap precedent. This Court should consider this threshold legal issue when evaluating X Corp.'s contract-based defenses to Plaintiff's constitutional, statutory, and common law claims.

The browsewrap invalidity strengthens Plaintiff's core arguments while eliminating X Corp.'s primary contractual defenses, supporting the comprehensive relief Plaintiff seeks for systematic religious speech suppression under unprecedented government-platform entanglement.

DATED: September 21, 2025
Respectfully submitted,

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards
VSB #96671,
NY BAR #4932570
LWR Law Offices
3060 Williams Dr, Ste 300 #510
Fairfax, VA 22031
Tel.: (202) 981-2059
lwr@lwrlawoffices.com
Counsel for Plaintiff

---

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2025, a true and correct copy of the foregoing document was served upon all parties of record via the Court's ECF system.

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards