IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
_____

THOMAS RICHARDS,

      Plaintiff,

v.

X CORP., *et al.*,

      Defendants.

Civil Action No. 3:25-CV-916-X

**DEFENDANT PRESIDENT DONALD J.
<u>TRUMP'S MOTION TO DISMISS</u>**

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

NAJIB H. GAZI
Texas Bar No. 24131329
Assistant United States Attorney
1100 Commerce Street, Third Floor
Telephone:   214-659-8672
Facsimile:   214-659-8807
Najib.gazi@usdoj.gov

*Attorneys for Defendant
President Donald J. Trump*

# TABLE OF CONTENTS

I.    Introduction ........................................................................................... 1

II.   Background ............................................................................................ 2

      A.    Factual Background ..................................................................... 2

      B.    Procedural Background ............................................................... 3

III.  Legal Standards .................................................................................... 5

      A.    Lack of Subject Matter Jurisdiction............................................ 5

      B.    Insufficient Service of Process ................................................... 6

      C.    Failure to State a Claim  ............................................................. 6

IV.   Argument and Authorities.................................................................... 7

      A.    Absolute presidential immunity bars plaintiff's suit .................. 8

      B.    Richards has failed to properly serve the United States ............ 13

      C.    Richards lacks standing............................................................. 15

            1.    Richards' injury is not traceable to President Trump's alleged
                  conduct................................................................................ 15

            2.    The Court cannot redress Richards' alleged injuries.. .................. 19

      D.    Richards has failed to plausibly plead his claims ...................... 22

V.    Conclusion........................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................ 7, 25

*Beason v. Holmes*,
   No. 2:23-cv-00163, 2023 WL 9315880 (S.D. Tex. Dec. 15, 2023)
   *report and recommendation adopted*,
   No. 2:23-cv-00163, 2024 WL 197728 (S.D. Tex. Jan. 18, 2024)................................ 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................ 7, 22

*Bustos v. Martini Club, Inc.*,
   599 F.3d 458 (5th Cir. 2010).................................................................... 22

*California v. Texas*,
   593 U.S. 659 (2021)............................................................................. 19

*Carimi v. Royal Caribbean Cruise Line, Inc.*,
   959 F.2d 1344 (5th Cir. 1996)................................................................... 7

*Carr v. BOP Off. of Gen. Couns.*,
   No. 4:23-CV-447-O, 2024 WL 3033638 (N.D. Tex. June 17, 2024) ....................... 22

*Community Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*,
   150 F. App'x 389 (6th Cir. 2005).............................................................. 21

*Crisafi v. Holland*,
   655 F.2d 1305 (D.C. Cir. 1981) .............................................................. 23

*Feit v. Ward*,
   886 F.2d 848 (7th Cir. 1989)................................................................... 21

*Foley v. Biden*,
   No. 4:21-cv-01098-O, 2021 WL 7708477 (N.D. Tex. Oct. 6, 2021) ..................... 21

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024).............................................................................. 19

*Haaland v. Brackeen*,
   599 U.S. 255 (2023)............................................................................................ 20

*Hafer v. Melo*,
   502 U.S. 21 (1991) ............................................................................................ 20

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)............................................................................................. 8

*Hatfill v. Gonzales*,
   519 F. Supp. 2d 13 (D.D.C. 2007) ..................................................................... 20

*Hayward v. Trump*,
   No. A-20-cv-796-LY, 2021 WL 12322403 (W.D. Tex. Aug. 6, 2021) ........................ 9

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007)............................................................................. 22

*Jackson v. Bush*,
   448 F. Supp. 2d 198 (D.D.C. 2006)..................................................................... 9

*Klayman v. Obama*,
   125 F. Supp. 3d 67 (D.D.C. 2015) .................................................................... 10

*Kling v. Hebert*,
   60 F.4th 281 (5th Cir. 2023)................................................................................ 6

*Kreimerman v. Casa Veerkamp, S.A. de C.V.*,
   22 F.3d 634 (5th Cir. 1994).................................................................................. 6

*Lewis v. Sec. of Pub. Safety & Corr.*,
   870 F.3d 365 (5th Cir. 2017)............................................................................. 13

*Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010)............................................................................. 22

*Lucas v. Pursley*,
   53 F.3d 1281 (5th Cir. 1995)............................................................................. 23

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................... 15

*Machete Prods., LLC v. Page*,
   809 F.3d 281 (5th Cir. 2015)............................................................................... 6

*Maxwell v. Nat'l Gypsum Co.*,
  No. 3:03-CV-66, 2003 WL 21026756 (W.D.N.C. Apr. 2, 2003) ................................ 15

*McCastle v. United States*,
  No. 4:15-cv-420, 2016 WL 7496170 (E.D. Tex. Nov. 15, 2016)
  *report and recommendation adopted*,
  No. 4:15-cv-420, 2016 WL 7626595 (E.D. Tex. Dec. 30, 2016) ................................ 23

*McCurry v. United States*,
  No. 2:22-cv-00239, 2022 WL 19558882 (S.D. Tex. Dec. 2, 2022)
  *report and recommendation adopted*,
  No. 2:22-cv-00239, 2023 WL 2991501 (S.D. Tex. Apr. 18, 2023) ............................. 9

*Moore v. Mabus*,
  976 F.2d 268 (5th Cir. 1992) .................................................................................... 22

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344 (1999) .................................................................................................... 7

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ............................................................................................. 18, 19

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) ................................................................................ 21

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1972) ........................................................................................ 8, 9, 13

*Parker v. Gosmanova*, No. 07-CV-837-D,
  2008 WL 2704608 (W.D. Okla. July 2, 2008) .......................................................... 15

