IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| THOMAS RICHARDS<br><br>*Plaintiff,*<br><br>v.<br><br>X Corp., Donald J. Trump<br><br>*Defendants* | Case No. 3:25-cv-916<br><br><br><br><br><br>Lisa Weingarten Richards, Esq.<br>VSB #96671,<br>NY BAR #4932570<br>LWR Law Offices<br>3060 Williams Dr, Ste 300 #510<br>Fairfax, VA 22031<br>Tel.: (202) 981-2059<br>lwr@lwrlawoffices.com<br>Counsel for Plaintiff |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S**
**OCTOBER 22, 2025 ORDER – DOCUMENT 106**

**Use of Generative Artificial Intelligence**
This brief was prepared with the assistance of generative artificial intelligence.

Plaintiff Thomas Richards, by and through his attorney Lisa Weingarten Richards, Esq., moves this Court under Federal Rule of Civil Procedure 54(b) and the Court's inherent authority to reconsider its October 22, 2025 Memorandum Opinion and Order (Doc. 106), which denied default judgment against Defendant Donald Trump, denied default judgment against Defendant Linda Yaccarino, and cancelled the November 12, 2025 default judgment hearing. As demonstrated below, the Court's order was based on a legal error regarding joint liability, was issued in retaliation for Plaintiff's challenge to the Court's fabricated legal standard for remote appearances, and creates an impermissible double standard favoring politically powerful defendants.

## I. BACKGROUND

### A. Yaccarino's Strategic Resignation and Default

On July 8, 2025, Plaintiff filed an Amended Complaint naming X Corp. and Donald Trump as defendants. (Doc. 44). Yaccarino resigned as CEO of X Corp. just ten hours after being named in the Amended Complaint -- demonstrating consciousness of guilt through strategic flight from her position. Despite proper service, Yaccarino failed to answer or otherwise defend, leading to the clerk's entry of default on September 12, 2025.

The Court scheduled a default judgment hearing for November 12, 2025. (Doc. 14, Richards v. Yaccarino, No. 3:25-cv-1863).

### B. The Court's Fabricated "Proportionality" Standard

On October 1, 2025, the Court denied Plaintiff's request to appear remotely at the default judgment hearing, stating: "Richards is seeking in excess of $500 million and the Court does not

find the financial and logistical burden of an in-person hearing to be disproportionate to the relief sought." (Doc. 16, Richards v. Yaccarino).

This "proportionality to relief sought" test does not exist in Federal Rule of Civil Procedure 43(a), its Advisory Committee Notes, or in any federal case law interpreting the Rule. The Court invented a legal standard that compares travel costs to damages sought -- a test never used by any federal court.

Rule 43(a) actually requires: (1) good cause, (2) compelling circumstances, and (3) appropriate safeguards. The 1996 Advisory Committee Notes do reference whether costs are "reasonable in relation to the matters in dispute, the means of the parties, and the circumstances that justify transmission" -- but this language addresses which transmission technology to use (audio versus video conferencing), not whether parties can afford to travel based on their damages claim. The "cost" referenced is the cost of video equipment versus audio-only technology, relevant in 1996 when videoconferencing required expensive specialized equipment.

The Court's test not only lacks any basis in law -- it inverts Rule 43's analysis. Rather than asking whether video transmission costs are reasonable (essentially zero post-COVID), the Court asked whether travel costs are proportionate to damages. This fundamentally misapplies the Rule.

On October 7, 2025, Plaintiff filed a Motion for Reconsideration (Doc. 17, Richards v. Yaccarino), exposing that the Court had invented this non-existent legal standard and demonstrating that all three actual Rule 43 requirements were satisfied.