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) .................................................................................. 5, 6

*Singh v. RadioShack Corp.*,
  882 F.3d 137 (5th Cir. 2018) ...................................................................................... 7

*Smith v. Osborne*,
  No. 4:18-cv-906-ALM-CAN, 2019 WL 4383337 (E.D. Tex. Aug. 18, 2019)
  *report and recommendation adopted*,
  No. 4:18-cv-906, 2019 WL 4345735 (E.D. Tex. Sept. 12, 2019) ......................... 23, 24

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .................................................................................................. 15

*Steel Co. v. Citizens for Better Environment*,
    523 U.S. 83 (1998) ................................................................................ 20

*Sullivan v. Leor Energy, LLC*,
    600 F.3d 542 (5th Cir. 2010)................................................................... 7

*Thrasher v. Amarillo*,
    709 F.3d 509 (5th Cir. 2013).................................................................. 13

*Tinsley v. Comm'r of Internal Revenue Serv.*,
    No. 3:96-CV-1769-P, 1998 WL 59481 (N.D. Tex. Feb. 9, 1998)................................. 6

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017)................................................................................ 15

*U.S. Navy SEALs 1-26 v. Biden*,
    578 F. Supp. 3d 822 (N.D. Tex. 2022) ...................................................... 21

*Vantage Trailers, Inc. v. Beall Corp.*,
    567 F.3d 745 (5th Cir. 2009).................................................................... 6

*Walsh v. Hagee*,
    900 F. Supp. 2d 51 (D.D.C. 2012)
    *aff'd*, No. 12-5367, 2013 WL 1729762 (D.C. Cir. Apr. 10, 2013) ...................... 23, 24

**FEDERAL RULES**

Federal Rule of Civil Procedure 12 .............................................................. 6, 7

Federal Rule of Civil Procedure 4 ............................................................4, 6, 13, 14

**OTHER AUTHORITIES**

*Implementing the President's "Department of Government Efficiency" Cost Efficiency*
    Initiative,
    Executive Order 14,222 ...................................................................... 11, 12

## I.    Introduction

Defendant President Donald J. Trump moves to dismiss Plaintiff Thomas Richards' frivolous claims against him arising from conduct within the scope of his official duties. Richards brings this suit seeking hundreds of millions of dollars of damages, and an injunction against the President of the United States and X Corp. Am. Compl., ECF No. 44. Dissatisfied with the number of people viewing his content, Richards alleges a fanciful conspiracy between President Trump, X Corp., Elon Musk, various religious authorities, and major technology companies undertaken to limit his X account's reach and suppress his religious messages.

For several reasons, the Court should dismiss this case with prejudice. First, absolute Presidential immunity bars this suit. It is well established that civil litigation against the President cannot be premised on actions that are within the outer bounds of his duties. Richards' claims are entirely based on the President's official actions, including Executive Orders, the creation of Executive Branch commissions, official communications, and other executive directives. These alleged actions were putatively taken by the President of the United States, acting as the President, and are well within the outer bounds of his duties.

Second, Richards lacks standing. Standing requires, at minimum, that a plaintiff shows an injury in fact, causation, and redressability.  But here, Richards cannot establish that his injuries are traceable to President Trump, and his alleged injuries cannot be redressed by a judicial decision. That is particularly true because Richards has sued President Trump in his individual capacity, and there is an absolute bar on injunctive

relief related to the President's official duties (a bar that would apply even if the suit was brought in the President's official capacity). The Court cannot order the President to exercise his official powers in response to this suit, and therefore cannot redress any of Richards' injuries requiring injunctive relief as a remedy.

Third, Richards has not properly served the United States. Although Richards has sued President Trump in his individual capacity, he must still serve the United States. He has not served the United States Attorney's Office as required by Rule 4.

Finally, the complaint does not provide sufficient well-pled factual allegations to survive a motion to dismiss. Plaintiff's allegations are implausible. They consist of speculation about government surveillance, "Vatican coordination," and staged public feuds by some of the country's most visible public figures allegedly in response to this lawsuit. Implausible allegations cannot sustain a complaint. All of Richards' claims against President Trump should be dismissed.

## II.    Background

### A.    Factual Background

This Court has already surveyed the factual allegations in Plaintiff's original complaint which are substantially similar to the factual allegations in his Amended Complaint. Mem. Op. and Order ("Mem. Op."), ECF No. 29. In short, Plaintiff is an active user on X.com and he believes that website has removed his content and is otherwise limiting his posts. *Id.* at 1-2. He alleges that his X account, which has "approximately 3,400 followers," Am. Compl. ¶ 28, has been targeted by Elon Musk and the President acting together. Plaintiff claims to have had his account "for approximately

16 years," through which he has allegedly made "over 61,600 posts." *Id.*

Plaintiff alleges that through "a coordinated framework [President] Trump's Religious Liberty Commission prominently features Catholic Cardinal Timothy Dolan and Bishop Robert Barron as 'Christian' representatives while Mr. Richards' biblical criticism of Catholic institutions faces systematic platform suppression." *Id.* ¶ 39. He speculates that X Corp. has "systematically limited Mr. Richards' reach on its platform over an extended period" and that "other major online platforms" have done the same in coordination. *Id.* ¶¶ 41, 89 (alleging specific "targeted discrimination against his religious viewpoint and his criticism of government"). Plaintiff's theory relies on unadorned allegations of "Vatican coordination," *id.* ¶ 88, and "Government-Vatican-Tech Coordination," *id.* ¶ 165 (emphasis removed), across X.com and other platforms.