**C. The Court's Sua Sponte Consolidation**

On October 10, 2025 -- three days after Plaintiff challenged the Court's fabricated legal standard -- the Court sua sponte consolidated Richards v. Yaccarino with Richards v. X Corp. (Doc. 99). Notably, Plaintiff had previously moved to consolidate these cases months prior, while the Yaccarino matter was presided over by Judge Lindsay, but that motion was denied as "moot." (Doc. 7, Richards v. Yaccarino).

Despite consolidating the cases on October 10, the Court kept the November 12 default judgment hearing scheduled and continued to require in-person attendance.

**D. The October 22 Order: Retaliation Through Elimination**

On October 20, 2025, Plaintiff filed a Notice requesting the Court rule on the pending Motion for Reconsideration regarding remote appearance. (Doc. 105).

Two days later -- on October 22, 2025 -- the Court issued its order (Doc. 106):

1. Denying default judgment against Yaccarino based on alleged "joint liability" with co-defendants

2. Cancelling the November 12 default judgment hearing

3. Scheduling X Corp.'s motion to dismiss for November 12 instead -- still requiring in-person attendance

4. Denying Plaintiff's Motion for Reconsideration as "moot"

The Court's order did not vacate the Clerk's Entry of Default (Doc. 13 Yaccarino), which remains in effect. However, by denying default judgment and cancelling the hearing, the Court

effectively nullified the default without formally vacating it -- leaving Yaccarino in default but immune from its consequences.

The timing is dispositive: The Court consolidated the cases on October 10 but kept the default hearing scheduled. Only after Plaintiff pressed for a ruling on the fabricated "proportionality" standard did the Court use the consolidation -- its own sua sponte order -- to eliminate the hearing and avoid addressing Plaintiff's challenge.

## II. LEGAL STANDARD

A district court has discretion to reconsider its interlocutory orders under Federal Rule of Civil Procedure 54(b), which provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). The Fifth Circuit has held that district courts abuse their discretion when they apply the more restrictive Rule 59(e) standard to interlocutory orders instead of the "more flexible Rule 54(b)." *Id.* at 336-37. Reconsideration is particularly appropriate where the court's ruling was based on a fundamental procedural violation that denied a party due process.

## III. ARGUMENT

### A. The Court's "Joint Liability" Reasoning Is Legally Erroneous

The Court relied on *GFRS Equip. Leasing Fund II LLC v. Diane Trang Nguyen*, 2019 WL 3530421, at *3 (N.D. Tex. Aug. 1, 2019) (Lindsay, J.), for the proposition that default judgment cannot be entered against one defendant while co-defendants remain in litigation. (Doc. 106 at 1). However, GFRS states only that judgment "generally should not be entered" in such circumstances—using discretionary, not mandatory, language. Id. at *2 (emphasis added).

Courts routinely enter judgment against defaulting defendants even when co-defendants remain, particularly when:

1. Individual Liability Exists: Yaccarino faces individual corporate officer liability for her personal conduct as CEO, separate from any joint conspiracy claims.

2. Consciousness of Guilt: Yaccarino's resignation ten hours after being sued demonstrates consciousness of guilt. Courts may consider such conduct as evidence of consciousness of guilt when evaluating default judgment.

3. No Prejudice to Co-Defendants: X Corp. and Trump are actively litigating their defenses. Entering default judgment against Yaccarino would not prejudice their ability to defend. See *Williams v. Taylor Seidenbach, Inc.*, 958 F.3d 341, 349 (5th Cir. 2020) (en banc) (affirming district court's discretion under Rule 54(b) to enter partial final judgment even when other parties remain).

4. Plaintiff Is Prejudiced by Delay: Delay eliminates effect of default and allows Yaccarino to evade accountability indefinitely while sheltered by co-defendants' litigation.

The Court's categorical refusal to enter default judgment misapplies the discretionary standard in *GFRS* and ignores these case-specific factors favoring immediate judgment.

### B. The Court Created the Consolidation It Now Uses to Deny Relief

The procedural history reveals judicial manipulation:

1. Plaintiff's consolidation motion in Richards v. Yaccarino was denied as "moot." (Doc. 7, Richards v. Yaccarino) on July 17, 2025.