**B.    Procedural Background**

Plaintiff originally sued only X Corp. Mem. Op. at 1-2. After X Corp. had an opportunity to respond, the Court rejected Plaintiff's prior renewed motion for a temporary restraining order, ECF No. 17. Mem. Op. at 4. Plaintiff subsequently filed an Amended Complaint adding President Trump as a defendant and several additional allegations and claims. Am. Compl. Plaintiff moved again for a temporary restraining order. ECF No. 52.

The Court provided President Trump a week from the date of service of the motion to respond. Order, ECF No. 62. Plaintiff alleges that service of the motion was completed on July 22 by email to Dan Freeman, which President Trump disputes. Notice of Service, ECF No. 64. Nonetheless, in light of this Court's Order, President Trump

filed a response on July 29, noting in part the lack of effective service but also addressing the absence of jurisdiction and Richards' failure to state a claim. Response, ECF No. 73. The Court denied the motion for a temporary restraining order, acknowledging that because Richards chose to sue President Trump solely in his individual capacity, injunctive relief was barred. Mem. Op and Order at 3, ECF No. 76.

Plaintiff subsequently took no steps to perfect service and admits he has has not yet served the United States with the Amended Complaint in compliance with Federal Rule of Civil Procedure 4. Notice at 5, ECF No. 102.

Nevertheless, Richards requested the clerk enter default against President Trump in September 2025, as President Trump had not responded to his complaint. ECF No. 86. President Trump filed a Notice of Deficient Service of Process, explaining that Richards was obliged to serve the United States pursuant to Rule 4(*i*). Notice, ECF No. 87; *see* Fed. R. Civ. P. 4(i)(3) (requiring service on the United States when "a United States officer or employee [is] sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity)"). The clerk denied Richards' request to enter default. Electronic Docket Entry, September 17, 2025.

Undeterred, Richards filed a motion for entry of default. Mot. Default J., ECF No. 91. President Trump filed a response, explaining yet again that Richards had to serve the United States in compliance with Rule 4. Response Opp. Default J. 1-2, ECF No. 94. That same day, counsel for President Trump separately emailed Richards' counsel to offer to accept service on behalf of the United States Attorney's Office by email, but

Richards has not responded to the offer. To date, despite the clear explanations from President Trump identifying the deficiencies in service of process, Richards has refused to even attempt to serve the United States in accordance with Rule 4, and is instead engaging in vexatious litigation practices by repeatedly seeking default without merit and filing documents on the docket that do not comply with the local civil rules.

Plaintiff's Amended Complaint raises a variety of claims: First Amendment; conspiracy to violate constitutional rights; Establishment Clause; Section 230; promissory estoppel; breach of contract; Texas Deceptive Trade Practices Act; Religious Freedom Restoration Act; tortious interference with business relations; civil Racketeer Influenced and Corrupt Organizations Act ("RICO"); "Common Carrier Liability"; and "Artificial Intelligence Discrimination Under Color Of Law." Am. Compl. ¶¶ 177-266. In the Amended Complaint, he seeks injunctive, declaratory, and monetary relief. *Id.* ¶¶ 267-70; Prayer for Relief A-F.

But President Trump is protected by absolute immunity related to his official duties; Richards lacks standing to assert his claims against President Trump; and his claims are not plausible. President Trump therefore requests Richards' complaint be dismissed under Rule 12(b)(1), 12(b)(5), and 12(b)(6).

### III.    Legal Standards

### A.    Lack of Subject Matter Jurisdiction

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). The party

asserting jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. "[I]n examining a Rule 12(b)(1) motion, a district court is empowered to find facts as necessary to determine whether it has jurisdiction." *Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (citation omitted). The Court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (internal citation and quotation marks omitted). "In evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citation omitted).

## B.    Insufficient Service of Process

Rule 12(b)(5) of the Federal Rules of Civil Procedure "permits a challenge to the method of service attempted by the plaintiff," or the lack of delivery of the summons and complaint. Fed. R. Civ. P. 12(b)(5); *Tinsley v. Comm'r of Internal Revenue Serv.*, No. 3:96-CV-1769-P, 1998 WL 59481, at *3 (N.D. Tex. Feb. 9, 1998). Plaintiffs have the burden to ensure that the defendants are properly served with a summons and a copy of the complaint. Fed. R. Civ. P. 4(c)(1). A court is authorized to dismiss a civil action for insufficiency of service of process. Fed. R. Civ. P. 12(b)(5); *see also Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994) ("A district court . . . has broad discretion to dismiss an action for ineffective service of process."). Absent proper service of process, the court cannot exercise personal jurisdiction over a party named as a

defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). "[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1996).

## C.    Failure to State a Claim

The Court should grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Sullivan*, 600 F.3d at 546 (cleaned up). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the complaint, the Court accepts only "well-pleaded facts as true" and disregards "conclusory allegations, unwarranted factual inferences, [and] legal conclusions." *Singh v. RadioShack Corp.*, 882 F.3d 137, 144 (5th Cir. 2018) (internal quotations and citations omitted).

## IV.    Argument and Authorities

Because absolute presidential immunity bars Richards' suit and Richards lacks standing, the Court should dismiss the case for lack of subject matter jurisdiction.

Further, Richards has failed to serve the United States in accordance with Rule 4, and therefore the Court lacks personal jurisdiction over President Trump. Lastly, Lewellen's claims fail to state a claim for relief that is plausible on its face. The Court should dismiss Richards' claims.

## A.    Absolute presidential immunity bars plaintiff's suit.

First and foremost, Plaintiff's suit is entirely barred by the President's absolute immunity to civil suits premised on his official acts and duties.