2. Three days after Plaintiff challenged the Court's fabricated "proportionality" standard, the Court sua sponte consolidated the cases. (Doc. 99).

3. The Court then used its own consolidation order as grounds to deny the default judgment it had previously authorized. (Doc. 106).

The Court cannot create a procedural obstacle through sua sponte consolidation, then use that obstacle to deny relief. This is particularly egregious because Plaintiff did not request the consolidation the Court ordered -- the Court denied Plaintiff's motion, then acted on its own initiative.

Moreover, in July 2025 Plaintiff initially requested consolidation for judicial efficiency and discovery access not to delay Yaccarino's default judgment. Using consolidation to block default judgment turns Plaintiff's procedural request into a weapon against Plaintiff.

### C. The Timing Proves Retaliation

The sequence of events demonstrates that the October 22 order was issued in retaliation for Plaintiff's challenge to the Court's fabricated legal standard:

October 7, 2025: Plaintiff files Motion for Reconsideration exposing the Court's invented "proportionality" test. (Doc. 18, Richards v. Yaccarino).

October 10, 2025: Court sua sponte consolidates cases but keeps November 12 default hearing scheduled. (Doc. 99).

October 21, 2025: Plaintiff files Notice requesting ruling on Motion for Reconsideration. (Doc. 105).

October 22, 2025: Court denies default judgment against Yaccarino, vacates default judgment hearing and denies Motion for Reconsideration as "moot." (Doc. 106).

If consolidation truly required denying default judgment, the Court would have vacated the hearing on October 10 when it consolidated. (Nor would the Court have ordered expedited briefing on Plaintiff's motion for default judgment against co-Defendant Trump while X, Corp. was actively litigating. (Doc. 95). Such briefing would serve no purpose if the Court genuinely believed it could not enter default against one defendant while co-defendants remained in the case.) Instead, the Court kept the default hearing against Yaccarino scheduled until Plaintiff pressed for a ruling on the fabricated legal standard, then eliminated the hearing and motion for default -- mooting Plaintiff's challenge without addressing it on the merits.

This is not judicial reasoning. This is retaliation.

### D. The Court Replaced One In-Person Hearing with Another

The October 22 order cancelled the November 12 default hearing (which Plaintiff sought to attend remotely) and scheduled a new hearing for X Corp.'s motion to dismiss for the exact same date -- November 12, 2025 -- still requiring in-person attendance. (Doc. 106).

This same-date scheduling underscores the retaliatory nature of the order: Plaintiff challenged the requirement to travel 1,000+ miles for an uncontested default hearing, so the Court eliminated that hearing and created a different one -- also requiring cross-country travel -- for the same date.

Notably, the Court's local rules do not typically require oral argument for motions to dismiss. See Local Rule 7.1(g) ("The Court, in its discretion, may set any motion for oral hearing."). And there was never any discussion by this court that X's Motion to Dismiss, filed August 14, 2025 (Doc 80) would entail any oral argument. Yet the Court scheduled oral argument here, ensuring Plaintiff must travel despite having challenged that very requirement.

Moreover, the Court has never provided any legitimate reason for requiring in-person attendance at the November 12 hearing. A motion to dismiss under Rule 12(b)(6) presents purely legal questions decided on the face of the pleadings. No witness testimony will be heard. No evidence will be presented. No credibility determinations are required. The hearing -- if one is even necessary -- involves legal argument about whether the complaint states a claim, nothing more.

Oral argument on motions to dismiss is entirely discretionary under Local Rule 7.1(g), which provides: "The Court, in its discretion, may set any motion for oral hearing." The Court's own local rules recognize that most motions to dismiss can and should be decided on the briefs. Yet here, the Court not only scheduled discretionary oral argument but also insists it must occur in person, with no justification under Rule 43(a).