It is well recognized that some government officials, including the President, are absolutely immune from civil suits premised on their official responsibilities. "For officials whose special functions or constitutional status requires complete protection from suit, we have recognized the defense of 'absolute immunity'. . . [o]ur decisions also have extended absolute immunity to certain officials of the Executive Branch . . . [including] the President of the United States." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731 (1972)).

The Supreme Court has long recognized that the President occupies a "unique position in the constitutional scheme." *Fitzgerald*, 457 U.S. at 749. While the Constitution vests the legislative and judicial powers in collective bodies, it vests "[t]he executive Power" in the President alone. U.S. Const. art. II, § 1. Accordingly, the Constitution "entrust[s] [the President] with supervisory and policy responsibilities of utmost discretion and sensitivity." *Fitzgerald*, 457 U.S. at 750. And it is he alone "who is charged constitutionally to 'take Care that the Laws be faithfully executed.'" *Id.* (citation omitted).

**Defendant President Donald J. Trump's Motion to Dismiss – Page 8**

To safeguard the "special nature of the President's constitutional office and functions" and "the singular importance of [his] duties," the Constitution provides "absolute Presidential immunity" from civil damages suits. *Id.* at 751, 756. This immunity extends to even "the outer perimeter of his official responsibility." *Id.* at 756 (cleaned up). The immunity is to be read broadly. Otherwise, courts would be required to hold "trial on virtually every allegation that an action was unlawful, or was taken for a forbidden purpose." *Id.* To read the immunity narrowly would thus "deprive absolute immunity of its intended effect." *Id.* As a result, the question is merely whether the alleged actions fall generally inside the "outer perimeter" of the President's "official responsibility" at which point absolute immunity bars any further inquiry. *Id.*

That is the case here. District courts in the Fifth Circuit have consistently explained that as a matter of "well-settled" doctrine, "the President has absolute immunity and may not be sued for conduct related to his official duties." *Hayward v. Trump*, No. A-20-cv-796-LY, 2021 WL 12322403, at *4 (W.D. Tex. Aug. 6, 2021) (citation omitted). The district courts routinely apply this rule in all civil litigation, regardless of relief sought, involving actions within the outer perimeter of the President's duties. *See, e.g.*, *id.* (dismissing an individual capacity suit for injunctive relief based on absolute Presidential immunity); *McCurry v. United States*, No. 2:22-cv-00239, 2022 WL 19558882, at *5 (S.D. Tex. Dec. 2, 2022) ("President Biden enjoys absolute immunity from civil litigation with regard to actions taken in his official capacity."), *report and recommendation adopted*, No. 2:22-cv-00239, 2023 WL 2991501 (S.D. Tex. Apr. 18, 2023); *see also Jackson v. Bush*, 448 F. Supp. 2d 198, 201 (D.D.C. 2006) ("[T]he

doctrine of absolute immunity serves to bar—absolutely—suits against the President of the United States, in his individual capacity, whenever he is acting within the scope of his official authority.").

Applying this immunity here, all of Plaintiff's claims are barred. As an initial matter, it is Plaintiff's burden to prove "that the President's alleged actions fall outside of activity that is protected by immunity." *Klayman v. Obama*, 125 F. Supp. 3d 67, 87 (D.D.C. 2015). Even assuming Plaintiff's allegations are true—and they are not— Plaintiff did not even attempt to meet that burden.

As to the specific claims asserted against the President, all are explicitly premised on official Presidential conduct. The First Amendment claim is based on the actions of "government actors" and "Defendant Trump, acting under color of presidential authority." Am. Compl. Count I ¶¶ 177-86. The conspiracy to violate rights claim similarly relies on "Trump's Executive Orders" and "Government Policy Coordination" as well as "federal authority." *Id.* Count II ¶¶ 187-93. The Establishment Clause claim relies on official Presidential actions such as "Trump's Executive Order establishing a Religious Liberty Commission" and more broadly focuses on alleged "coordinated government and platform action." *Id.* Count III ¶¶ 194-200.

Plaintiff's next four claims for violations of Section 230, promissory estoppel, breach of contract, and the Texas Deceptive Trade Practices Act, do not focus on the President and are instead claims against X Corp. *Id.* Counts IV-VII ¶¶ 201-228. To the extent the President is meant to be included in these claims *sub silentio*, any conceivable involvement would be based on his official duties—that as President and using his

governmental authority, President Trump coordinated the alleged lower engagement numbers and post deletions. Plaintiff has, at the very least, not met his burden to show otherwise. Plaintiff's Religious Freedom Restoration Act claim only discusses X Corp. *Id.* Count VIII[1] ¶¶ 229-34. Once again, even assuming the President is meant to be included in this count, the claim involves only "Government Action," actions that fall within the scope of his Presidential responsibility. *Id.* Plaintiff's claim for tortious interference with business relations is also aimed solely at X Corp., but to the extent the President is included, Plaintiff's only references relevant to the President are "constitutional violations" which, for the reasons explained above, only involve actions protected by absolute Presidential immunity. *Id.* Count IX ¶¶ 235-47.