Plaintiff is admitted pro hac vice and resides over 1,000 miles away. What possible judicial purpose is served by requiring Plaintiff's physical presence to make legal arguments about the sufficiency of pleadings? The Court can evaluate legal reasoning regardless of whether counsel appears via video conference or in person. Post-COVID, every federal court in the nation -- including this one -- conducts routine hearings remotely without any degradation of the judicial process.

The Court's October 1 order in Richards v. Yaccarino invented a non-existent "proportionality" standard but never addressed the actual Rule 43(a) requirements: good cause, compelling circumstances, and appropriate safeguards. Plaintiff's October 7 Motion for Reconsideration demonstrated that all three requirements are satisfied. Rather than address the merits of that motion, the Court denied it as "moot" on October 22 -- strategically avoiding any substantive ruling."

The Court's insistence on in-person attendance for discretionary oral argument on a purely legal motion, by out-of-state pro hac vice counsel, while refusing to provide any Rule 43(a) analysis, reveals the arbitrary and retaliatory nature of this requirement.

### E. The Court Changed its Rules to Oppress the Plaintiff

The Court's inconsistent application of the "joint liability" principle reveals the pretextual nature of its reasoning.

**When Plaintiff first moved for default judgment against Trump, X Corp. was actively litigating.** If the Court's "joint liability" reasoning were genuine, it would have immediately

denied the Trump default motion, stating: "The Court cannot issue default judgment against Trump while the other party (X Corp.) is still litigating the case."

**Instead, the Court ordered expedited briefing on the Trump default motion.** (Doc. 95). The Court's order for expedited briefing proves it was prepared to enter default judgment against Trump despite X Corp. remaining in litigation. Expedited briefing would serve no purpose if the Court believed entry of default was legally impossible due to co-defendants' litigation status.

**The Court's October 22 order reveals the pretextual nature of this reasoning even more starkly.** In the same order (Doc. 106), the Court denied both default motions but applied contradictory standards:

**Trump (no clerk's default entered):**

- Denied because "Richards never obtained a clerk's default against Trump"

- Also denied because Trump filed a Motion to Dismiss (months after the deadline and without individual counsel)

- **The Court's standard: Procedural prerequisites must be completed**

**Yaccarino (clerk's default WAS entered on September 12, 2025 - Doc. 13):**

- Denied despite clerk having entered default

- Denied because "the Court cannot issue a default judgment while other parties are still litigating the case"

- **The Court's standard: Even completed procedural prerequisites are irrelevant if co-defendants are litigating**

**The contradiction is inescapable:**

1. **Expedited briefing on Trump's default** (Doc. 95) proves the Court initially believed it could enter default despite X Corp. litigating

2. **Trump's denial based on missing clerk's default** proves the Court requires procedural prerequisites

3. **Yaccarino's denial despite completed clerk's default** proves the Court ignores completed prerequisites when convenient

4. **Different reasons *in the same order*** prove the Court applies whichever reasoning blocks Plaintiff's motion in each instance

If the "joint liability" rule were genuine, the Court would have applied it when it ordered expedited briefing on Trump's default motion months ago. Instead, the Court only "discovered" this rule after Plaintiff challenged the fabricated "proportionality" standard. **The Court could not maintain logical consistency even within a single two-page order.**

The Court only raised the "joint liability" objection after Plaintiff challenged the Court's fabricated "proportionality" standard for denying a remote hearing. This timing, combined with the inconsistent application within the same order, demonstrates the reasoning is pretextual—invented to avoid addressing the substantive challenge to the Court's fabricated legal standard, not applied as a genuine legal principle.

**F. The Court Avoided Ruling on Its Fabricated Legal Standard**

By vacating the November 12 hearing, the Court mooted Plaintiff's Motion for Reconsideration regarding remote appearance—strategically avoiding any ruling on whether the "proportionality to damages" test exists in law.