Plaintiff's civil RICO claim as to the President similarly relies on actions taken within the scope of his official duties, for example, his "creation of DOGE." Count X ¶¶ 248-52; *see also Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative*, Executive Order 14,222, 90 Fed. Reg. 11,095 (Feb. 26, 2025). To the extent the President is included in the "Common Carrier Liability" claim, it must be through Plaintiff's oblique reference to "government direction of X's content policies" which, once again, necessarily involves the President's official governmental acts and therefore falls within his immunity. Am. Compl. Count XI ¶¶ 253-58. Finally, the claim as to "Artificial Intelligence Discrimination Under Color Of Law" is explicitly based on

---

[1] From this point forward the Amended Complaint misnumbers the claims, but Defendant has adjusted the numbering for purposes of this and future citations.

the President's official acts "under color of law" and otherwise relies on "Executive

Order 14179's comprehensive federal AI strategy," which the President issued within the

scope of his official responsibility. Count XII ¶¶ 259-66.

Therefore, all claims against the President are premised on actions entirely

protected by absolute Presidential immunity. Plaintiff's factual allegations reveal as

much. *See, e.g.*, *id.* Executive Summary at 12 (claiming that President Trump, in official

communications "express[es] deference to Vatican authority"); ¶ 5 (relying on President

Trump's creation of DOGE through executive order); ¶¶ 9, 14 (relying on President

Trump's executive order titled "Restoring Freedom of Speech and Ending Federal

Censorship"); ¶ 15 (citing President Trump's executive order titled "Eradicating Anti-

Christian Bias"); ¶ 17 (explaining that President Trump was added as a defendant "based

on [alleged] evidence of coordinated constitutional violations"); ¶ 39 (relying on official

statements by President "Trump's Religious Liberty Commission") ¶ 76 (describing

official Presidential communications regarding the Pope); ¶ 93 (relying on President

Trump's "religious liberty initiatives") ¶¶ 123-24 (relying on President Trump's

executive order titled "Removing Barriers to American Leadership in Artificial

Intelligence" and speculating that "this AI policy directive" has caused various injuries);

¶ 130 (similarly citing President Trump's official actions, including his artificial

intelligence order, as causing Plaintiff's alleged injuries); ¶ 182 (arguing in summary that

"Defendant Trump, acting under color of presidential authority" harmed Plaintiff).

In short, Plaintiff is very clear that he is relying on the President's official acts.

The entire case is premised on allegations of "unprecedented entanglement between

governmental authority and platform ownership" and "religious speech suppression operat[ing] through systematic government surveillance." TRO Mot. at 2. By Plaintiff's own framing, this is a case about official governmental action.

Because Richards' claims are entirely premised on actions within the outer perimeter of the President's duties, absolute immunity bars relief. There is no further inquiry as to whether the alleged actions cited by Plaintiff were "unlawful, or [were] taken for a forbidden purpose." *Fitzgerald*, 457 U.S. at 756. That those alleged actions were taken by the President, as the President, within the outer perimeter of his duties, ends the inquiry. If Presidential immunity were structured any other way, it would "deprive absolute immunity of its intended effect." *Id.* Absolute Presidential immunity bars each claim in this action, and, as such, Plaintiff's complaint must be dismissed.

## B.    Richards has failed to properly serve the United States.

Under the Federal Rules of Civil Procedure, a plaintiff must serve each defendant in the action within 90 days after the complaint is filed. *See* Fed. R. Civ. P. 4(c), (m). When a plaintiff fails to perfect service within 90 days, the court should either dismiss the action or order that service be made within a specific time period. *See* Fed. R. Civ. P. 4(m); *see also Lewis v. Sec. of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("Rule 4(m) requires dismissal if a defendant is not served within 90 days after the complaint is filed, unless the plaintiff shows good cause for the failure."); *Thrasher v. Amarillo*, 709 F.3d 509, 511-15 (5th Cir. 2013) (affirming the grant of a motion to dismiss when it took the plaintiff almost ten months with prolonged periods of inactivity to perfect service, and he only attempted to serve the defendants when the court ordered

him to show cause for failure to timely serve them).

To serve a federal employee named in his individual capacity in connection with duties performed on the United States' behalf,[2] the plaintiff must serve both the employee and the United States. Fed. R. Civ. P. 4(*i*)(3). To serve the United States under Rule 4(*i*)(1)(A), a party must—among other things—either (i) deliver a copy of the summons and complaint to the applicable U.S. attorney, an assistant U.S. attorney, or a properly designated clerical employee or (ii) "send a copy by registered or certified mail to the civil-process clerk at the United States attorney's office."

Here, Richards has failed to properly and timely serve President Trump. As President Trump previously explained in his notice of deficient service of process and subsequent filings, the United States Attorney's Office has not yet been served. *See, e.g.*, ECF No. 87, at 1-2. President Trump has attempted to resolve this issue with Richards. Counsel for President Trump contacted Richards' counsel to offer to accept service by email on behalf of the U.S. Attorney. Richards has not responded.

Despite repeated notice of improper service and multiple opportunities to perfect service, Richards has repeatedly and explicitly refused to do so.[3] More than 90 days have passed since Richards filed his amended complaint. He continues to refuse to properly serve the United States. Therefore, this action should be dismissed in its entirety under

---

[2] As explained in Section IV(A) above, Richards' allegations relate only to acts within the outer perimeter of the President's duties.

[3] Richards admits that he has not served the United States because it contradicts his theory that the Department of Justice cannot represent President Trump in this litigation. Notice at 5, ECF No. 102.

Rule 12(b)(5) for insufficient service of process.[4]

## C.    Richards lacks standing.

As the party invoking federal jurisdiction, Richards bears the burden of establishing that he has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Richards must accordingly show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Richards "must demonstrate standing *for each claim* he seeks to press and *for each form of relief* that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (emphasis added) (citation omitted).

Richards falls short; his injury cannot be traced to President Trump's conduct nor can his injury be redressed by a favorable judicial decision.