The Court invented a legal standard (Doc. 16, Richards v. Yaccarino), Plaintiff challenged it (Doc. 17, Richards v. Yaccarino), and the Court eliminated the hearing rather than address the challenge on the merits (Doc. 106). **This pattern of procedural manipulation delays and obstructs appellate review of the Court's fabricated legal standards.**

**The strategic effect is clear:**

- The October 1 order denying remote appearance cannot be appealed until final judgment (potentially years away)

- The Motion for Reconsideration was denied as "moot" rather than on the merits

- The Fifth Circuit is unlikely to grant mandamus relief on a "moot" procedural issue

- Meanwhile, the Court's fabricated "proportionality" standard remains on the record, available for the Court to cite in future orders

**By eliminating the hearing that would have tested the standard's validity, the Court ensures its invented legal rule faces no immediate scrutiny while continuing to influence case management decisions.**

**G. This Is the Fourth Mandamus-Worthy Action in This Case**

The October 22 order continues a pattern of judicial misconduct requiring Fifth Circuit intervention:

1. First: The Court "misread" X Corp.'s Terms of Service to order venue transfer to Fort Worth, where Judge Reed O'Connor (a known Musk ally) presides, despite the Terms allowing "the U.S. District Court for the Northern District of Texas" (any division).

2. Second: The Court offered Plaintiff two procedural options (appoint local counsel OR file a motion to proceed without local counsel), then denied the selected option without explanation—even after Plaintiff documented that attorneys declined representation due to fear of Elon Musk.

3. Third: The Court denied Plaintiff's recusal motion using fabricated legal standards, ignoring 28 U.S.C. § 455(a)'s "appearance of impartiality" requirement despite Trump appointing the Court and Musk providing Trump $277 million in campaign contributions while receiving $15.4 billion in government contracts. The Fifth Circuit denied mandamus relief and en banc review.

4. Fourth: The Court sua sponte consolidated cases, then used that consolidation to block the default judgment it had previously authorized—two days after Plaintiff pressed for a ruling on the Court's fabricated "proportionality" standard.

Each action demonstrates bias favoring politically powerful defendants and retaliation against Plaintiff for challenging the Court's procedural manipulations.

**H. Contrast With Other Courts**

On October 22, 2025—the same day this Court issued its order—a federal district judge ruled that Plaintiff could appear remotely for a hearing, offering to allow remote appearance "to save you the drive" of approximately 100 miles.

This Court, by contrast, demanded Plaintiff travel 1,000+ miles for an uncontested default hearing based on a fabricated legal standard, then eliminated that hearing to force identical travel for a contested motion instead.

## I. The October 22 Order Confirms What the Court's Recusal Denial Ignored: This Judge Cannot Fairly Preside Over This Case

The pattern of judicial conduct documented in this motion proves exactly what Plaintiff argued in the Court's denied recusal motion: no reasonable observer could maintain confidence in this Court's impartiality.

When Plaintiff moved for recusal under 28 U.S.C. § 455(a), on June 2, 2025 (Doc. 39), the motion documented:

- Trump appointed this Court

- Musk (X Corp.'s owner) provided Trump $277 million in campaign contributions

- Musk received $15.4 billion in government contracts

- Musk now heads a federal agency (DOGE) while simultaneously being sued

- The Court exhibited a pattern of procedural irregularities that would create doubt of impartiality in a reasonable observer

The Court denied recusal, and the Fifth Circuit denied mandamus relief. But the Court's conduct since that denial has vindicated Plaintiff's concerns.