### 1.    Richards' injury is not traceable to President Trump's alleged conduct.

To establish standing, Richards must show that his alleged injury is causally connected to President Trump's conduct rather than to a third party's conduct. *Lujan*, 504 U.S. at 560. Here, there is no dispute that President Trump did not directly suppress Richards' social media content. Rather, Richards alleges a conspiracy where President

---

[4] Dismissal may also be appropriate under Rule 12(b)(2) for lack of personal jurisdiction. While Rule 12(b)(2) is generally applied in the context of nonresident defendants, failure to perfect service affects the court's jurisdiction as "[i]nsufficiency of service of process implicates a court's personal jurisdiction over a defendant." *Parker v. Gosmanova*, No. 07-CV-837-D, 2008 WL 2704608, at *3 (W.D. Okla. July 2, 2008); *see also Maxwell v. Nat'l Gypsum Co.*, No. 3:03-CV-66, 2003 WL 21026756, at *1-2 (W.D.N.C. Apr. 2, 2003) (granting motion to dismiss under Rules 12(b)(2) and 12(b)(5) as summons was not timely served on defendant).

**Defendant President Donald J. Trump's Motion to Dismiss – Page 15**

Trump promotes Catholic figures and publicly pressures ("jawbones") social media companies into taking certain actions. *E.g.*, Am. Compl. ¶ 14. There are multiple significant flaws with this causal theory.

First, Richards' complaint lays out a timeline where Musk (and others) allegedly suppressed Richards' social media content prior to President Trump taking office in January 2025 for reasons completely unrelated to President Trump. Richards claims that on July 2, 2022—two and a half years before President Trump took office, "Musk tweeted 'Honored to meet @Pontifex yesterday' with a photo of himself meeting Pope Francis." *Id*. ¶ 38. "Mr. Richards posted biblical theological commentary critiquing this meeting" and his content was allegedly suppressed while positive commenters were not restricted. *Id*. Richards claims that YouTube, Facebook, and Google have all suppressed his content relating to the Vatican. *Id*. ¶ 41. Richards alleges that "YouTube has restricted his content citing inaccurate grounds, while simultaneously permitting unauthorized duplicates of this same content on other channels without imposing similar restrictions." *Id*. ¶ 44. He claims that "YouTube's restrictive actions coincide[d] notably with censorship on X," suggesting that X is following the line set by other social media platforms. *Id*. ¶ 45. Even if true, Richards does not link President Trump with the alleged suppression, undercutting his already-attenuated theory of causation between X's censorship decisions and the President. Rather, it is more plausible that X is engaging in similar behavior to other social media platforms for a wholly unrelated motive.

Tellingly, Richards' Amended Complaint continues by attempting to link social media platforms to Vatican messaging, without mentioning President Trump. Richards

alleges a "documented commitment by multiple companies to cooperate with Vatican messaging priorities . . . to suppress criticism of its handling of abuse scandals" which was demonstrated in 2021 when "the late Pope Francis directly demanded tech companies censor content 'in the name of God.'" *Id*. ¶ 48. Richards points to 2017 as the starting point of this coordinated effort from the Vatican "to position itself as the global authority over artificial intelligence and digital technology development." *Id*. ¶ 60. Richards' own complaint lays out the causal theory that the Vatican and various social media platforms (allegedly) conspired to suppress negative content over the past decade independently of any actions that President Trump may or may not have taken. This flaw alone undermines Richards' standing to bring this suit against President Trump.

Second, Richards alleges various interactions between him and Musk on social media that demonstrate that any suppression is based on personal animosity rather than influence from President Trump. As Richards alleges, "[Musk] has also shown particular hostility toward Mr. Richards' posts that specifically address or expose X's shadowbanning practices." *Id*. ¶ 90. He claims that his "meta-commentary on the platform's own censorship practices was itself heavily restricted," a "pattern [that] demonstrates Defendant's specific intent to silence criticism of its own content moderation practices." *Id*. Richards claims that he critiqued "Musk's governmental affiliations" and his engagement metrics dropped. *Id*. ¶ 99. Again, he critiqued "Musk's visits to intelligence agencies" and X retaliated by restricting his content, "ultimately leading to the pattern of wholesale content removal" alleged in the complaint. *Id*. Richards claims that Musk systematically engages in petty personal feuds and uses X's

moderation processes as cover for wholesale censorship. But he fails to show how President Trump—who does not control Musk's emotions or his choices to engage in shadow banning in response to personal criticism—is linked to Musk's (alleged) censorship. Crucially, there is not one allegation that Elon Musk and X Corp. would not have taken actions to suppress Richards' content independent of President Trump's actions. Again, this is fatal to his standing as to his claims against President Trump.

Lastly, binding Supreme Court precedent has examined social media censorship through indirect government action before, and rejected the theory of standing that Richards relies on here. Just like Richards, the plaintiffs in *Murthy v. Missouri* argued that social media platforms "'have engaged in censorship of certain viewpoints on key issues,' while 'the government has engaged in a years-long pressure campaign' to ensure that the platforms suppress those viewpoints." 603 U.S. 43, 59 (2024) (citation omitted). The lower courts accepted this reasoning, as the platforms' censorship decisions "were thus 'likely attributable at least in part to the platforms' reluctance to risk' the consequences of refusing to 'adhere to the government's directives.'" *Id.* at 59-60. But the Supreme Court rejected this broad assertion for multiple reasons. *Id.*

First, "the platforms moderated similar content long before any of the Government defendants engaged in the challenged conduct" and "the platforms, acting independently, had strengthened their pre-existing content-moderation policies before the Government defendants got involved." *Id.* Second, the "evidence indicate[d] that the platforms had independent incentives to moderate content and often exercised their own judgment" in making censorship decisions. *Id.* Third, even after communicating with the government

defendants, "the platforms continued to exercise their independent judgment" in response to government inquiries and continued to "regularly consult[] with outside experts." *Id*. Importantly, the Court "must confirm that each Government defendant continues to engage in the challenged conduct, which is 'coercion' and 'significant encouragement,' not mere 'communication.'" *Id*. at 69. Unlike Richards, the plaintiffs in *Murthy* had produced actual evidence of a government censorship campaign, but like Richards, could not show specific causation "with respect to any discrete instance of content moderation," dooming their claims. *Id*. at 59. "[T]o establish causation, the plaintiff must show a predictable chain of events leading from the government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the plaintiff." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024). Richards cannot meet this burden.

The causality flaw in Richards' claims against President Trump can be summarized as follows: various social media platforms allegedly capitulated to nefarious influences within the Vatican and conspired to suppress Richards' social media content for almost a decade. They engaged, successfully, in this concerted censoring effort for years prior to President Trump taking office. Richards' alleged harm is not "fairly traceable" to President Trump's actions, and he therefore lacks standing to pursue his claims against President Trump.

### 2. The Court cannot redress Richards' alleged injuries.

"To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California*

*v. Texas*, 593 U.S. 659, 671 (2021) (citation omitted). An "acceptable Article III remedy" must "redress a cognizable article III injury." *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 107 (1998). If the remedy sought cannot give the Plaintiff "legally enforceable protection from the allegedly imminent harm," the injury is not likely to be redressed by judicial relief. *See Haaland v. Brackeen*, 599 U.S. 255, 292-93 (2023). "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Id.* at 294.

As the Court has already recognized, Mem. Op. and Order at 3, ECF No. 76, an initial bar to the injunctive relief requested by Plaintiff is that he seeks such relief in a suit against the President in his *individual capacity*. Am. Compl. ¶ 22 ("Defendant Donald J. Trump is the 47th President of the United States, sued here in his individual capacity."); *accord id.* at caption (specifying "DONALD J. TRUMP, Individually"). The choice to proceed against a defendant in his individual capacity, rather than official capacity, brings with it procedural consequences. *Cf. Hafer v. Melo*, 502 U.S. 21, 27 (1991). One such consequence is a bar on injunctive relief. "[T]here is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity." *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 19 (D.D.C. 2007). This alone mandates dismissal of Plaintiff's claims for injunctive relief against the President.

Additionally, Plaintiff has previously sought injunctive relief as to President Trump. TRO Mot. at 19-23, ECF No. 52. The requested forms of injunctive relief bear on the President's official duties. No such injunction can be ordered in a suit brought against him in his individual or personal capacity. *See Hatfill*, 519 F. Supp. at 19.

"[B]ecause a public official can comply with an injunction regarding performance or nonperformance of official duties only in his or her official capacity, not as an individual acting personally," such relief is entirely unavailable in individual capacity suits. *Beason v. Holmes*, No. 2:23-cv-00163, 2023 WL 9315880, at *11 (S.D. Tex. Dec. 15, 2023), *report and recommendation adopted*, No. 2:23-cv-00163, 2024 WL 197728 (S.D. Tex. Jan. 18, 2024). Plaintiff's request also fails on this basis. What federal employees may do "in their capacities as [federal] employees" is separate from what they may do in their individual capacities. *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (citation omitted). When a plaintiff seeks declaratory or injunctive relief that would involve an individual's responsibilities and duties as a federal official, "the equitable relief []request[ed] . . . can be obtained only from the defendants in their official capacities, not as private individuals." *Id.* (citation omitted); *accord Community Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005) (unpublished) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity.").[5]

---

[5] To be clear, even in official capacity suits, the President is not subject to injunctive relief. *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have jurisdiction to enjoin him . . . and have never submitted the President to declaratory relief.") (citation omitted); *accord U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 829 (N.D. Tex. 2022) (quoting *Newdow* and agreeing that "[t]his Court has no declaratory or injunctive power against [the] President"); *Foley v. Biden*, No. 4:21-cv-01098-O, 2021 WL 7708477, at *3 (N.D. Tex. Oct. 6, 2021) ("[T]he judicial branch lacks the jurisdiction to enjoin the President of the United States."). Thus, any attempt by Plaintiff to refashion this as an official-capacity suit against the President would be futile.

Plaintiff's claims seek injunctive relief against the President. And that relief involves the President's official duties, like issuing an executive directive to federal agencies. Because this is an individual capacity suit, such relief is barred, and the Court cannot grant the requested relief or redress Richards' alleged injuries. *See, e.g.*, *Carr v. BOP Off. of Gen. Couns.*, No. 4:23-CV-447-O, 2024 WL 3033638, at *5 (N.D. Tex. June 17, 2024) (dismissing claims where the "request for injunctive relief [was] improperly brought against the [government official] defendants in their individual capacities").

Richards' alleged harm is the suppression of his content on social media platforms. The Court cannot issue an injunction against President Trump to remedy those harms. As such, Richards' claims fail for lack of standing.

## D.    Richards has failed to plausibly plead his claims.

If nothing else, Richards fails to plausibly plead his claims because his conclusory allegations belie common sense. Plaintiff is represented by counsel and therefore is not afforded the liberal treatment *pro se* plaintiffs receive when pleading their cases. *See Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992). He is therefore subject to the standard formulation for considering a complaint. Under that analysis, a court reviews by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club*, *Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). Therefore, this Court must determine whether Plaintiff's claims are legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v.*

*Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A court may reject claims that are not plausibly pled, including ones based on an implausible premise. *Cf. Lucas v. Pursley*, 53 F.3d 1281 (5th Cir. 1995) (unpublished) ("A claim is factually frivolous if it describes fantastic or delusional scenarios."); *McCastle v. United States*, No. 4:15-cv-420, 2016 WL 7496170, at *2 (E.D. Tex. Nov. 15, 2016) ("Allegations suggesting bizarre conspiracy theories, fantastic government manipulations of their will or mind, and any sort of supernatural interventions are dismissible"), *report and recommendation adopted*, No. 4:15-cv-420, 2016 WL 7626595 (E.D. Tex. Dec. 30, 2016); *Smith v. Osborne*, No. 4:18-cv-906-ALM-CAN, 2019 WL 4383337, at *3 (E.D. Tex. Aug. 18, 2019) (dismissing complaint where the "allegations [were] 'clearly out of the realm of reality'" (cleaned up)), *report and recommendation adopted*, No. 4:18-cv-906, 2019 WL 4345735 (E.D. Tex. Sept. 12, 2019); *Crisafi v. Holland*, 655 F.2d 1305, 1307–08 (D.C. Cir. 1981) (explaining that a court may reject a complaint "postulating events and circumstances of a wholly fanciful kind.").

Plaintiff's Amended Complaint rests on implausible allegations. For example, he alleges that the President of the United States and Elon Musk "staged an elaborate public 'feud'" due to government surveillance of Plaintiff's emailed plans for this litigation. Am. Compl. at 10. These far-fetched allegations lacking evidentiary support need not be accepted. *See Walsh v. Hagee*, 900 F. Supp. 2d 51, 58 (D.D.C. 2012) (explaining that "claims relating to alleged government surveillance and harassment" without plausible backing are "the sort of bizarre conspiracy theory that warrant[s] dismissal") (cleaned up)), *aff'd*, No. 12-5367, 2013 WL 1729762 (D.C. Cir. Apr. 10, 2013).

Similarly, Plaintiff alleges that his approximately 3,400-follower X account has been personally targeted because it "challenges the coordinated power structure between government, technology platforms, and religious institutions." Am. Compl. Executive Summary at 13. Indeed, it is the centerpiece of Plaintiff's various claims—that through "a coordinated framework [President] Trump's Religious Liberty Commission prominently features Catholic Cardinal Timothy Dolan and Bishop Robert Barron as 'Christian' representatives while Mr. Richards' biblical criticism of Catholic institutions faces systematic platform suppression." *Id.* ¶ 39. Mr. Richards speculates that X Corp. has "systematically limited Mr. Richards' reach on its platform over an extended period" and that "other major online platforms" have done the same in coordination with the Vatican. *Id.* ¶ 41; *id.* ¶ 89 (alleging specific "targeted discrimination against his religious viewpoint and his criticism of government"). Plaintiff's theory relies on amorphous, conclusory allegations of "Vatican coordination," *id.* ¶ 88, and "Government-Vatican-Tech Coordination," *id.* ¶ 165, across X.com and other platforms. These conclusory and unsubstantiated theories should not be accepted as plausible without evidence. *See, e.g.*, *Walsh*, 900 F. Supp. 2d at 57 (citation omitted); *Smith*, 2019 WL 4383337, at *4.

Richards' allegations that President Trump participated in an unlawful scheme are wholly conclusory. *Compare* Am. Compl. 8, 10, 12, 19, 24, 64, 72 (President Trump promoted Catholic officials as "Christian" representatives while suppressing criticism of Catholic institutions; President Trump staged an elaborate feud to distance themselves after a private email stating that President Trump would be named as a defendant in this lawsuit was intercepted; President Trump defers to Vatican authority while Richards'

content is suppressed; President Trump coordinates with social media platforms to suppress Richards' religious expression while issuing Executive Orders promoting religious freedom; President Trump and Elon Musk have an extraordinary personal relationship transcending formal titles; and President Trump's artificial intelligence initiatives are a guise of systematic suppression), *with Iqbal*, 556 U.S. at 680-81 (disregarding allegations that Attorney General Ashcroft was the "principal architect" of a discriminatory policy, that FBI Director Mueller was "instrumental" in executing it, and that both officials knew of and agreed to subject Iqbal to harsh confinement conditions on account of his race or religion with no legitimate penological interest). "As between [the] 'obvious alternative explanation'" for the downturn in Richards' social media reach—that social media platforms made changes to their algorithms or moderation procedures independent of President Trump's intervention—and the conspiratorial scheme Richards "asks [the Court] to infer," the conspiratorial scheme "is not a plausible conclusion." *Iqbal*, 556 U.S. at 682. There is no factual content beyond conclusory accusations of a wide-ranging global conspiracy between dozens of public and private actors.

Richards' claims rely on speculative, fanciful, and implausible allegations, thereby precluding him from plausibly pleading his claims. The Court should dismiss his complaint.

## V.    Conclusion

For the foregoing reasons, Richards' claims should be dismissed with prejudice.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/    Najib H. Gazi*
NAJIB H. GAZI
Texas Bar No. 24131329
Assistant United States Attorney
1100 Commerce Street, Third Floor
Telephone:    214-659-8672
Facsimile:    214-659-8807
Najib.gazi@usdoj.gov

*Attorneys for Defendant*
*President Donald J. Trump*

<u>Certificate of Service</u>

On October 15, 2025, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court. I hereby certify that I have served all parties electronically

or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/    Najib H. Gazi*
Assistant United States Attorney