**The Southwest Airlines Contrast**

Most tellingly, this Court's treatment of religious expression claims reveals bias based on political alignment rather than legal principle. In *Carter v. Southwest Airlines*, No. 3:17-cv-2278-X (N.D. Tex.), this Court:

- Called the Bible "historical truth" in a judicial opinion

- Ordered mandatory religious liberty training for Southwest attorneys

- Issued remedies so extreme the Fifth Circuit reversed them as exceeding judicial authority in May 2025

The Fifth Circuit found the Court's religious training order "exceeded remedial bounds and sought to punish Southwest's attorneys" and that "Punitive sanctions exceed the scope of a federal court's civil contempt authority." *Carter v. Local 556*, No. 23-10008 (5th Cir. May 8, 2025).

**Yet in this case—where Plaintiff challenges 25 years of censorship of religious speech critical of Vatican corruption—this Court:**

- Invented non-existent legal standards to obstruct proceedings

- Used sua sponte orders strategically to deny relief

- Applied contradictory reasoning in the same order to block Plaintiff's motions

- Scheduled hearings specifically to retaliate for challenging fabricated rules

- Created procedural obstacles then used those obstacles to justify denying relief

**The pattern is clear:** When religious expression aligns with this Court's political preferences (Southwest Airlines plaintiff supported Trump), the Court champions it with unprecedented judicial activism. When religious expression challenges Trump's allies (X Corp./Musk censoring anti-Vatican speech), the Court systematically obstructs it through procedural manipulation.

No reasonable observer could view this disparate treatment and maintain confidence in the Court's impartiality. The October 22 order -- issued two days after Plaintiff requested a ruling on the Court's fabricated legal standard -- demonstrates that Plaintiff's recusal concerns were not speculative but prescient.

**The Court should reconsider its October 22 order and, more fundamentally, reconsider whether it can continue to preside over a case where every ruling since the recusal denial has confirmed the appearance of bias Plaintiff documented.**

## IV. CONCLUSION

The Court's October 22 order is legally erroneous, procedurally improper, and demonstrably retaliatory. The Court:

1. Misapplied discretionary "joint liability" principles as mandatory rules

2. Created a sua sponte consolidation, then used it to deny relief

3. Timed its order to retaliate for Plaintiff's challenge to fabricated legal standards

4. Replaced one in-person hearing for which the Plaintiff requested a remote hearing twice with another in person on the same date

5. Applied a double standard based on defendant identity

6. Avoided ruling on its invented "proportionality" test by mooting Plaintiff's challenge

7. Continued a pattern of bias favoring Trump, Musk, and their co-defendants

Additionally, the Court's denial of default judgment against Trump based on his untimely Motion to Dismiss (filed months after the appearance deadline and without individual counsel) contradicts the Court's own "joint liability" reasoning. If co-defendants' litigation status prevents entry of default, Trump's procedural deficiency should be irrelevant. The Court cannot simultaneously claim that (1) Trump's late filing saves him from default, and (2) Yaccarino's proper default cannot proceed because co-defendants are litigating. This contradiction further demonstrates the pretextual nature of the October 22 order.

Plaintiff respectfully requests that this Court:

**A. Reconsider its October 22, 2025 order;**

**B. Enter default judgment against Defendant Linda Yaccarino pursuant to Federal Rule of Civil Procedure 55(b)(2);**

**C. Reconsider its denial of Plaintiff's Motion for Default Judgment against Defendant Donald J. Trump and grant said motion**

**D. Allow Plaintiff to appear remotely at the November 12, 2025 hearing and all future hearings pursuant to Federal Rule of Civil Procedure 43(a), as the Court has never**

**provided any legitimate basis under Rule 43(a) for requiring in-person attendance by out-of-state counsel admitted pro hac vice for hearings on purely legal motions; and**

**E. Grant such other and further relief as justice requires.**

Respectfully submitted this 23rd day of October, 2025.

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards, Esq.
VSB #96671
NY BAR #4932570
LWR Law Offices
3060 Williams Dr
Ste 300 #510
Fairfax, VA 22031
Tel.: (202) 981-2059
lwr@lwrlawoffices.com
Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2025, a true and correct copy of the foregoing was served via the Court's CM/ECF system on all counsel of record.

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards